MORGAN, LEWIS & BOCKIUS LLP
SUSAN D. RESLEY, Bar No. 161808
susan.resley@morganlewis.com
JENNY HARRISON, Bar No. 285164
jenny.harrison@morganlewis.com
ALYSE J. GRAMAGLIA, Bar No. 287989
ali.gramaglia@morganlewis.com
LAUREN N. WENNER, Bar No. 298942
lauren.wenner@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

MARTHA B. STOLLEY, *Pro Hac Vice Application Pending*
martha.stolley@morganlewis.com
CAROLYN A. SILANE, Bar No. 298113
carolyn.silane@morganlewis.com
101 Park Avenue
New York, NY 10178
Tel:    +1.212.309.6858
Fax:    +1.212.309.6001

GIBSON, DUNN & CRUTCHER LLP
MICHAEL LI-MING WONG, Bar No. 194130
mwong@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Tel:    +1.650.849.5393
Fax:    +1.650.849.5093

Attorneys for Hewlett-Packard Enterprise &
Hewlett-Packard Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:16-cr-00462 CRB |
| Plaintiff, | NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA ISSUED TO NON-PARTY HEWLETT-PACKARD COMPANY PURSUANT TO RULE 17(C); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| vs. | |
| SUSHOVAN HUSSAIN, | |
| Defendant. | |
| | Date:    August 30, 2017 |
| | Time:    1:30 p.m. |
| | Place:    Courtroom 6, 17th Floor |
| | Judge:    Hon. Charles R. Breyer |
| | Date Filed:  November 10, 2016 |
| | Trial Date:  February 26, 2018 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA

2

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    **NOTICE IS HEREBY GIVEN** that on August 30, 2017 at 1:30 p.m., or as soon

4  thereafter as the matter may be heard by the above-referenced Court, located at 450 Golden Gate

5  Avenue, San Francisco, California 94102, Courtroom 6, Hewlett-Packard Enterprise and Hewlett-

6  Packard Company will and hereby do move this Court pursuant to the Federal Rule of Criminal

7  Procedure 17(c)(2) for an order quashing Defendant Sushovan Hussain's subpoena issued to non-

8  party Hewlett-Packard Company pursuant to Federal Rule of Criminal Procedure 17(c).

9    The Motion to Quash is based upon this Notice of Motion and Motion, the following

10  Memorandum of Points and Authorities (including the attached Appendix), the Declaration of

11  Susan D. Resley in support of this Motion and accompanying Exhibits, the reply to be filed in

12  support of this Motion, oral argument of counsel at the hearing, all pleadings and papers on file in

13  this action, and any other matters the Court may properly consider by judicial notice or otherwise.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

1   Dated:  August 9, 2017                    Respectfully submitted,

2

3                                            By

4                                            SUSAN D. RESLEY
                                             JENNY HARRISON
5                                            ALYSE J. GRAMAGLIA
                                             LAUREN N. WENNER
6                                            MORGAN, LEWIS & BOCKIUS LLP
                                             One Market, Spear Street Tower
7                                            San Francisco, CA 94105
                                             Telephone:  (415) 442-1000
8                                            Facsimile:   (415) 442-1001
                                             susan.resley@morganlewis.com
9
                                             MARTHA B. STOLLEY
10                                           CAROLYN A. SILANE
                                             MORGAN, LEWIS & BOCKIUS LLP
11                                           101 Park Avenue
                                             New York, NY 10178-0060
12                                           Telephone:  (212) 309-6000
                                             Facsimile:   (212) 309-6001
13                                           martha.stolley@morganlewis.com

14                                           MICHAEL LI-MING WONG
                                             GIBSON, DUNN & CRUTCHER LLP
15                                           555 Mission Street, Suite 3000
                                             San Francisco, CA 94105
16                                           Telephone:  (650) 849-5393
                                             Facsimile:   (650) 442-5093
17                                           mwong@gibsondunn.com

18                                           *Attorneys for Hewlett-Packard Enterprise &*
                                             *Hewlett-Packard Company*
19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

# **TABLE OF CONTENTS**

**Page**

I.      SUMMARY OF ARGUMENT (STANDING ORDER NO. 5).......................................... 1

II.     BACKGROUND ........................................................................................................ 2

      A.   HP Acquires Autonomy, Discovers And Reports A Significant Fraud.................. 2

      B.   Federal Grand Jury Indicts Mr. Hussain On Fraud Charges.................................. 3

      C.   The Subpoena....................................................................................................... 4

III.    ARGUMENT ............................................................................................................. 5

      A.   Discovery Under Federal Rule of Criminal Procedure 17 Must be Narrowly
          Tailored ............................................................................................................... 5

      B.   Mr. Hussain Seeks Documents That He Already Possesses ................................. 6

      C.   The Subpoena Fails To Meet The *Nixon* Factors.................................................. 7

              1.   Mr. Hussain Seeks Documents That Are Not Relevant ................. 7

              2.   Mr. Hussain Seeks Documents That Are Not Admissible.............. 9

                    a.   Hearsay:  Rule 802 .................................................... 9

                    b.   Compromise Offers And Negotiations:  Rule 408................. 10

              3.   The Requests Fail The "Specificity" Requirement ...................... 11

      D.   The Court Should Quash The Subpoena On Additional Grounds ......................... 13

              1.   Mr. Hussain Improperly Seeks Privileged Information ................ 13

                    a.   The Subpoena Seeks Materials Subject To The
                         Attorney-Client Privilege................................................ 13

                    b.   The Subpoena Seeks Attorney Work Product........................ 13

                         i. Summaries of Interviews Conducted by HP Personnel ...... 13

                         ii. Materials Prepared by Outside Counsel............................. 13

                         iii. Materials Prepared by PwC ................................................. 13

               2.   Mr. Hussain Improperly Seeks Witness Statements ..................... 16

              3.   Mr. Hussain Seeks To Impose An Unreasonable And
                 Oppressive Burden On A Non-Party Victim ................................. 16

IV.     CONCLUSION .......................................................................................................... 17

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Century Aluminum Co. v. AGCS Marine Ins. Co.*,
   285 F.R.D. 468 (N.D. Cal. 2012) ...................................................................................15

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
   332 F.3d 976 (6th Cir. 2003) .........................................................................................11

*Hickman v. Taylor*,
   329 U.S. 495 (1947) ......................................................................................................14

*Hudspeth v. C.I.R.*,
   914 F.2d 1207 (9th Cir. 1990) .................................................................................10, 11

*In re Grand Jury Subpoena*,
   357 F.3d 900 (9th Cir. 2004) ...................................................................................13, 16

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-02420 YGR, 2015 WL 1223972 (N.D. Cal. Mar. 17, 2015) .................15

*O'Connor v. Boeing N. Am., Inc.*,
   216 F.R.D. 640 (C.D. Cal. 2003) ..................................................................................14

*SEC v. Berry*,
   No. C07-04431 RMW HRL, 2011 WL 825742 (N.D. Cal. Mar. 7, 2011) ...............16

*SEC v. Schroeder*,
   No. C07-03798 JW HRL, 2009 WL 1125579 (N.D. Cal. Apr. 27, 2009) ................16

*Todd v. STAAR Surgical Co.*,
   No. CV-14-05263 MWF (RZX), 2015 WL 13388227
   (C.D. Cal. Aug. 21, 2015) ............................................................................................13

*United States v. Aguilar*,
   No. CR 07-00030 SBA, 2008 U.S. Dist. LEXIS 63114
   (N.D. Cal. Aug. 1, 2008) .........................................................................................11, 12

*United States v. Booth*,
   No. 2:08-cr-00283-RCJ-RJJ, 2011 U.S. Dist. LEXIS 142205
   (D. Nev. Dec. 8, 2011) ..................................................................................................12

*United States v. Burke*,
   No. S-05-0365 FCD, 2009 U.S. Dist. LEXIS 90287 (E.D. Cal. Sept. 16, 2009) ......8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

*United States v. Carn,*
No. 2:13-cr-00346-APG-GWF, 2016 U.S. Dist. LEXIS 3587
(D. Nev. Jan. 11, 2016) ............................................................................................9

*United States v. Cervantes,*
No. 12-cr-00792-YGR-12 (KAW), 2016 U.S. Dist. LEXIS 75486
(N.D. Cal. June 9, 2016) ..........................................................................................9

*United States v. Collins,*
No. 11-CR-00471-DLJ (PSG) 2013 U.S. Dist. LEXIS 36361
(N.D. Cal. Mar. 15, 2013) ......................................................................................10

*United States v. Eden,*
659 F.2d 1376 (9th Cir. 1981)...............................................................................2, 6

*United States v. Fields,*
663 F.2d 880 (9th Cir. 1981)....................................................................................9

*United States v. Johnson,*
No. CR 94-0048 SBA, 2007 U.S. Dist. LEXIS 95834
(N.D. Cal. Dec. 24, 2007) ...................................................................................5, 16

*United States v. MacDonald,*
No. 93-91-FR, 1993 U.S. Dist. LEXIS 13401 (D. Or. Sept. 22, 1993) ....................8

*United States v. Mason,*
No. CR 05-324-RE, 2008 U.S. Dist. LEXIS 34537 (D. Or. Apr. 25, 2008)...............8

*United States v. Nguyen,*
No. 13-cr-00295-RMW-1 (HRL), 2016 U.S. Dist. LEXIS 63673
(N.D. Cal. May 13, 2016) .........................................................................................8

*United States v. Nixon,*
418 U.S. 683 (1974) ........................................................................................ passim

*United States v. Nosal,*
No. CR-08-0237 EMC, 2013 WL 1402336 (N.D. Cal. Apr. 5, 2013)................14, 15

*United States v. Pac. Gas & Elec. Co.,*
No. 14-cr-00175-THE, 2016 U.S. Dist. LEXIS 78798
(N.D. Cal June 16, 2016) ..........................................................................................9

*United States v. Pac. Gas & Elec. Co.,*
No. 14-cr-00175-THE-1 (MEJ), 2016 U.S. Dist. LEXIS 40587
(N.D. Cal. Mar. 28, 2016) ................................................................................. passim

*United States v. Phoenix,*
No. 5:14-cr-00318-LHK, 2015 U.S. Dist. LEXIS 141373
(N.D. Cal. Oct. 15, 2015) ..................................................................................11, 17

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

*United States v. Reyes,*
239 F.R.D. 591 (N.D. Cal. 2006) ...................................................................................... passim

*United States v. Rodriguez,*
No. 2:11-0296 WBS, 2016 WL 6440323 (E.D. Cal. Oct. 28, 2016) ..................................6, 17

*United States v. Roque,*
No. CR 13-829 PA, 2014 U.S. Dist. LEXIS 197123 (C.D. Cal. Aug. 18, 2014) ..................7, 8

*United States v. Salvagno,*
267 F. Supp. 2d 249 (N.D.N.Y. 2003) ...................................................................................7

*United States v. Sanchez,*
No. CR S-05-0443 WBS, 2007 U.S. Dist. LEXIS 103945
(E.D. Cal. Jan. 9, 2007)........................................................................................................10

*United States v. Schneider,*
No. CR 02-0403 SI, 2003 U.S. Dist. LEXIS 27324 (N.D. Cal. Nov. 18, 2003).........................7

*United States v. Shabazz,*
No. 97-183-FR, 1998 U.S. Dist. LEXIS 9826 (D. Or. June 10, 1998) ........................................7

*United States v. Shepard,*
No. 4:09CR423 RWS DDN, 2010 WL 750110 (E.D. Mo. Feb. 26, 2010) ................................7

*United States v. Stukenbrock,*
No. 5:15-cr-00034-EJD-1 (HRL), 2016 U.S. Dist. LEXIS 171563
(N.D. Cal. Dec. 9, 2016) ....................................................................................................8, 11

*United States v. Tomison,*
969 F. Supp. 587 (E.D. Cal. 1997).......................................................................................13

*United States v. Villa,*
503 F. App'x. 487 (9th Cir. 2012) ...........................................................................................6

*United States v. Zavala-Tapia,*
No. CR-2:09-297 WBS, 2010 U.S. Dist. LEXIS 137645
(E.D. Cal. Dec. 17, 2010).....................................................................................................12

*Upjohn Co. v. United States,*
449 U.S. 383 (1981)..............................................................................................................14

**STATUTES**

18 U.S.C. § 2 ...........................................................................................................................3

18 U.S.C. § 1343 .....................................................................................................................3

18 U.S.C. § 1348 .....................................................................................................................3

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

18 U.S.C. § 1349 ...............................................................................................................3

**OTHER AUTHORITIES**

Federal Rule of Criminal Procedure 16 ...........................................................................5

Federal Rule of Criminal Procedure 17 ............................................................... passim

Federal Rule of Evidence 408 ..............................................................................2, 10, 11

Federal Rule of Evidence 802 ...........................................................................................9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    SUMMARY OF ARGUMENT (STANDING ORDER NO. 5)

Courts have made unmistakably clear that Rule 17(c) does not warrant the issuance of sweeping subpoenas.  Nonetheless, the Defendant in this case has served on Hewlett-Packard Company ("HP") a subpoena with a broad scope that more closely resembles a civil discovery subpoena than the more narrowly-tailored subpoena contemplated for criminal trials.  The Defendant already possesses much of the information he requests, and any remaining information requests fall short of the relevancy, admissibility, and specificity requirements under Rule 17.  As such, this Court should quash the subpoena.

In November 2016, a federal grand jury indicted Sushovan Hussain, former Chief Financial Officer of Autonomy Corporation plc ("Autonomy"), on federal conspiracy and wire fraud charges for perpetrating a massive accounting fraud that concealed the true performance of Autonomy's business, financial condition, and prospects for growth.  These charges relate to HP's $11.2 billion acquisition of Autonomy in October 2011, and allege many materially false statements made by Mr. Hussain and other members of Autonomy management in connection with the acquisition.  The United States Attorney's Office for the Northern District of California ("USAO") has identified HP and related entities as victims of Mr. Hussain's extensive fraud.  Certification of Organizational Victim, ECF No. 20.

In May 2012, Mr. Hussain and other members of the Autonomy leadership team resigned from HP.  In the wake of these departures, HP began an internal investigation, which resulted in discovering that it had been deceived by Mr. Hussain and other former members of Autonomy management.  In late 2012, HP reported what it learned about the Autonomy fraud to the United States Securities and Exchange Commission ("SEC") and the USAO.  HP cooperated in the SEC's and USAO's parallel investigations of Autonomy's accounting fraud.

Since then, HP has expended significant resources to respond to hundreds of requests from, and to produce millions of documents to, the government.  These documents, as Mr. Hussain's counsel has acknowledged, have been provided by the government to Mr. Hussain during the course of this criminal action.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

But, rather than reviewing the materials that he already has in-hand, Mr. Hussain instead seeks to impose an additional and substantial burden on his victim by serving a Rule 17(c) subpoena for the production and cataloging of *73 requests and sub-requests* (collectively, the "Requests"). In addition to being overly broad and burdensome, the Requests are not permissible and fall well outside the limits of Federal Rule of Criminal Procedure Rule 17, as defined by the United States Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974), and other federal courts across the country – including this Court – in that:

- HP *already produced documents* responsive to 52 of the 73 Requests to the USAO and/or SEC and, therefore, Mr. Hussain either has or can readily procure those materials. *See United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981); *United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006).

- Twenty-five (25) Requests seek information that is *irrelevant* to the crimes charged in the indictment. *See Nixon*, 418 U.S. at 700; *United States v. Pac. Gas & Elec. Co.*, No. 14-cr-00175-THE-1 (MEJ), 2016 U.S. Dist. LEXIS 40587, at *7-8 (N.D. Cal. Mar. 28, 2016).

- At least 38 Requests seek evidence that is *inadmissible*, either because it is presumptively hearsay or, in one instance, pertains to settlement discussions and is thus inadmissible pursuant to Federal Rule of Evidence 408. *See Nixon*, 418 U.S. at 701.

- Sixty-three (63) Requests *fail the specificity standard* demanded by the law governing Rule 17 subpoenas. *Id.* at 700.

- At least 8 Requests on their face seek information *protected by the attorney-client privilege and/or attorney work-product doctrine.*[1] *See Reyes*, 239 F.R.D. at 598.

- Four (4) Requests seek *statements of prospective trial witnesses*, which are explicitly prohibited by Rule 17(h).

In sum, Mr. Hussain's Rule 17 subpoena is "unreasonable and oppressive" under the strict language of Rule 17 and well-settled case law. Accordingly, the Court should quash it.

## II.     BACKGROUND

### A.     HP Acquires Autonomy, Discovers And Reports A Significant Fraud

After acquiring Autonomy for more than $11 billion, HP's internal investigation revealed what HP viewed as significant accounting improprieties, disclosure failures, and other intentional misrepresentations perpetrated by Mr. Hussain and other members of Autonomy's former

---

[1] To the extent other Requests implicitly seek privileged information, this same argument applies.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

1  management.  HP engaged outside counsel, Morgan, Lewis & Bockius LLP ("Morgan Lewis"), to

2  lead its internal investigation, and Morgan Lewis retained PricewaterhouseCoopers LLP ("PwC")

3  as forensic accountants to assist with an investigation of Autonomy's pre-acquisition accounting

4  practices.

5      On November 16, 2012, HP reported to the SEC what it had learned about Autonomy's

6  deception, and the SEC subsequently referred the matter to the USAO.  Declaration of Susan D.

7  Resley ("Resley Decl.") ¶ 4.  Thereafter, the SEC and the USAO commenced parallel

8  investigations.  *Id.*  As might be expected of any fraud victim, HP cooperated – and continues to

9  cooperate – with these governmental investigations.

10     HP has produced millions of documents to the government in the course of the SEC's and

11  USAO's investigations.  Resley Decl. ¶ 9.  *First*, HP produced documents in response to two SEC

12  subpoenas, which sought broad categories of documents from both HP and Autonomy.  *Id.* at ¶ 5.

13  *Second*, HP produced documents responsive to a Grand Jury subpoena.  *Id.* at ¶ 6.  *Third*, from

14  2012 to present, HP has voluntarily produced materials in response to hundreds of informal

15  requests from the SEC and/or USAO.  *Id.* at ¶ 7.  *Fourth*, HP produced to the USAO all

16  documents disclosed to Mr. Hussain in connection with a separate civil action in the United

17  Kingdom that certain HP group entities are pursuing against him and Autonomy's former CEO,

18  Michael Lynch.  *Id.* at ¶ 8, Exh. 3.  The government is in possession of all of these documents

19  and, upon information and belief, has provided the documents to Mr. Hussain.  *Id.* at ¶ 9.

**B.    Federal Grand Jury Indicts Mr. Hussain On Fraud Charges**

21     On November 10, 2016, the Grand Jury in the Northern District of California returned an

22  Indictment charging Mr. Hussain with conspiracy to commit wire fraud, in violation of 18 U.S.C.

23  § 1349; wire fraud, in violation of 18 U.S.C. § 1343; and forfeiture counts.  Indictment 6-12, ECF

24  No. 1.  On May 4, 2017, the Grand Jury returned a Superseding Indictment, adding charges under

25  18 U.S.C. § 1348 (securities fraud) and 18 U.S.C. § 2 (aiding and abetting).  The charges allege

26  Mr. Hussain's scheme to defraud HP and others:

27          In or about Autonomy's first quarter 2009…defendant HUSSAIN,
            together with others, engaged in a fraudulent scheme to deceive
28          purchasers and sellers of Autonomy securities about the true

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

performance of Autonomy's business, its financial condition, and its prospects for growth.

Superseding Indictment 5:6-9, ECF No. 52.  The Superseding Indictment alleges that, in meeting with HP representatives in early 2011 about the potential acquisition of Autonomy, Mr. Hussain "used Autonomy's false and misleading statements from 2009, 2010, and 2011 to make Autonomy more attractive to a potential purchaser like HP." *Id.* at 5:16–19.  According to the Indictment, Mr. Hussain used a "variety of means and methods" in furtherance of his scheme to defraud, including: artificially inflating revenues; making false and misleading statements to auditors, market analysts, and regulators; making or causing false entries in Autonomy's books and records; and causing others to engage in similar conduct.  *Id.* at 5:20–6:22.

## C.   The Subpoena

HP has produced millions of documents to the government throughout the course of its investigation and Mr. Hussain's counsel has admitted that "[t]he government's production [of documents to counsel for Mr. Hussain] includes at least 10 million pages of documents produced by HP."  Decl. of Kate E. Lazarus in Supp. of Def.'s Mot. to Compel Produc. of Doc. from Government's Investigatory File 1:18-19, ECF No. 75.  Despite this, on July 19, 2017, Mr. Hussain served HP with a Rule 17 subpoena (the "Subpoena") containing 73 Requests.  Resley Decl. ¶¶ 2-3, Exhs. 1-2.  The Subpoena demands relate to various subjects, which can be organized into the following categories:

- HP's interest in, due diligence on, and acquisition of Autonomy and related matters. (Request Nos. 1–22)[2]

  - Included are requests for materials concerning HP's general acquisition strategy and acquisition policies and procedures unrelated to Autonomy, as well as HP's corporate structuring and tax treatment of the Autonomy transaction. (Nos. 2-4, 15-20).

- Certain hardware sales by Autonomy.  (Request Nos. 23–29)

- HP's efforts to integrate Autonomy and other acquired companies.  (Request Nos. 30, 39–40)

---

[2] For ease of reference HP has prepared a chart outlining the Requests and HP's objections.  *See* Appendix A.  All references to the Subpoena may be found at Resley Decl. ¶ 3, Exh. 2.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

- HP's post-acquisition valuation of Autonomy, including its November 2012 write-down of the Autonomy asset and its calculation of Autonomy revenue which was improperly recognized. (Request Nos. 31–37, 38, 47)

- Whistleblower complaints. (Request No. 41)

- Summaries of interviews conducted by HP or its outside counsel. (Request Nos. 42–44)

- Drafts, reports and underlying analysis performed by PwC. (Request No. 45)

- Communications between HP and Autonomy's former auditor, Deloitte, including communications relating to settlement discussions between HP and Deloitte. (Request Nos. 46, 48–51)

- Communications between HP and other government agencies. (Request Nos. 52 and 53)

Hoping to resolve some of the issues with the Subpoena before presentation to this Court, HP initiated a meet-and-confer session with counsel for Mr. Hussain. This occurred on July 31, 2017, but thus far Mr. Hussain's counsel has been unwilling to withdraw or limit the scope of the Subpoena. Resley Decl. ¶ 12, Exh. 5.

## III.   ARGUMENT

### A.   Discovery Under Federal Rule of Criminal Procedure 17 Must be Narrowly Tailored

The Subpoena oversteps the limits of discovery permitted under Rule 17(c). Although Rule 17(c) provides that a party may compel a "witness to produce any books, papers, documents, data, or other objects," *see* Fed. R. Crim. P. 17(c)(1), this Court has observed that it "is not as broad as its plain language suggests." *Reyes*, 239 F.R.D. at 597. As the Supreme Court has made clear, Rule 17(c) subpoenas are "not intended to provide a means of discovery for criminal cases." *Nixon*, 418 U.S. at 698; *see also Pac. Gas & Elec. Co.*, 2016 U.S. Dist. LEXIS 40587, at *7-8 ("a Rule 17(c) subpoena reaches only *evidentiary* materials – not all *discoverable* materials") (emphasis in original). A proponent may not seek records "on the possibility that the events may not have happened as described" by witnesses or victims, or where he does not know if helpful information exists in the requested materials. *United States v. Johnson*, No. CR 94-0048 SBA, 2007 U.S. Dist. LEXIS 95834, at *10-11 (N.D. Cal. Dec. 24, 2007). Further, Rule 17(c) does not permit defendants to bypass the limitations of discovery provided by the government pursuant to Rule 16. *Id.* at *5 (internal citations omitted) (*citing Bowman Dairy Co.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

1   *v. United States*, 341 U.S. 214, 220 (1951)); *United States v. Rodriguez*, No. 2:11-0296 WBS,

2   2016 WL 6440323, at *1 (E.D. Cal. Oct. 28, 2016) ("The discovery tools available to defendants

3   in criminal cases are limited, and are to be found elsewhere in the Federal Rules of Criminal

4   Procedure, not in Rule 17.").

5       While Mr. Hussain's Rule 17 subpoena reads like a civil discovery request, this is *not* civil

6   discovery and Mr. Hussain may not engage in a fishing expedition by serving an overly broad

7   Rule 17(c) subpoena on HP. *See United States v. Villa*, 503 F. App'x. 487, 489 (9th Cir. 2012)

8   (quashing subpoena because "Rule 17(c) was not intended as a discovery device, or to allow a

9   blind fishing expedition seeking unknown evidence") (internal quotations omitted).  To the

10  contrary, as the proponent, Mr. Hussain must clear several hurdles in relation to the Subpoena.

11  He must "demonstrate that the subpoenaed materials are not available from any other source."

12  *Eden*, 659 F.2d at 1381; *see also Reyes*, 239 F.R.D. at 598.  In addition, Mr. Hussain must

13  establish that each request: (1) is ***relevant*** to the crimes charged, (2) seeks ***admissible*** evidence,

14  and (3) is ***specific***.  *Nixon*, 418 U.S. at 700.  Mr. Hussain fails to meet his burden as to any of the

15  Requests and, therefore, the Subpoena should be quashed.

16      Even if Mr. Hussain can satisfy all three prongs (which he cannot), he still may not seek

17  materials protected by the attorney-client privilege or the attorney work product doctrine (*Reyes*,

18  239 F.R.D. at 598), or statements of prospective trial witnesses (which are explicitly prohibited

19  by Federal Rule of Criminal Procedure 17(h)).

20      **B.    Mr. Hussain Seeks Documents That He Already Possesses**

21      The vast majority of the documents Mr. Hussain requests in the Subpoena are already in

22  his possession or easily procured by him and, thus, not properly sought through a Rule 17(c)

23  subpoena.  As the Ninth Circuit has held, a subpoena proponent "must [] demonstrate that the

24  subpoenaed materials are not available from any other source." *Eden*, 659 F.2d at 1381

25  (affirming the trial court's conclusion that much of the requested material was otherwise

26  procurable, or already in the possession of the subpoena proponent).  Furthermore, this Court has

27  observed that "a court [also] must consider whether the materials are otherwise procurable

28  reasonably in advance of trial by exercise of due diligence [and] whether the proponent can

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

1  properly prepare for trial without such production and inspection in advance of trial…." *Reyes*,

2  239 F.R.D. at 598, citing *Nixon*, 418 U.S. at 699 (internal quotations omitted).

3      Mr. Hussain does not – and cannot – satisfy his burden for the simple reason that he

4  already has access to most of the requested documents. Fifty-two of the 73 Requests are for

5  materials that HP has produced to the USAO and/or SEC.[3] Resley Decl. ¶ 3. Accordingly, Mr.

6  Hussain likely already has received the majority, if not all, of these materials and can easily

7  procure the remainder from the government. *See United States v. Schneider*, No. CR 02-0403 SI,

8  2003 U.S. Dist. LEXIS 27324, at *21 (N.D. Cal. Nov. 18, 2003) (quashing 17(c) subpoena where

9  the proponent failed to show that the requested materials were "relevant, specific, and non-

10  cumulative" because, *inter alia*, the proponent already possessed some items demanded by the

11  subpoena); *United States v. Shabazz*, No. 97-183-FR, 1998 U.S. Dist. LEXIS 9826, at *5 (D. Or.

12  June 10, 1998) (quashing subpoena because, *inter alia*, proponent defendant had not shown that

13  requested documents were "not otherwise available from the United States Attorney's Office").

14      **C.   The Subpoena Fails To Meet The *Nixon* Factors**

15      Even if Mr. Hussain could demonstrate that he cannot reasonably procure the documents

16  from the government, the Court still should quash the Subpoena because it fails to meet the three

17  elements required of every Rule 17 subpoena request under *United States v. Nixon*: (1) relevancy;

18  (2) admissibility; and (3) specificity. 418 U.S. at 700; *see also Reyes*, 239 F.R.D. at 598.

19      **1.   Mr. Hussain Seeks Documents That Are Not Relevant**

20      A proponent of a Rule 17(c) subpoena may only request documents that have a "sufficient

21  likelihood" of being "relevant to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700;

22  *United States v. Roque*, No. CR 13-829 PA, 2014 U.S. Dist. LEXIS 197123 * (C.D. Cal. Aug. 18,

23  2014); *United States v. Salvagno*, 267 F. Supp. 2d 249, 253–54 (N.D.N.Y. 2003) (granting

24  motion to quash subpoena because it requested "records pertaining to materials far beyond the

25  scope of the Indictment"); *United States v. Shepard*, No. 4:09CR423 RWS DDN, 2010 WL

26  ───────────────

27  [3] The documents HP has produced to the USAO and/or SEC correspond to the following: Requests 1-10, 12-14, 16, 20-22, 24, 25, 27-29, 31-38, 41, 43, 44, and 50-52 (including all sub-requests). Resley Decl. ¶ 3. Regarding Requests 43 and 44, while HP continues to produce factual, non-privileged witness summaries to the USAO, Rule 17(h) expressly prohibits subpoenaing witness statements. (*See* Section D.2 below.)

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

750110, at *2 (E.D. Mo. Feb. 26, 2010) (quashing subpoena because the documents sought were "not relevant to the criminal charges in the indictment").  The subpoena request may not be "based on solely a mere hope that some relevant material might turn up." *Pac. Gas & Elec. Co.*, 2016 U.S. Dist. LEXIS 40587, *35 (internal quotations omitted) (rejecting subpoena request where proponent did not articulate "a clear sense of how it intends to ultimately use that information at trial").  It is "not enough [to] have some potential for relevance." *Roque*, 2014 U.S. Dist. LEXIS 197123, at *5.  Rather, the requesting party has a "duty to at least articulate how it believes the evidence sought to be evidentiary and relevant.  Conclusory arguments as to relevance are not well received." *Id.*; *see also United States v. Nguyen*, No. 13-cr-00295-RMW-1 (HRL), 2016 U.S. Dist. LEXIS 63673, *2 (N.D. Cal. May 13, 2016) (quashing subpoena because, *inter alia*, requests were irrelevant to the elements of the crime and therefore did not establish a proper "evidentiary purpose").

Here, Mr. Hussain demands information entirely unrelated to the indicted offenses – classic examples of basing on the "mere hope that some relevant material might turn up" – including the following:

- HP's merger and acquisition strategies, which are not specific to Autonomy (Request No. 4) – *See, e.g., Nguyen*, 2016 U.S. Dist. LEXIS 63673, at *2 (quashing subpoena requesting third party's policies and procedures relating to the loan at issue in the case).

- HP's corporate structure relating to the Autonomy transaction and HP's tax treatment of the Autonomy acquisition (Request Nos. 15-19) – *See United States v. Stukenbrock*, No. 5:15-cr-00034-EJD-1 (HRL), 2016 U.S. Dist. LEXIS 171563, *1-2 (N.D. Cal. Dec. 9, 2016) (quashing subpoena requesting information about investment fraud victim's financial information as irrelevant); *United States v. MacDonald*, No. 93-91-FR, 1993 U.S. Dist. LEXIS 13401, at *2-3 (D. Or. Sept. 22, 1993) (quashing requests for tax information where the proponent defendant failed to show relevance to the case).

- HP's efforts to integrate Autonomy and other companies HP acquired (Request Nos. 30, 39-40) – *See Nguyen*, 2016 U.S. Dist. LEXIS 63673, at *2 (quashing subpoena requesting third party's policies and procedures relating to the loan at issue in the case)

- HP's post-acquisition valuations of Autonomy and its November 2012 write-down of the Autonomy asset (Request Nos. 31-33, 37, 38, 47) – *See United States v. Burke*, No. S-05-0365 FCD, 2009 U.S. Dist. LEXIS 90287, at *8 (E.D. Cal. Sept. 16, 2009) (denying request for issuance of Rule 17 subpoena where, among other concerns, "the time period requested for records far exceeds the relevant time period in the indictment"); *United States v. Mason*, No. CR 05-324-RE, 2008 U.S. Dist. LEXIS 34537, at *5 (D. Or. Apr. 25,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

2008) (quashing subpoena for documents that pre-dated or post-dated the FBI's investigation of the defendant).

- Communications between HP and Deloitte or PwC (Request Nos. 45, 46, 48-51) – *See Pac. Gas & Elec. Co.*, 2016 U.S. Dist. LEXIS 40587, at *19 (quashing subpoena request where proponent did not make showing that documents sought would be relevant the case).

- Communications between HP and government agencies (Request Nos. 11, 52-53) – *See United States v. Carn*, No. 2:13-cr-00346-APG-GWF, 2016 U.S. Dist. LEXIS 3587, *5-6 (D. Nev. Jan. 11, 2016) (denying as overbroad requests seeking "information generally relating to the investigation which led to [the defendant's] current charges").

Because Mr. Hussain cannot demonstrate that these documents are relevant to the charges, the Court should quash these Requests.

### 2. Mr. Hussain Seeks Documents That Are Not Admissible

The subpoena proponent must make a "sufficient preliminary showing that . . . [the requested material] contains evidence admissible with respect to the offenses charged." *Nixon*, 418 U.S. at 700. *Nixon*'s admissibility requirement "is governed by the Federal Rules of Evidence." *United States v. Pac. Gas & Elec. Co.*, No. 14-cr-00175-THE, 2016 U.S. Dist. LEXIS 78798, at *6 (N.D. Cal June 16, 2016). As such, Mr. Hussain bears the burden of showing that the evidence he seeks will be admissible at trial for a purpose other than impeachment. *See Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) ("The only evidentiary use that defendants have been able to advance is that the statements and transcribed interviews of witnesses could be used for impeachment purposes. This use is generally insufficient to justify the pretrial production of documents."); *United States v. Cervantes*, No. 12-cr-00792-YGR-12 (KAW), 2016 U.S. Dist. LEXIS 75486, *4 (N.D. Cal. June 9, 2016) (quashing subpoena seeking material related to a potential witness for impeachment purposes). The Subpoena here seeks inadmissible hearsay and settlement communications and, thus, fails this test.

#### a. Hearsay: Rule 802

Hearsay is presumptively inadmissible unless it falls within a specific exemption. Fed. R. Evid. 802. Accordingly, a proponent of a Rule 17(c) subpoena may not seek hearsay information.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

1   *See, e.g., United States v. Collins*, No. 11-CR-00471-DLJ (PSG) 2013 U.S. Dist. LEXIS

2   36361 *11-12 (N.D. Cal. Mar. 15, 2013) (quashing subpoena requests seeking inadmissible

3   hearsay); *Reyes*, 239 F.R.D. at 600 (same).  And, yet, that is exactly what Mr. Hussain has done.

4   He seeks materials that are presumptively hearsay, including the following examples:

5   
6   • Memoranda or statements made by HP personnel or third parties concerning the
        acquisition (Request Nos. 1, 2, 11, 12, 14) – *See Collins*, 2013 U.S. Dist. LEXIS 36361,
7       at *8 (quashing subpoena requesting victim's chat logs and "written and electronic mail
        and notes or memoranda" regarding events at issue in the case as presumptively
8       inadmissible hearsay); *United States v. Sanchez*, No. CR S-05-0443 WBS, 2007 U.S. Dist.
        LEXIS 103945, *3 (E.D. Cal. Jan. 9, 2007) (denying authorization to issue 17(c) subpoena
9       because, *inter alia*, "[w]itness interviews, memoranda, notes, reports, and the debriefings
        of third parties would clearly appear to be hearsay").

10  
11  • Post-acquisition communications among HP personnel (Request No. 25- 27, 29-30, 34-36,
        38) – *See id.*

12  • Notes, summaries, and interview memoranda created during an internal investigation
13      (Request Nos. 42-44) – *See Reyes*, 239 F.R.D. at 600 (finding that 17(c) requests for
        summaries, notes, and memoranda related to interviews were inadmissible hearsay).

14  • Communications between HP and Deloitte or PwC (Request Nos. 45, 46, 48-51) – *See
15      Collins*, 2013 U.S. Dist. LEXIS 36361, at *11; *Sanchez*, 2007 U.S. Dist. LEXIS 103945,
        at *3.

16  
17  • Communications between HP and government agencies (Request Nos. 52 and 53) –  *See
        Reyes*, 239 F.R.D. at 600 (finding that communications between subpoenaed entity and
18      law enforcement were inadmissible hearsay).

19      To the extent that the Subpoena seeks inadmissible hearsay, the Court should quash it.

20              **b.  Compromise Offers And Negotiations: Rule 408**

21      "[E]vidence of…conduct or a statement made during compromise negotiations" is

22  generally inadmissible.  Fed. R. Evid. 408(a)(2).  The rationale behind this protection is twofold:

23  "(1) the evidence of compromise is irrelevant, since the offer may be motivated by desire for

24  peace rather than from any concession of weakness of position; [and] (2) a more consistently

25  impressive ground is promotion of the public policy favoring the compromise and settlement of

26  disputes."  *Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213-14 (9th Cir. 1990) (citing Fed. R. Evid. 408

27  advisory committee's note).  Even more fundamental is the recognition that "[s]ettlements

28  …would be inhibited if the [parties] would have to review whether a settlement could be binding

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

1  in subsequent cases." *Id.* In short, "any communications made in furtherance of settlement are

2  privileged." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 983 (6th

3  Cir. 2003).

4      Nevertheless, in Request 48 of the Subpoena, Mr. Hussain demands "[a]ll

5  communications regarding the Settlement Agreement between HP and Deloitte … and the

6  negotiation thereof" – i.e., precisely what is contemplated in Rule 408. In addition to being

7  irrelevant and otherwise inadmissible as hearsay, Mr. Hussain clearly is seeking documents for

8  the purpose of impeaching a trial witness – which is expressly forbidden by Rule 408.

9      **3. The Requests Fail The "Specificity" Requirement**

10      Each request made under a Rule 17(c) subpoena must be specific. *Nixon*, 418 U.S. at 700.

11  The specificity requirement "is not satisfied if a defendant does not know what the evidence

12  consists of or what it will show… Likewise, a defendant's mere hope the documents will produce

13  favorable evidence will not support the issuance of a subpoena." *United States v. Aguilar*, No.

14  CR 07-00030 SBA, 2008 U.S. Dist. LEXIS 63114, *18 (N.D. Cal. Aug. 1, 2008) (internal

15  citations and quotations omitted) (denying authorization for 17(c) subpoena for information

16  regarding two telephone numbers over a seven-month period because "vague and unspecific");

17  *see also Stukenbrock*, 2016 U.S. Dist. LEXIS 171563, at *6 (quashing subpoena issued "merely

18  with the hope of finding something helpful"); *United States v. Phoenix*, No. 5:14-cr-00318-LHK,

19  2015 U.S. Dist. LEXIS 141373, *7 (N.D. Cal. Oct. 15, 2015) (quashing subpoena where requests

20  did not identify "particular documents from particular custodians," but rather recited "broad

21  categories of documents").

22      Courts are particularly wary of requests for "any" or "all" documents of a certain type or

23  category. As this Court observed:

24      A demand for any and all documents relating to several categories of
25  subject matter rather than specific evidentiary items, suggests the
    subpoena's proponent seeks to obtain information helpful to the defense by
26      examining large quantities of documents, rather than to use Rule 17 for its
    intended purpose – to secure the production for a court proceeding of
27      specific admissible evidence.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

1    *Reyes*, 239 F.R.D. at 606 (internal quotations omitted); *see also Pac. Gas & Elec. Co.*, 2016 U.S.

2    Dist. LEXIS 40587, at *16 (quashing requests for "complete personnel files" of named

3    employees, "all payments to" those employees, and "all records and communications" regarding

4    the retention of counsel for those employees); *United States v. Booth*, No. 2:08-cr-00283-RCJ-

5    RJJ, 2011 U.S. Dist. LEXIS 142205, at *4 (D. Nev. Dec. 8, 2011) ("The best clue as to the intent

6    to 'fish' is the repeated use of the words 'any,' 'all,' and 'any and all.'"); *United States v. Zavala-*

7    *Tapia*, No. CR-2:09-297 WBS, 2010 U.S. Dist. LEXIS 137645, *3 (E.D. Cal. Dec. 17, 2010) ("A

8    subpoena signals a fishing expedition when it calls for 'any materials' regarding a particular

9    subject and 'any other information' and defines 'material information' as 'including' but 'not

10    limited to' the described information."); *Aguilar*, 2008 U.S. Dist. LEXIS 63114, at *18 ("Courts

11    will generally find the use of broad requests, such as for 'all files' or 'all records' pertaining to a

12    given subject, not sufficiently specific.").

13         With limited exception, the Requests in the Subpoena mirror the requests that courts in

14    this district have repeatedly quashed.  For instance, Mr. Hussain's requests do not identify

15    custodians or limit the time frame in which to search and thus, on their face, call for HP to review

16    data from dozens of custodians over a number of years.[4]  In addition, 32 of the Requests demand

17    "any" or "all" of a particular category of documents;[5] and, while 31 others do not explicitly

18    include the words "any" or "all," the effect is the same, as they seek "records," "documents,"

19    "memoranda," and "communications,"[6] the expansive definitions for which span *fourteen* lines of

20    the Subpoena Definitions.  Resley Decl. ¶ 3, Exh. 2.  These are precisely the types of "fishing

21    expedition[s]" that Rule 17 prohibits.

22

23    ─────────────────────

      [4] Of the combined 57 requests identified above, only 11 (Request Nos. 4, 8, 9, 10, 12, 25, 28, 33-

24    35, and 40) include any sort of a date restriction (though often only specifying an end date).  Only
      two, Requests 25 and 36, identify any particular custodians at issue; and Request 25 explicitly

25    includes as custodians all members of three distinct business units: (i) Mergers Acquisitions
      Divestitures and Outsourcing (MADO), (ii) External Financial Reporting (EFR), and (iii) Strategy

26    and Corporate Development (SCD).

      [5] Request Nos. 3-7, 9-12, 14, 15, 33, 34-38, 41-45, 48, 49, and 52 seek "any" or "all" of a

27    particular category of documents.

28    [6] Thirty-one (31) requests fall in this category: Request Nos. 1, 2, 13, 16-19, 23-32, 39, 40, 46,
      50, 51, and 53.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

### D.   The Court Should Quash The Subpoena On Additional Grounds

Even if Mr. Hussain met the *Nixon* factors – which he does not – the Court should quash the Subpoena because it (1) seeks material protected by the attorney-client privilege and attorney work product doctrine; (2) demands statements of prospective witnesses in prohibition of Rule 17; and (3) is unduly burdensome and oppressive.

#### 1.   Mr. Hussain Improperly Seeks Privileged Information

As this Court has ruled, "a Rule 17(c) subpoena should be quashed or modified if it calls for a privileged matter" – whether under the attorney-client privilege or the attorney work-product doctrine. *Reyes*, 239 F.R.D. at 598, citing 2 Federal Practice & Procedure § 275, at 258 (internal quotation omitted). Nevertheless, in at least eight of the Requests, Mr. Hussain demands privileged information.

##### a.   The Subpoena Seeks Materials Subject To The Attorney-Client Privilege

Request Nos. 15, 17 and 18 seek memoranda and analysis concerning HP's structuring and tax treatment of the Autonomy acquisition. Not only do these requests seek irrelevant and otherwise inadmissible information, they also implicate "communications made in confidence by a client to an attorney for the purpose of seeking professional legal advice," *Reyes*, 239 F.R.D. at 598, and therefore elicit privileged materials. The ban on requesting privileged materials also extends to communications with third parties that were engaged to assist HP's counsel in providing legal advice. *See Todd v. STAAR Surgical Co.*, No. CV-14-05263 MWF (RZX), 2015 WL 13388227, at *5 (C.D. Cal. Aug. 21, 2015) (It is "well-established that the attorney-client privilege may extend to communications with a third party where that third party has been retained as an agent for the purposes of assisting a lawyer in providing legal advice to a client."). The Court should quash all requests for privileged information. *See, e.g., United States v. Tomison*, 969 F. Supp. 587, 595 (E.D. Cal. 1997) (quashing Rule 17(c) subpoena that called for the production of attorney-client privileged material).

##### b.   The Subpoena Seeks Attorney Work Product

The attorney work product doctrine "protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *In re Grand Jury*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

*Subpoena*, 357 F.3d 900, 906-910 (9th Cir. 2004) (internal citations omitted) (immaterial whether

or when litigation begins; if a document was prepared or obtained "because of the prospect of

litigation," then the attorney's work product is protected from disclosure); *Hickman v. Taylor*,

329 U.S. 495, 510 (1947) (work product doctrine safeguards "written statements, private

memoranda and personal recollections prepared or formed by an adverse party's counsel in the

course of his legal duties").  Through the Subpoena, Mr. Hussain seeks privileged witness

interview notes from HP and from two law firms representing HP (Request Nos. 42 - 44).

Additionally, Mr. Hussain seeks reports from PwC that clearly constitute work product (Request

Nos. 45(a) - (b)).[7]  Accordingly, the Subpoena should be quashed.

### i.   Summaries of Interviews Conducted by HP Personnel

Request No. 42 seeks "all summaries, notes and memoranda of any interviews conducted

by HP personnel regarding its acquisition of Autonomy and Autonomy's pre-acquisition

accounting," which is classic attorney work product, inasmuch as they were prepared in

anticipation of litigation with Mr. Hussain and others. *See Upjohn Co. v. United States*, 449 U.S.

383, 399-400 (1981) ("[F]orcing an attorney to disclose notes and memoranda of witnesses' oral

statements is particularly disfavored because it tends to reveal the attorney's mental processes.");

*United States v. Nosal*, No. CR-08-0237 EMC, 2013 WL 1402336, at *2-3 (N.D. Cal. Apr. 5,

2013) (denying motion to compel production of interview notes and memoranda responsive to

Rule 17(c) subpoena because such documents are "protected as opinion work product");

*O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 643 (C.D. Cal. 2003) ("Notes and memoranda

of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled

to almost absolute immunity.") (internal citations omitted).  The Court should quash this Request.

### ii.   Materials Prepared by Outside Counsel

Morgan Lewis represented HP in connection with the government investigations, and

Proskauer Rose represented a Special Committee of HP's Board of Directors.  In July 2013, in

response to a request from the United Kingdom's Serious Fraud Office ("SFO"), HP produced

---

[7] To the extent these requests also implicate communications made in confidence between HP and
its counsel, or communications with third parties that were engaged to assist HP's counsel in
providing legal advice, they are further protected under the attorney-client privilege.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

1   factual witness summaries prepared by Morgan Lewis.  HP subsequently produced those

2   summaries to the government.  Resley Decl. ¶ 10.  In March 2017, the USAO requested that HP

3   produce "written summaries (and accompanying exhibits) of witness interviews" conducted by

4   Morgan Lewis and Proskauer Rose "in connection with their investigations into pre-acquisition

5   accounting irregularities at Autonomy Corporation plc."  The USAO made clear that it sought:

> "only documents and materials that contain factual, non-privileged,
> information about what a witness may have said," and that it was "*not*
> requesting documents or materials that contain or reflect content that is
> protected under the work product doctrine or attorney-client privilege or
> any other privilege belonging to HPE (or its predecessor HP); nor is the
> USAO asking for a waiver of any such protection or privilege etc."

10  Resley Decl. ¶ 10, Exh. 4 (emphasis added).  HP has produced (and continues to produce) these

11  non-privileged documents to the USAO.  Resley Decl. ¶ 10.

12      Mr. Hussain now demands in Request Nos. 43 and 44 "all summaries, notes and

13  memoranda related to" interviews conducted by Morgan Lewis and Proskauer Rose.  To the

14  extent these Requests seek anything but factual summaries, they call for attorneys' thoughts and

15  impressions, which clearly is privileged information.  *See Nosal*, 2013 WL 1402336 at *2-3.  As

16  such, there is no basis for requiring HP to produce them.

17      Moreover, HP's production of factual witness summaries does not undermine the

18  protections afforded under the attorney work product doctrine.  *See In re Lithium Ion Batteries*

19  *Antitrust Litig.*, No. 13-MD-02420 YGR, 2015 WL 1223972, at *3 (N.D. Cal. Mar. 17, 2015) (no

20  waiver of attorney-client privileged communications or work product protection where the

21  disclosed documents contained factual information and did not "contain or relay privileged

22  communications or otherwise protected information"); *Century Aluminum Co. v. AGCS Marine*

23  *Ins. Co.*, 285 F.R.D. 468, 471 (N.D. Cal. 2012) (no waiver where disclosed documents contain

24  factual information and do not clearly reveal attorney-client communications).

25          iii.    **Materials Prepared By PwC**

26      Request No. 45 seeks "all reports, memoranda, briefing notes, and documents prepared by

27  PwC summarizing its investigation or analysis regarding HP's acquisition of Autonomy and/or

28  Autonomy's pre-acquisition accounting."  These materials – prepared by PwC as forensic

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

1   accountants retained by Morgan Lewis (Resley Decl. ¶ 11) – are also attorney work product, to

2   which Mr. Hussain is not entitled.  *See In re Grand Jury Subpoena*, 357 F.3d at 907 (work

3   product doctrine applies to documents created by a consultant working for an attorney, provided

4   the documents were prepared or obtained because of the prospect of litigation).

5         HP's production to the USAO and SEC of PwC's March 6, 2013 "Interim Report" –

6   prepared at the request of the SFO and containing an accounting analysis of certain transactions

7   recorded in Autonomy's books and records (Resley Decl. ¶ 11) – does not mean that HP should

8   be required to produce collateral documents, drafts, and/or underlying materials.  *See SEC v.*

9   *Berry*, No. C07-04431 RMW HRL, 2011 WL 825742, at *6 (N.D. Cal. Mar. 7, 2011) ("Most

10   courts have held that, simply because a final product is disclosed to the public (or a third person),

11   an underlying privilege attaching to drafts of the final product is not destroyed."); *SEC v.*

12   *Schroeder*, No. C07-03798 JW HRL, 2009 WL 1125579, at *7 (N.D. Cal. Apr. 27, 2009)

13   (production of a final memorandum to the SEC did not waive privilege as to attorney-prepared

14   interview notes and drafts of the same memorandum).  Simply put, Mr. Hussain is not entitled to

15   any materials beyond those that have already been produced to the government.

16              **2.    Mr. Hussain Improperly Seeks Witness Statements**

17         "No party may subpoena a statement of a witness or of a prospective witness under this

18   rule." Fed. R. Crim. P. 17(h);*see also Johnson*, 2014 U.S. Dist. LEXIS 159788 at *6-7 ("Rule

19   17(c) subpoenas may not be used to obtain the statement of a witness or of a prospective witness

20   before they have testified, also known as Jencks Act materials.") (internal quotations omitted).

21   Contrary to Rule 17(h), Mr. Hussain seeks via Request Nos. 42 through 44 evidence of statements

22   witnesses made in interviews conducted as part of HP's internal investigation.[8]

23              **3.    Mr. Hussain Seeks To Impose An Unreasonable And Oppressive Burden**
**On A Non-Party Victim**
24

25         "[T]he court may quash or modify the subpoena if compliance would be unreasonable or

26   oppressive." Fed. R. Crim. P. 17(c)(2).  This is squarely applicable here – HP has already

27   

28   [8] Similarly, to the extent that Request No. 49 seeks transcripts, it also impermissibly seeks
statements of potential witnesses.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

1  produced to the government millions of documents, which have in turn been produced to Mr.

2  Hussain.  Yet, rather than reviewing these materials himself, Mr. Hussain now demands that HP

3  do the job of his counsel.  Resley Decl. ¶ 3, Exh. 2, Instruction No. 2 of Subpoena ("If responsive

4  documents have already been produced…identify such documents by Bates number.")  This is

5  patently unreasonable and burdensome.  *Phoenix*, 2015 U.S. Dist. LEXIS 141373, at *8-9 (where

6  recipient would need to review 190,000 emails and other materials, which "would require

7  hundreds of hours and substantial cost," court found that the burden on third party Rule 17

8  subpoena recipient would be "undue, especially in the short period of time provided").  *See also*

9  *Rodriguez*, 2016 WL 6440323, at *2 (quashing subpoena as unreasonable and oppressive where,

10  *inter alia*, "[c]omplying with the subpoena would require the movant to review terabytes of

11  electronic data, a lengthy and extremely costly process").  The law is well-settled:  the burden that

12  Mr. Hussain seeks to place on HP is impermissible.  The subpoena should be quashed.

13  **IV.   CONCLUSION**

14  The Subpoena here is "unreasonable or oppressive" within the meaning of Rule 17(c)(2)

15  and the case law, including squarely applicable decisions issued by the U.S. Supreme Court and

16  this Court.  Accordingly, HP respectfully requests that the Court grant its motion to quash the

17  Subpoena. In the event that the Court orders HP to produce certain categories of documents, HP

18  respectfully requests that the Court and parties to the case amend the Court's January 18, 2017

19  Amended Protective Order to include those documents as "Protected Materials," including those

20  documents responsive to Request Nos. 42–45 and 48–49.

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

| | |
|---|---|
| 1 | Dated:  August 9, 2017 |

Respectfully submitted,

By

SUSAN D. RESLEY
JENNY HARRISON
ALYSE J. GRAMAGLIA
LAUREN N. WENNER
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:  (415) 442-1000
Facsimile:   (415) 442-1001
susan.resley@morganlewis.com

MARTHA B. STOLLEY
CAROLYN A. SILANE
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Telephone:  (212) 309-6000
Facsimile:   (212) 309-6001
martha.stolley@morganlewis.com

MICHAEL LI-MING WONG
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:  (650) 849-5393
Facsimile:   (650) 442-5093
mwong@gibsondunn.com
*Attorneys for Hewlett-Packard Enterprise &*
*Hewlett-Packard Company*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NOTICE OF MOT. AND MOT. TO
QUASH SUBPOENA; MPA ISO MOTION
Case No. 3:16-cr-00462 (CRB)

# APPENDIX A

## TO NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA ISSUED TO NON-PARTY HEWLETT-PACKARD COMPANY PURSUANT TO RULE 17(C); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

APPENDIX A

| Req. No. | Request | Previously Produced by HP | Not Relevant | Not Admissible | Not Specific | Privileged And/Or Work Product | Statement Of A Potential Witness |
|---|---|---|---|---|---|---|---|
| 1 | Memoranda prepared by Leo Apotheker or Margaret Whitman setting out their executive vision for HP, including the document Mr. Apotheker described to the Department of Justice as a "vision paper" that he wrote in September 2010 to explain to the HP Board what he thought needed to be done at Hewlett-Packard. | X | | X | X | | |
| 2 | Memoranda prepared by Leo Apotheker, Shane Robison, or other HP executives, setting out strategic rationale(s) for HP's proposed acquisitions of Vertica, Tibco, and/or Autonomy. | X | | X | X | | |
| 3 | All documents related to Leo Apotheker's November 2010 presentation to the Board, in which he explained that HP "had to expand 'into new technologies that may today and in the future be outside of HP's core competencies,'" as described on page 29 of the Hewlett-Packard Company Independent Committee's Resolution Regarding Derivative Claims and Demands, dated January 10, 2014 (the "IC Resolution"). | X | | | X | | |
| 4 | All internal HP policy manuals or memoranda governing mergers and acquisitions for the period from January up to and including October 2011. | X | X | | X | | |
| 5 | All documents from any "preliminary due diligence" report compiled by HP, as described at page 27 of the IC Resolution. | X | | | X | | |
| 6 | All documents prepared for the "preliminary business case" supporting HP's acquisition of Autonomy, including the "detailed financial analysis of the target" and any supporting "published financial information, analyst reports, information obtained from the target and business-expert assumptions, and estimates," as described at page 28 of the IC Resolution. | X | | | X | | |
| 7 | All reports or presentations prepared by HP's investment bankers, who allegedly did a 'deep dive' on Autonomy and on other potential targets that would add software breadth to HP's platform'," as described on page 30 of the IC Resolution. | X | | | X | | |
| 8 | All minutes of all Board of Directors meetings or related committee meetings before or during 2011 that relate to the proposed Autonomy acquisition, including but not limited to: | X | | | | | |

MPA ISO MOT. TO QUASH SUBPOENA, APPENDIX A
Case No. 3:16-cr-00462 (CRB)

APPENDIX A

| Req. No. | Request | Previously Produced by HP | Not Relevant | Not Admissible | Not Specific | Privileged And/Or Work Product | Statement Of A Potential Witness |
|---|---|---|---|---|---|---|---|
| 8_A | The March 23, 2011 presentation to the Technology Committee. | X | | | | | |
| 8_B | The May 2011 presentation to the Board of the "preliminary business case" for the proposed acquisition, which "restated the business, technology and product rationale" therefor. | X | | | | | |
| 8_C | The July 19-21 Board meeting at which Leo Apotheker presented "the rationale for acquiring Autonomy" and described the acquisition as a "transformational opportunity," as set out on page 29 of the IC Resolution | X | | | | | |
| 8_D | The August 5, August 12, and August 16 "presentations that the Board received from its advisors or management," as described at page 34 of the IC Resolution. | X | | | | | |
| 8_E | The August 16 Board meeting, including any discussion related to Ms. Lesjak's, Mr. Holston's, and/or Mr. Lane's concerns about the proposed acquisition. | X | | | | | |
| 8_F | The August 17 Board meeting, including any discussion related to "the opposition/concerns expressed at the August 16 meeting by HP's CFO Lesjak," as described at page 34 of the IC Resolution. | X | | | | | |
| 9 | Copies of all presentations made to the Board of Directors and any related committees about the potential acquisition of Autonomy (at any time before or during 2011), including but not limited to those meetings set out in Request 8 above. | X | | | X | | |
| 10 | All communications or other documents related to, or contemplating, HP's efforts to cancel or back out of the Autonomy acquisition between July 1, 2011 and October 31, 2011. | X | | | X | | |
| 11 | All communications between HP or its representatives and anyone from the U.K. Takeover Panel related to U.K. takeover rules and/or the Autonomy acquisition. | | X | X | X | | |
| 12 | All notes, memoranda, minutes and IM chat messages that were taken, prepared, sent or received by HP personnel related to daily due diligence calls with Autonomy in August 2011. | X | | X | X | | |

APPENDIX A

| Req. No. | Request | Previously Produced by HP | Not Relevant | Not Admissible | Not Specific | Privileged And/Or Work Product | Statement Of A Potential Witness |
|---|---|---|---|---|---|---|---|
| 13 | Records showing which HP personnel accessed or downloaded particular documents in the electronic deal (or data) room, including the identity of the personnel, the identity of the document(s), and the date and time such documents were accessed or downloaded. | X | | | X | | |
| 14 | All communications sent or received by HP personnel that attached or discussed | X | | X | X | | |
| 14_A | KPMG's August 9, 2011 "Protect Tesla — Due diligence assistance" report, | X | | X | X | | |
| 14_B | KPMG's October 24, 2011 "Autonomy — closing balance sheet" presentation, and/or | X | | X | X | | |
| 14_C | KPMG's January 26, 2012 "Autonomy — closing balance sheet" presentation." | X | | X | X | | |
| 15 | Any HP communications or memoranda explaining how and/or why HP structured the Autonomy acquisition through H.P. Vision ("Bidco"), and how and/or why ownership of Autonomy was passed from Bidco to other HP entities. | | X | | X | X | |
| 16 | Documents or internal organization charts sufficient to understand the corporate structure of HP, the various HP entities that lie between HP and Bidco, any other HP entity that has an ownership interest in Autonomy, and the country of incorporation of such entities. | X | X | | X | | |
| 17 | HP memoranda explaining the tax treatment of the Autonomy acquisition. | | X | | X | X | |
| 18 | HP memoranda explaining the potential tax implications for HP and Bidco of proposed valuation adjustments and/or the proposed or actual write-down of Autonomy. | | X | | X | X | |
| 19 | Communications between HP and Her Majesty's Revenue & Customs (HMRC) related to the tax treatment of the Autonomy acquisition and/or HP's efforts to reclaim tax as a result of the writedown. | | X | | X | | |
| 20 | All emails from Morgan, Lewis & Bockius LLP ("MLB") to HP, Drinker Biddle or Freshfields forwarding an Excel spreadsheet entitled "2010 Revenue Matrix*" (where * is a wildcard that represents any character or combination of characters), or the content thereof. | X | | | | | |

APPENDIX A

| Req. No. | Request | Previously Produced by HP | Not Relevant | Not Admissible | Not Specific | Privileged And/Or Work Product | Statement Of A Potential Witness |
|---|---|---|---|---|---|---|---|
| 21 | All emails from MLB to HP, Drinker Biddle or Freshfields forwarding an Excel spreadsheet entitled "2009 Revenue Matrix*" (where * is a wildcard that represents any character or combination of characters), or the content thereof. | X | | | | | |
| 22 | All emails from MLB to HP, Drinker Biddle or Freshfields forwarding an Excel spreadsheet entitled "2008 Revenue Matrix*" (where * is a wildcard that represents any character or combination of characters), or the content thereof. | X | | | | | |
| 23 | Final invoices, contracts or agreements, and correspondence (including internal HP correspondence) related to each of the transactions identified in **Exhibit 1**, to the extent those documents have not previously been produced to the government. | | | | X | | |
| 24 | Final invoices, contracts or agreements entered into before October 3, 2011 (as well as any related correspondence) for sales of HP hardware by HP (a) to Autonomy for resale to Autonomy's customers, (b) directly to Autonomy's customers as part of a deal that went through Autonomy, or (c) to resellers—including but not limited to Insight, DTP, or CDW—in relation to any Autonomy deal, to the extent those agreements are not identified in Exhibit 1. | X | | | X | | |
| 25 | Internal emails, memoranda, IM chat messages, or proposed questions drafted, sent, or received by members of HP's (i) Mergers Acquisitions Divestitures and Outsourcing (MADO) unit, (ii) External Financial Reporting (EFR) unit, or (iii) Strategy and Corporate Development (SCD) unit, during the period from July 19, 2011 to October 3, 2011, that referred to Autonomy's hardware revenues or hardware sales. | X | | X | X | | |
| 26 | Internal emails or memoranda setting out David Duckworth's process for mapping Autonomy's hardware sales onto HP's "product" account. | | | X | X | | |
| 27 | Internal emails, memoranda, IM chat messages, or minutes of any meetings discussing the substance of: | X | | X | X | | |

APPENDIX A

| Req. No. | Request | Previously Produced by HP | Not Relevant | Not Admissible | Not Specific | Privileged And/Or Work Product | Statement Of A Potential Witness |
|---|---|---|---|---|---|---|---|
| 27_A | Rebecca Norris's November 4, 2011 email, which noted that Autonomy "had about $100 million in hardware revenue," and/or any related memoranda ("of [Ernst & Young's] review [of Deloitte's workpapers] and key areas of focus"). | X | | X | X | | |
| 27_B | Brian Outland's November 9, 2011 email, which noted that "there was approximately $100M of hardware revenue and some of it was sold at a less" | X | | X | X | | |
| 27_C | Kathryn Harvey's November 15, 2011 email, which referred to "approx $100M/ | X | | X | X | | |
| 27_D | Manish Sarin's November 15, 2011 email, which referred to "sell-through revenue where [Autonomy is] getting a margin as they sell Dell appliances" | X | | X | X | | |
| 27_E | Hardware-related agenda items in Rachel Scott's November 11, 2011 "EY Close Meeting" email; and/or | X | | X | X | | |
| 27_F | EY work papers discussing approximately $30 million in hardware sales in the first and second quarters of 2012. | X | | X | X | | |
| 28 | Contracts or agreements that include sales of hardware by HP Autonomy after October 3, 2011, including but not limited to the agreement described in Request 29 below. | X | | | X | | |
| 29 | HP emails or memoranda regarding HP's decision to recognize $6.0 million in revenue on a Q112 deal with Citi and/or Ernst & Young's disagreement with HP's decision, as identified in the document Bates-stamped HP-SEC-00854952. | X | | X | X | | |
| 30 | HP emails or memoranda regarding HP's efforts to integrate Autonomy and to capitalize on predicted synergies, including but not limited to documents showing that: | | X | X | X | | |
| 30_A | HP executives delayed the planned integration of: (i) HP's Information Management division and the Autonomy division; and/or (ii) Autonomy's IDOL technology and HP's structured-data solution, Vertica. | | X | X | X | | |
| 30_B | HP continued to favor the sales of HP products over Autonomy products, HP's business units and sales people were not given commission or credit (towards sales quotas or bonus thresholds) for selling Autonomy products, and HP's sales people disrupted Autonomy sales by offering discounts on other (HP and thirdparty) products instead; | | X | X | X | | |

MPA ISO MOT. TO QUASH SUBPOENA, APPENDIX A
Case No. 3:16-cr-00462 (CRB)

APPENDIX A

| Req. No. | Request | Previously Produced by HP | Not Relevant | Not Admissible | Not Specific | Privileged And/Or Work Product | Statement Of A Potential Witness |
|---|---|---|---|---|---|---|---|
| 30_C | HP's Enterprise, Storage, Servers and Networking (ESSN) division refused to certify Autonomy on its hardware, and | | X | X | X | | |
| 30_D | HP would not allow Autonomy staff to enter HP facilities after the acquisition. | | X | X | X | | |
| 31 | Spreadsheets or memoranda summarizing HP's rebasing exercise, including any interim or final assessments of the amount of Autonomy revenue that was allegedly improperly recognized or categorized. | X | X | | X | | |
| 32 | HP's August 2012 valuation model discussed by Meeta Sundenvala and Andy Johnson on August 16, 2012, the output of which valued Autonomy at approximately $13.7 billion, and any models, communications or presentations explaining how HP calculated that valuation. | X | X | | X | | |
| 33 | All presentations to, and related documents, memoranda, or minutes describing meetings held by, the HP Board about HP's rebasing exercise, HP's (or its advisors') adjusted valuations of Autonomy, and/or the proposed or final writedown, including presentations made to the Board on or between July 17, 2012 and November 16, 2012. | X | X | | X | | |
| 34 | Any communications sent or received by Margaret Whitman prior to November 20, 2012 related to any allegations of accounting improprieties at Autonomy. | X | | X | X | | |
| 35 | Any communications sent or received by Catherine Lesjak prior to November 20, 2012 related to any allegations of accounting improprieties at Autonomy, including any email instructions sent or received in October 2012 about calculation new valuations (and/or the "new base case" for) Autonomy. | X | | X | X | | |
| 36 | Any communications sent or received by Catherine Lesjak, Marc Levine, Henry Gomez, Howard Clabo, and/or the Edelman communications firm about whether HP had any support for its allegations regarding accounting improprieties at Autonomy, including but not limited to correspondence related to: | X | | X | X | | |
| 36_A | Requests to "explain[] $5 Billion" in November 2012; | X | | X | X | | |
| 36_B | Catherine Lesjak's November 30, 2012 questions about "the dcf analysis ... on the impact of the accounting irregularities and misrepresentations"; | X | | X | X | | |

APPENDIX A

| Req. No. | Request | Previously Produced by HP | Not Relevant | Not Admissible | Not Specific | Privileged And/Or Work Product | Statement Of A Potential Witness |
|---|---|---|---|---|---|---|---|
| 36_C | Marc Levine's November 30, 2012 acknowledgement that HP "never formally prepared anything to attribute the [alleged accounting] irregularities to the amount of the write down". | X | | X | X | | |
| 36_D | Rob Binns's December 5, 2012 email noting that it was "disingenuous ... not to talk about the delayed synergies at all"; and/or | X | | X | X | | |
| 36_E | Ernst & Young's refusal to support HP's proposed attribution of "a majority of the writedown to fraud. | X | | X | X | | |
| 37 | Any work papers that HP and/or Duff & Phelps prepared for EY related to the purchase price allocation, and any notes, communications, and or HP memoranda related to EY's audit of such work papers. | X | X | | | | |
| 38 | Any communications EY about the writedown of Autonomy, including but not limited to HP's explanations of the writedown and/or EY's refusal to support HP's proposed attribution of "a majority of the writedown to fraud." | X | X | | X | | |
| 39 | Internal presentations or memoranda related to HP's failure to integrate or synergize other major acquisitions, including Compaq, Palm, and EDS ("Other Acquisitions"). | | X | | X | | |
| 40 | Internal presentations or "scorecard decks" related to HP's Other Acquisitions' failure to meet targets, including but not limited to David Duckworth's "scorecards," financial presentations and forecasts for the 2011 and 2012 financial years. | | X | | X | | |
| 41 | Any whistleblower complaints, or notes about whistleblower complaints, received by HP about: Autonomy; Autonomy's accounting practices; HP's integration of Autonomy, or HP's public disclosures about Autonomy, the acquisition and integration, or the writedown. | X | | | X | | |
| 42 | All summaries, notes, and memoranda of any interviews conducted by HP personnel regarding its acquisition of Autonomy and Autonomy's pre-acquisition accounting. | | | X | X | X | X |
| 43 | All summaries, notes and memoranda related to the interviews of approximately 90 individuals conducted by Proskauer Rose LLP in connection with its investigation regarding HP's acquisition of Autonomy as described in the Hewlett-Packard Company Independent Committee's Resolution Regarding Derivative Claims and Demands ("IIC Resolution"). | X | | X | X | X | X |

APPENDIX A

| Req. No. | Request | Previously Produced by HP | Not Relevant | Not Admissible | Not Specific | Privileged And/Or Work Product | Statement Of A Potential Witness |
|---|---|---|---|---|---|---|---|
| 44 | All summaries, notes and memoranda related to interviews conducted or attended by Morgan, Lewis & Bockius LLP in connection with its investigation regarding HP's acquisition of Autonomy and/or Autonomy's pre-acquisition accounting. | X | | X | X | X | X |
| 45 | All reports, memoranda, briefing notes, and documents prepared by PwC summarizing its investigation or analysis regarding HP's acquisition of Autonomy and/or Autonomy's pre-acquisition accounting, including but not limited to: | | X | X | X | X | |
| 45_A | All reports, memoranda, briefing notes, and documents related to PwC's March 6, 2013 Interim Report; and | | X | X | X | X | |
| 45_B | All reports, memoranda, briefing notes, and documents related to work done pursuant to instructions received by PwC in October 2011 to conduct further investigative work. | | X | X | X | X | |
| 46 | Notes or memoranda from meetings or calls between HP and/or its advisors and Deloitte personnel related to the results of PwC's report, HP's rebasing exercise, and/or the restated Autonomy Corporation Limited ("ACL") and Autonomy Systems Limited ("ASL") financial statements. | | X | X | X | | |
| 47 | The "external valuation prepared in July 2012" that calculated an impairment charge of £237 million, as described in the 2011 ACL financial statements, and any correspondence, notes, or internal HP memoranda related thereto. | | X | | | | |
| 48 | All communications regarding the Settlement Agreement between HP and Deloitte executed in or about April 2016 (the "Settlement Agreement"), and the negotiation thereof, including all communications with Deloitte and/or the United States Attorney's Office for the Northern District of California. | | X | X | X | | |
| 49 | All documents and communications regarding any HP meetings with Deloitte since the execution of the Settlement Agreement, including any communications between HP and Deloitte about potential cooperation; any emails or documents exchanged between HP and Deloitte for discussion purposes; and any notes, summaries, or transcripts of meetings between HP and Deloitte. | | X | X | X | | X |

APPENDIX A

| Req. No. | Request | Previously Produced by HP | Not Relevant | Not Admissible | Not Specific | Privileged And/Or Work Product | Statement Of A Potential Witness |
|---|---|---|---|---|---|---|---|
| 50 | Documents and communications related to a meeting between Chris Yelland of HP, other HP representatives, and members of Deloitte's Autonomy audit team in the summer 2012 regarding Autonomy's accounts. | X | X | X | X | | |
| 51 | Documents and communications related to a meeting between representative of HP's legal department and the Head of Deloitte's Risk Group and any subsequent phone conversations between Chris Yelland of HP and Nigel Mercer of Deloitte regarding Autonomy's accounts and the termination of Deloitte's as Autonomy's auditors. | X | X | X | X | | |
| 52 | Any correspondence between HP and the United States Air Force, including but not limited to any show-cause letters or responses thereto. | X | X | X | X | | |
| 53 | Correspondence between HP or its representatives and the U.K. Serious Fraud Office related to HP's allegations about Autonomy and/or the SFO's investigation into Autonomy's pre-acquisition accounting. | | X | X | X | | |