ORIGINAL

FILED
2017 AUG 10 P 2: 03
SUSAN Y. SOONG
CLERK, US DISTRICT COURT
NO. DIST. OF CA.

1  MORGAN, LEWIS & BOCKIUS LLP
   SUSAN D. RESLEY, Bar No. 161808
2  susan.resley@morganlewis.com
   JENNY HARRISON, Bar No. 285164
3  jenny.harrison@morganlewis.com
   ALYSE J. GRAMAGLIA, Bar No. 287989
4  ali.gramaglia@morganlewis.com
   LAUREN N. WENNER, Bar No. 298942
5  lauren.wenner@morganlewis.com
   One Market, Spear Street Tower
6  San Francisco, CA  94105
   Tel:   +1.415.442.1000
7  Fax:   +1.415.442.1001

8  MARTHA B. STOLLEY, *Pro Hac Vice Application Pending*
   martha.stolley@morganlewis.com
9  CAROLYN A. SILANE, Bar No. 298113
   carolyn.silane@morganlewis.com
10 101 Park Avenue
   New York, NY 10178
11 Tel:   +1.212.309.6858
   Fax:   +1.212.309.6001

12
13 GIBSON, DUNN & CRUTCHER
   MICHAEL LI-MING WONG, Bar No. 194130
   mwong@gibsondunn.com
14 555 Mission Street, Suite 3000
   San Francisco, CA 94105
15 Tel:   +1.650.849.5393
   Fax:   +1.650.849.5093

16
17 Attorneys for Hewlett-Packard Enterprise &
   Hewlett-Packard Company

18            UNITED STATES DISTRICT COURT

19          NORTHERN DISTRICT OF CALIFORNIA

20             SAN FRANCISCO DIVISION

21 UNITED STATES OF AMERICA,          Case No. 3:16-cr-00462 CRB

22            Plaintiff,              DECLARATION OF SUSAN D. RESLEY
                                      IN SUPPORT OF MOTION TO QUASH
23        vs.                         SUBPOENA ISSUED TO NON-PARTY
                                      HEWLETT-PACKARD COMPANY
24 SUSHOVAN HUSSAIN,
                                      Date:   August 30, 2017
25            Defendant.             Time:   1:30 p.m.
                                      Place:  Courtroom 6, 17th Floor
26                                    Judge:  Hon. Charles R. Breyer

27                                    Date Filed:  November 10, 2016
                                      Trial Date:  February 26, 2018
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 93186306.2

DECLARATION OF SUSAN D. RESLEY
Case No. 3:16-cr-00462 (CRB)

1   I, Susan D. Resley, declare:

2       1.    I am a partner at Morgan, Lewis & Bockius LLP, attorneys of record for non-

3   parties Hewlett-Packard Enterprise ("HPE") and Hewlett-Packard Company ("HP"). I am

4   licensed to practice before all courts in the State of California and am admitted to practice before

5   this Court. I am one of the attorneys who has been representing HP and HPE in connection with

6   the government's investigation into Autonomy's accounting and disclosure practices. I have

7   personal knowledge of the following facts and, if called upon to do so, could and would testify

8   thereto.

9       2.    Attached hereto as **Exhibit 1** is a true and correct copy of a July 19, 2017 letter

10   from counsel for Defendant Sushovan Hussain attaching a July 12, 2017 Order Granting

11   Defendant Sushovan Hussain's Ex Parte Motion for Issuance of Rule 17 Subpoena to Hewlett-

12   Packard Company.

13       3.    The letter attached as Exhibit 1 also enclosed a Subpoena Issued to Hewlett-

14   Packard Company for the production of documents or objects in a criminal case. A true and

15   correct copy of the Subpoena is attached hereto as **Exhibit 2**. Fifty-two (52) of the Subpoena's

16   seventy-three (73) requests and sub-requests seek materials that HP has previously produced to

17   the government as described in Paragraphs 4-7 and 9-10 of this Declaration. These include:

18   Request Nos. 1-10, 12-14, 16, 20-22, 24-25, 27-29, 31, 38, 41, 43, 44 and 50-52 (including sub-

19   requests).

20       4.    On November 16, 2012, I participated on behalf of HP in a meeting with certain

21   members of the Staff of the San Francisco Regional Office of the United States Securities and

22   Exchange Commission ("SEC"). During that meeting, HP disclosed to the SEC that it had

23   discovered and begun investigating significant accounting improprieties, disclosure failures, and

24   other intentional misrepresentations it believed had been perpetrated on HP by Autonomy's

25   former Chief Financial Officer, Sushovan Hussain, and other members of Autonomy's former

26   management team. That investigation began shortly after Mr. Hussain and other members of the

27   Autonomy leadership team resigned from HP in May 2012. On information and belief, in late

28   November 2012, the SEC referred the matter to the United States Attorney's Office for the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 93186306.2

2

DECLARATION OF SUSAN D. RESLEY
Case No. 3:16-cr-00462 (CRB)

1 Northern District of California (the "USAO"), which subsequently opened an investigation.

2   5. On December 12, 2012 and January 30, 2014, the SEC served subpoenas on HP

3 seeking the production of documents responsive to a total of fifty-nine (59) different requests.

4 HP produced documents responsive to those requests.

5   6. On July 22, 2016, the USAO issued a Grand Jury Subpoena on HP. HP produced

6 documents responsive to the Grand Jury Subpoena.

7   7. Since November 2012, the USAO and SEC have made hundreds of specific

8 requests to HP for documents or categories of documents. HP has voluntarily produced

9 responsive documents to the extent that such documents existed and/or were in its possession,

10 custody and control.

11   8. At the request of the USAO, HP voluntarily produced documents to the USAO,

12 which were produced to Mr. Hussain in a pending civil action brought by certain HP group

13 entities against Mr. Hussain and Autonomy's former Chief Executive Officer, Michael Lynch, in

14 the High Court of Justice, Chancery Division in the United Kingdom. Attached as **Exhibit 3** is a

15 true and correct copy of that request, dated August 29, 2016.

16   9. On information and belief, HP has produced millions of documents to the SEC

17 and/or USAO since November 2012. Additionally, on information and belief and based on

18 statements made by counsel for Mr. Hussain, including at the May 10, 2017 status hearing, the

19 USAO has produced to Mr. Hussain all, if not substantially all, of the documents HP produced to

20 the government.

21   10. In July 2013, in response to a request from the Serious Fraud Office ("SFO") in

22 the United Kingdom, HP produced factual witness summaries prepared by Morgan Lewis. HP

23 subsequently produced those summaries to the USAO and SEC. On March 29, 2017, the USAO

24 requested that HP:

25   ...produce, on a voluntary basis, all written summaries (and accompanying
   exhibits) of witness interviews conducted by Morgan, Lewis & Bockius
26   LLP and Proskauer Rose LLP in connection with their investigations into
   pre-acquisition accounting irregularities at Autonomy Corporation plc. By
27   this request, the USAO seeks only documents and materials that contain
   factual, non-privileged, information about what a witness may have said.
28   The USAO is not requesting documents or materials that contain or reflect

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 93186306.2   3   DECLARATION OF SUSAN D. RESLEY
Case No. 3:16-cr-00462 (CRB)

content that is protected under the work product doctrine or attorney-client privilege or any other privilege belonging to HPE (or its predecessor HP); nor is the USAO asking for a waiver of any such protection or privilege etc.

A true and correct copy of the March 29, 2017 request is attached hereto as **Exhibit 4**. HP has been producing non-privileged factual witness summaries to the USAO in response to this request.

11.     In March 2013, at the request of the SFO, HP produced an Interim Report dated March 6, 2013 that was prepared by PricewaterhouseCoopers, LLP ("PwC"), forensic accounts retained by Morgan Lewis. The Interim Report contained an accounting analysis of certain transactions recorded in Autonomy's books and records. HP subsequently produced the Interim Report to the USAO and SEC.

12.     On July 31, 2017, I participated in a meet and confer session with counsel for Mr. Hussain concerning the Rule 17 Subpoena. Following this initial telephone call, I sent a letter to counsel for Mr. Hussain on behalf of HP on August 3, 2017 setting forth HP's objections to that subpoena. A true and correct copy of that letter is attached hereto as **Exhibit 5**. I have not received a response to my August 3, 2017 letter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 9th day of August, 2017 at San Francisco, California.

By: _____
     Susan D. Resley

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 93186306.2                                    4

DECLARATION OF SUSAN D. RESLEY
Case No. 3:16-cr-462 (CRB)

# EXHIBIT 1

## TO DECLARATION OF SUSAN D. RESLEY IN SUPPORT OF MOTION TO QUASH SUBPOENA ISSUED TO NON-PARTY HEWLETT-PACKARD COMPANY



**KEKER**
**VAN NEST**
**& PETERS**

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com

**Jan Nielsen Little**
(415) 676-2211
jlittle@keker.com

July 19, 2017

<u>**VIA EMAIL AND COURIER**</u>

Susan D. Resley
Morgan Lewis
One Market, Spear Street Tower
San Francisco, CA  94105-1596
*susan.resley@morganlewis.com*

Re:     *United States v. Sushovan Hussain*
         Case No. 16-cr-00462-CRB

Dear Susan:

Per our discussion enclosed please find subpoena to Hewlett Packard issued under Federal Rule of Criminal Procedure Rule 17(c), as well as a copy of the SEALED order authorizing the subpoena.  The order and the subpoena call for the production of documents to the Court on or before August 2, 2017.  Per our conversation, I understand that you are accepting service of this subpoena for documents held by all HP entities [Hewlett Packard Company, Hewlett Packard Enterprises, Hewlett Packard, Inc. etc.] and subsidiaries thereof.  If my understanding is incorrect please let me know immediately.

Very truly yours,

Jan Nielsen Little

JNL:srg

Enclosures

1178551.01

KEKER, VAN NEST & PETERS LLP
JOHN W. KEKER - # 49092
jkeker@keker.com
JAN NIELSEN LITTLE - # 100029
jlittle@keker.com
BROOK DOOLEY - # 230423
bdooley@keker.com
KATE E. LAZARUS - # 268242
klazarus@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
IAN KANIG - # 293625
ikanig@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
SUSHOVAN HUSSAIN

**FILED**

JUL 1 2 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:16-cr-00462-CRB |
| Plaintiff, | [PROPOSED] ORDER GRANTING DEFENDANT SUSHOVAN HUSSAIN'S EX PARTE MOTION FOR ISSUANCE OF RULE 17 SUBPOENA TO HEWLETT PACKARD COMPANY |
| v. | |
| SUSHOVAN HUSSAIN, | |
| Defendant. | Dept.:     Courtroom 6, 17th Floor |
| | Judge:    Hon. Charles R. Breyer |
| | Date Filed:  November 10, 2016 |
| | Trial Date:  January 29, 2018 |

<u>**DOCUMENT SUBMITTED UNDER SEAL**</u>

[PROPOSED] ORDER
Case No. 3:16-cr-00462-CRB

1176321

1       The Court, having considered defendant Sushovan Hussain's *Ex Parte* Motion for an

2  Order Granting Issuance of a Rule 17(c) Subpoena to Hewlett Packard Company, finds that the

3  requested pre-trial relief is necessary and appropriate.  Moreover, the Court finds Mr. Hussain has

4  shown good cause for filing the motion *ex parte* and under seal.

5       Accordingly, **IT IS HEREBY ORDERED** that Mr. Hussain's *Ex Parte* Motion pursuant

6  to Federal Rule of Criminal Procedure 17(c) is **GRANTED** and that Mr. Hussain is permitted to

7  issue the filed subpoena to Hewlett Packard Company as proposed.  The requested documents

8  shall be returned to the Court within twenty-one (21) days.  This order shall be maintained under

9  seal pursuant to Local Criminal Rule 17-2(a).

11      **SO ORDERED.**

13  Dated:  **JUL 1 2 2017**

                                    Hon. Charles R. Breyer
                                    United States District Judge
                                    Northern District of California

# EXHIBIT 2

## TO DECLARATION OF SUSAN D. RESLEY IN SUPPORT OF MOTION TO QUASH SUBPOENA ISSUED TO NON-PARTY HEWLETT-PACKARD COMPANY

CAND 89B (Rev. 6/17) Subpoena to Produce Documents or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SUSHOVAN HUSSAIN<br><br>Defendant(s). | SUBPOENA TO PRODUCE<br>DOCUMENTS OR OBJECTS<br>IN A CRIMINAL CASE<br><br>Case No.: 3:16-cr-00462-CRB |

TO: Hewlett Packard Company
c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington DE 19801

YOU ARE COMMANDED to produce at the place, date, and time specified the document(s) or object(s) indicated below. If compliance would be unreasonable or oppressive, you may file a motion requesting the court to quash or modify the subpoena, to review the documents in camera, or to permit production only pursuant to a protective order.

| PLACE | | | | COURTROOM/JUDGE |
|---|---|---|---|---|
| ☒ U.S. Courthouse<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 | ☐ U.S. Courthouse<br>280 South First St.<br>San Jose, CA 95113 | ☐ U.S. Courthouse<br>3140 Boeing Ave.<br>McKinleyville, CA 95519 | ☐ U.S. Courthouse<br>1301 Clay Street<br>Oakland, CA 94612 | Judge Charles Breyer |
| | | | | DATE AND TIME |

*If the document(s) or object(s) are produced in advance of the date specified, either to the court in an envelope delivered to the clerk's office or to the issuing attorney whose name and address appears below, no appearance is necessary.*

The following document(s) or object(s) shall be produced:
See Attachment A

NOTE: Subpoena forms requiring the appearance of a witness to testify at a criminal proceeding or to testify and bring documents to a criminal proceeding, must use Form CAND 89A, *Subpoena to Testify in a Criminal Case*) or for the production of state law enforcement personnel or complaint records (CAND 89C, *Subpoena to Produce State Law Enforcement Personnel Or Complaint Records in a Criminal Case*) are available at the Court's website: cand.uscourts.gov.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT<br>SUSAN Y. SOONG<br><br>(By) Deputy Clerk | DATE<br><br>JUL 1 4 2017 |
|---|---|

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
John W. Keker; Keker, Van Nest & Peters, LLP; 633 Battery Street, San Francisco, CA 94111; Tel: 415-391-5400

American LegalNet, Inc.
www.FormsWorkFlow.com 

CAND 89B (Rev. 6/17) Subpoena to Produce Documents or Objects in a Criminal Case

| PROOF OF SERVICE | | |
|---|---|---|
| **RECEIVED BY SERVER** | DATE | PLACE |
| **SERVED** | DATE | PLACE |
| SERVED ON (PRINT NAME) | | FEES AND MILEAGE TENDERED TO WITNESS<br><br>☐ YES  ☐ NO   AMOUNT $ |
| SERVED BY (PRINT NAME) | | TITLE |

| DECLARATION OF SERVER |
|---|
| I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.<br><br>Executed on _____<br>                    DATE<br><br>                    _____<br>                    SIGNATURE OF SERVER<br><br>                    ADDRESS: |

| ADDITIONAL INFORMATION |
|---|
| |


American LegalNet, Inc.
www.FormsWorkFlow.com

# ATTACHMENT A

## DEFINITIONS

1.     "You" or "your" or "HP" shall mean the Hewlett Packard-Company, Hewlett-Packard Enterprise, and/or any of their parents, divisions, affiliates, employees, agents, representatives, attorneys, consultants, or other persons acting on their behalf, including but not limited to HP Vision B.V. ("Bidco").

2.     "Communication" means every manner or method of disclosure or transfer or exchange of information, whether orally or by document, and whether face to face, by telephone, mail, e-mail, facsimile, personal delivery or otherwise.

3.     As used in this subpoena, the terms "documents" and "records" include, but are not limited to, all books, papers, letters, correspondence, subpoenas, reports, memoranda, studies, calendars, appointment books, diaries, notes, messages, instant messages, IM chat messages, cell-phone text messages, computer facilitated or transmitted materials, electronically stored information, telephonic voicemails (including those delivered or stored using Voice over Internet Protocol technologies), metadata, images, photographs, information in any computer database, audio and video recordings, transcripts, ledgers, printouts, contracts, checks, receipts, and all copies or portions thereof, and any other written, recorded, or memorialized material of any nature whatsoever. To the extent that any documentary discovery is also contained in any format other than a paper copy (for example, a computerized file or database), such electronic versions, including all available metadata, should *also* be produced in addition to the paper copy.

1

**INSTRUCTIONS**

1.      Use of the singular or plural in this subpoena should not be deemed a limitation, and the use of the singular should be construed to include, where appropriate, the plural. The conjunctive form "and" and the disjunctive form "or" are mutually interchangeable and encompass each other. The terms "any" and "all" are mutually interchangeable and encompass each other.

2.      If responsive documents have already been produced (a) to the United States Attorney's Office or (b) to Mr. Hussain in connection with *Autonomy Corporation Limited, Hewlett-Packard Vision BV, Autonomy Systems Limited, Autonomy, Inc. v Dr Michael Lynch and Sushovan Hussain,* Claim Number HC-2015-001324 (the "U.K. Action"), identify such documents by Bates number.

3.      Documents should be Bates-stamped with the producing party's initials and should be consecutively numbered.

4.      Electronically stored information should be produced in native format, specifically preserving and producing attachments, and as single-page TIFF images, multipage text files with Concordance and Opticon load files and OCR.

5.      Documents should be produced in the booklet, binder, file, folder, envelope, or other container in which the documents are kept or maintained by you. If for any reason the container cannot be produced, please produce copies of all labels or other identifying markings. Documents attached to each other should not be separated.

6.      If a document once existed, but has been lost, destroyed, erased or otherwise is no longer in your possession, identify the document and state the details concerning the loss or destruction of such document, including the name and address of the present custodian of any such document known to you.

7.      In the event any document is withheld on a claim of attorney/client privilege or work product immunity, provide a detailed privilege log that includes:

      a.      the date of the document;

      b.      the author(s) of the document;

      c.      the recipient(s) of the document;

      d.      a description of the subject and purpose of the document sufficient to permit an evaluation of the claim of privilege.

## DOCUMENTS REQUESTED

1.    Memoranda prepared by Léo Apotheker or Margaret Whitman setting out their executive vision for HP, including the document Mr. Apotheker described to the Department of Justice as a "vision paper" that he wrote in September 2010 to explain to the HP Board what he thought needed to be done at Hewlett-Packard.

2.    Memoranda prepared by Léo Apotheker, Shane Robison, or other HP executives, setting out strategic rationale(s) for HP's proposed acquisitions of Vertica, Tibco, and/or Autonomy.

3.    All documents related to Léo Apotheker's November 2010 presentation to the Board, in which he explained that HP "had to expand 'into new technologies that may today and in the future be outside of HP's core competencies,'" as described on page 29 of the Hewlett-Packard Company Independent Committee's Resolution Regarding Derivative Claims and Demands, dated January 10, 2014 (the "IC Resolution").

4.    All internal HP policy manuals or memoranda governing mergers and acquisitions for the period from January up to and including October 2011.

5.    All documents from any "preliminary due diligence" report compiled by HP, as described at page 27 of the IC Resolution.

6.    All documents prepared for the "preliminary business case" supporting HP's acquisition of Autonomy, including the "detailed financial analysis of the target" and any supporting "published financial information, analyst reports, information obtained from the target and business-expert assumptions, and estimates," as described at page 28 of the IC Resolution.

7.    All reports or presentations prepared by HP's investment bankers, who allegedly did a "'deep dive' on Autonomy and on other potential targets that would add software breadth to HP's platform," as described on page 30 of the IC Resolution.

8.    All minutes of all Board of Directors meetings or related committee meetings before or during 2011 that relate to the proposed Autonomy acquisition, including but not limited to:

    a.    The March 23, 2011 presentation to the Technology Committee.

    b.    The May 2011 presentation to the Board of the "preliminary business case" for the proposed acquisition, which "restated the business, technology and product rationale" therefor.

    c.    The July 19–21 Board meeting at which Léo Apotheker presented "the rationale for acquiring Autonomy" and described the acquisition as a "transformational opportunity," as set out on page 29 of the IC Resolution.

d.  The August 5, August 12, and August 16 "presentations that the Board received from its advisors or management," as described at page 34 of the IC Resolution.

e.  The August 16 Board meeting, including any discussion related to Ms. Lesjak's, Mr. Holston's, and/or Mr. Lane's concerns about the proposed acquisition.

f.  The August 17 Board meeting, including any discussion related to "the opposition/concerns expressed at the August 16 meeting by HP's CFO Lesjak," as described at page 34 of the IC Resolution.

9.  Copies of all presentations made to the Board of Directors and any related committees about the potential acquisition of Autonomy (at any time before or during 2011), including but not limited to those meetings set out in Request 8 above.

10.  All communications or other documents related to, or contemplating, HP's efforts to cancel or back out of the Autonomy acquisition between July 1, 2011 and October 31, 2011.

11.  All communications between HP or its representatives and anyone from the U.K. Takeover Panel related to U.K. takeover rules and/or the Autonomy acquisition.

12.  All notes, memoranda, minutes and IM chat messages that were taken, prepared, sent or received by HP personnel related to daily due diligence calls with Autonomy in August 2011.

13.  Records showing which HP personnel accessed or downloaded particular documents in the electronic deal (or data) room, including the identity of the personnel, the identity of the document(s), and the date and time such documents were accessed or downloaded.

14.  All communications sent or received by HP personnel that attached or discussed
(a) KPMG's August 9, 2011 "Protect Tesla – Due diligence assistance" report,
(b) KPMG's October 24, 2011 "Autonomy – closing balance sheet" presentation, and/or
(c) KPMG's January 26, 2012 "Autonomy – closing balance sheet" presentation."

15.  Any HP communications or memoranda explaining how and/or why HP structured the Autonomy acquisition through H.P. Vision ("Bidco"), and how and/or why ownership of Autonomy was passed from Bidco to other HP entities.

16.  Documents or internal organization charts sufficient to understand the corporate structure of HP, the various HP entities that lie between HP and Bidco, any other HP entity that has an ownership interest in Autonomy, and the country of incorporation of such entities.

17.  HP memoranda explaining the tax treatment of the Autonomy acquisition.

18.  HP memoranda explaining the potential tax implications for HP and Bidco of proposed valuation adjustments and/or the proposed or actual writedown of Autonomy.

19.   Communications between HP and Her Majesty's Revenue & Customs (HMRC) related to the tax treatment of the Autonomy acquisition and/or HP's efforts to reclaim tax as a result of the writedown.

20.   All emails from Morgan, Lewis & Bockius LLP ("MLB") to HP, Drinker Biddle or Freshfields forwarding an Excel spreadsheet entitled "2010 Revenue Matrix*" (where * is a wildcard that represents any character or combination of characters), or the content thereof.

21.   All emails from MLB to HP, Drinker Biddle or Freshfields forwarding an Excel spreadsheet entitled "2009 Revenue Matrix*" (where * is a wildcard that represents any character or combination of characters), or the content thereof.

22.   All emails from MLB to HP, Drinker Biddle or Freshfields forwarding an Excel spreadsheet entitled "2008 Revenue Matrix*" (where * is a wildcard that represents any character or combination of characters), or the content thereof.

23.   Final invoices, contracts or agreements, and correspondence (including internal HP correspondence) related to each of the transactions identified in **Exhibit 1**, to the extent those documents have not previously been produced to the government.

24.   Final invoices, contracts or agreements entered into before October 3, 2011 (as well as any related correspondence) for sales of HP hardware by HP (a) to Autonomy for resale to Autonomy's customers, (b) directly to Autonomy's customers as part of a deal that went through Autonomy, or (c) to resellers—including but not limited to Insight, DTP, or CDW—in relation to any Autonomy deal, to the extent those agreements are not identified in Exhibit 1.

25.   Internal emails, memoranda, IM chat messages, or proposed questions drafted, sent, or received by members of HP's (i) Mergers Acquisitions Divestitures and Outsourcing (MADO) unit, (ii) External Financial Reporting (EFR) unit, or (iii) Strategy and Corporate Development (SCD) unit, during the period from July 19, 2011 to October 3, 2011, that referred to Autonomy's hardware revenues or hardware sales.

26.   Internal emails or memoranda setting out David Duckworth's process for mapping Autonomy's hardware sales onto HP's "product" account.

27.   Internal emails, memoranda, IM chat messages, or minutes of any meetings discussing the substance of:

    a.   Rebecca Norris's November 4, 2011 email, which noted that Autonomy "had about $100 million in hardware revenue," and/or any related memoranda ("of [Ernst & Young's] review [of Deloitte's workpapers] and key areas of focus").

    b.   Brian Outland's November 9, 2011 email, which noted that "there was approximately $100M of hardware revenue and some of it was sold at a less".

    c.   Kathryn Harvey's November 15, 2011 email, which referred to "approx $100M/

year in revenue coming from the sale of Dell HW products".

    d.    Manish Sarin's November 15, 2011 email, which referred to "sell-through revenue where [Autonomy is] getting a margin as they sell Dell appliances".

    e.    Hardware-related agenda items in Rachel Scott's November 11, 2011 "EY Close Meeting" email; and/or

    f.    EY work papers discussing approximately $30 million in hardware sales in the first and second quarters of 2012.

28.    Contracts or agreements that include sales of hardware by HP Autonomy after October 3, 2011, including but not limited to the agreement described in Request 29 below.

29.    HP emails or memoranda regarding HP's decision to recognize $6.0 million in revenue on a Q112 deal with Citi and/or Ernst & Young's disagreement with HP's decision, as identified in the document Bates-stamped HP-SEC-00854952.

30.    HP emails or memoranda regarding HP's efforts to integrate Autonomy and to capitalize on predicted synergies, including but not limited to documents showing that:

    a.    HP executives delayed the planned integration of: (i) HP's Information Management division and the Autonomy division; and/or (ii) Autonomy's IDOL technology and HP's structured-data solution, Vertica;

    b.    HP continued to favor the sales of HP products over Autonomy products, HP's business units and sales people were not given commission or credit (towards sales quotas or bonus thresholds) for selling Autonomy products, and HP's sales people disrupted Autonomy sales by offering discounts on other (HP and third-party) products instead;

    c.    HP's Enterprise, Storage, Servers and Networking (ESSN) division refused to certify Autonomy on its hardware; and

    d.    HP would not allow Autonomy staff to enter HP facilities after the acquisition.

31.    Spreadsheets or memoranda summarizing HP's rebasing exercise, including any interim or final assessments of the amount of Autonomy revenue that was allegedly improperly recognized or categorized.

32.    HP's August 2012 valuation model discussed by Meeta Sunderwala and Andy Johnson on August 16, 2012, the output of which valued Autonomy at approximately $13.7 billion, and any models, communications or presentations explaining how HP calculated that valuation.

33.    All presentations to, and related documents, memoranda, or minutes describing meetings held by, the HP Board about HP's rebasing exercise, HP's (or its advisors') adjusted valuations of Autonomy, and/or the proposed or final writedown, including presentations

made to the Board on or between July 17, 2012 and November 16, 2012.

34.  Any communications sent or received by Margaret Whitman prior to November 20, 2012 related to any allegations of accounting improprieties at Autonomy.

35.  Any communications sent or received by Catherine Lesjak prior to November 20, 2012 related to any allegations of accounting improprieties at Autonomy, including any email instructions sent or received in October 2012 about calculation new valuations (and/or the "new base case" for) Autonomy.

36.  Any communications sent or received by Catherine Lesjak, Marc Levine, Henry Gomez, Howard Clabo, and/or the Edelman communications firm about whether HP had any support for its allegations regarding accounting improprieties at Autonomy, including but not limited to correspondence related to:

   a.  Requests to "explain[] $5 Billion" in November 2012;

   b.  Catherine Lesjak's November 30, 2012 questions about "the dcf analysis ... on the impact of the accounting irregularities and misrepresentations";

   c.  Marc Levine's November 30, 2012 acknowledgement that HP "never formally prepared anything to attribute the [alleged accounting] irregularities to the amount of the write down";

   d.  Rob Binns's December 5, 2012 email noting that it was "disingenuous ... not to talk about the delayed synergies at all"; and/or

   e.  Ernst & Young's refusal to support HP's proposed attribution of "a majority of" the writedown to fraud.

37.  Any work papers that HP and/or Duff & Phelps prepared for EY related to the purchase price allocation, and any notes, communications, and or HP memoranda related to EY's audit of such work papers.

38.  Any communications EY about the writedown of Autonomy, including but not limited to HP's explanations of the writedown and/or EY's refusal to support HP's proposed attribution of "a majority of the writedown to fraud."

39.  Internal presentations or memoranda related to HP's failure to integrate or synergize other major acquisitions, including Compaq, Palm, and EDS ("Other Acquisitions").

40.  Internal presentations or "scorecard decks" related to HP's Other Acquisitions' failure to meet targets, including but not limited to David Duckworth's "scorecards," financial presentations and forecasts for the 2011 and 2012 financial years.

41.  Any whistleblower complaints, or notes about whistleblower complaints, received by HP about: Autonomy; Autonomy's accounting practices; HP's integration of Autonomy; or HP's public disclosures about Autonomy, the acquisition and integration, or the

writedown.

42.     All summaries, notes, and memoranda of any interviews conducted by HP personnel regarding its acquisition of Autonomy and Autonomy's pre-acquisition accounting.

43.     All summaries, notes and memoranda related to the interviews of approximately 90 individuals conducted by Proskauer Rose LLP in connection with its investigation regarding HP's acquisition of Autonomy as described in the Hewlett-Packard Company Independent Committee's Resolution Regarding Derivative Claims and Demands ("IC Resolution").

44.     All summaries, notes and memoranda related to interviews conducted or attended by Morgan, Lewis & Bockius LLP in connection with its investigation regarding HP's acquisition of Autonomy and/or Autonomy's pre-acquisition accounting.

45.     All reports, memoranda, briefing notes, and documents prepared by PwC summarizing its investigation or analysis regarding HP's acquisition of Autonomy and/or Autonomy's pre-acquisition accounting, including but not limited to:

    a.     All reports, memoranda, briefing notes, and documents related to PwC's March 6, 2013 Interim Report; and

    b.     All reports, memoranda, briefing notes, and documents related to work done pursuant to instructions received by PwC in October 2011 to conduct further investigative work.

46.     Notes or memoranda from meetings or calls between HP and/or its advisors and Deloitte personnel related to the results of PwC's report, HP's rebasing exercise, and/or the restated Autonomy Corporation Limited ("ACL") and Autonomy Systems Limited ("ASL") financial statements.

47.     The "external valuation prepared in July 2012" that calculated an impairment charge of £237 million, as described in the 2011 ACL financial statements, and any correspondence, notes, or internal HP memoranda related thereto.

48.     All communications regarding the Settlement Agreement between HP and Deloitte executed in or about April 2016 (the "Settlement Agreement"), and the negotiation thereof, including all communications with Deloitte and/or the United States Attorney's Office for the Northern District of California.

49.     All documents and communications regarding any HP meetings with Deloitte since the execution of the Settlement Agreement, including any communications between HP and Deloitte about potential cooperation; any emails or documents exchanged between HP and Deloitte for discussion purposes; and any notes, summaries, or transcripts of meetings between HP and Deloitte.

50.  Documents and communications related to a meeting between Chris Yelland of HP, other HP representatives, and members of Deloitte's Autonomy audit team in the summer 2012 regarding Autonomy's accounts.

51.  Documents and communications related to a meeting between representative of HP's legal department and the Head of Deloitte's Risk Group and any subsequent phone conversations between Chris Yelland of HP and Nigel Mercer of Deloitte regarding Autonomy's accounts and the termination of Deloitte's as Autonomy's auditors.

52.  Any correspondence between HP and the United States Air Force, including but not limited to any show-cause letters or responses thereto.

53.  Correspondence between HP or its representatives and the U.K. Serious Fraud Office related to HP's allegations about Autonomy and/or the SFO's investigation into Autonomy's pre-acquisition accounting.

# EXHIBIT 1

FOIA CONFIDENTIAL TREATMENT REQUESTED

## Sales of HP hardware identified to date

| Invoice number | Invoice date | Quarter (Note 1) | Customer (Note 2) | Comments on identification of HP hardware (Note 3) | Total invoice value (net of tax) $ | Total Likely HP hardware $ |
|---|---|---|---|---|---|---|
| 126702 | 14-Jan-09 | Q1 2009 | BLUE CROSS BLUE SHIELD | Reference to Compaq on document identified in Epicor (Note 4) | - | - |
| 126767 | 23-Feb-09 | Q1 2009 | ARVATO DIGITAL SERV. CANADA | Reference to HP on sales invoice in Epicor | 106,423 | 78,417 | 66,581 |
| 126768 | 25-Feb-09 | Q1 2009 | ARVATO DIGITAL SERVICES | Reference to HP on sales invoice in Epicor | 13,471 | 7,236 | 7,236 |
| 126769 | 25-Feb-09 | Q1 2009 | ARVATO DIGITAL SERV. CANADA | Reference to HP on sales invoice in Epicor | 7,652 | 7,382 | 7,382 |
| 2505-VIR | 27-Feb-09 | Q1 2009 | CIO APPLICATIONS SERVICES CONT | Reference to HP on sales invoice in ERP | 83,603 | 6,951 | 5,287 |
| 126781 | 4-Mar-09 | Q1 2009 | ARVATO DIGITAL SERV. CANADA | Reference to HP hardware on sales invoice in Epicor | 7,206 | - | - |
| 126783 | 4-Mar-09 | Q1 2009 | ARVATO DIGITAL SERV. CANADA | Reference to HP on sales invoice in Epicor | 1,076 | - | - |
| 126784 | 4-Mar-09 | Q1 2009 | ARVATO DIGITAL SERV.- MONTERREY | Reference to HP on sales invoice in Epicor | 8,708 | 7,382 | 7,382 |
| 126785 | 4-Mar-09 | Q1 2009 | ARVATO DIGITAL SERV.-MANILA | Reference to HP on sales invoice in Epicor | 11,986 | 10,910 | 10,910 |
| 126786 | 4-Mar-09 | Q1 2009 | ARVATO DIGITAL SERVICES | Reference to HP on sales invoice in Epicor | 35,052 | 28,753 | 28,753 |
| 126787 | 4-Mar-09 | Q1 2009 | ARVATO DIGITAL SERV. CANADA | Reference to HP on sales invoice in Epicor | 13,528 | 6,758 | 6,758 |
| 126806 | 17-Mar-09 | Q1 2009 | BCBS-SC HELP DESK (BLUE CROSS BLUE SHIELD) | Reference to HP on document identified in Epicor (Note 4) | - | - | - |
| 126983 | 27-May-09 | Q2 2009 | APOLLO GROUP | Reference to HP on document identified in Epicor (Note 4) | - | - | - |
| 127032 | 19-Jun-09 | Q2 2009 | Serious Fraud Office | Reference to HP and Compaq on sales invoice in Epicor | 35,805 | 35,805 | 34,638 |
| 3865-ASL | 15-Jun-09 | Q2 2009 | SUN MICROSYSTEMS PTE LTD | Reference to HP in contractual documentation | 3,990,930 | 273,622 | 273,622 |
| 127170 | 22-Jul-09 | Q3 2009 | VERIZON | Reference to Compaq on document identified in Epicor (Note 4) | - | - | - |
| 127178 | 29-Jul-09 | Q3 2009 | DUN & BRADSTREET, INC | Reference to HP and Compaq on sales invoice in Epicor | 11,935 | 11,935 | 11,546 |
| 127215 | 26-Aug-09 | Q3 2009 | CIGNA BEHAVORIAL HEALTH | Reference to HP on document identified in Epicor (Note 4) | - | - | - |
| 127224 | 31-Aug-09 | Q3 2009 | TXU ENERGY -MDC | Reference to HP on sales invoice in Epicor | 154,076 | 29,300 | 21,400 |
| 127311 | 30-Sep-09 | Q3 2009 | | Reference to HP on sales invoice in Epicor | 410,690 | 342,874 | 342,874 |

FOIA CONFIDENTIAL TREATMENT REQUESTED

| Invoice number | Invoice date | Quarter (Note 1) | Customer (Note 2) | Comments on identification of HP hardware (Note 3) | Total invoice value (net of tax) $ | Total hardware $ | Likely HP hardware $ |
|---|---|---|---|---|---|---|---|
| 5977-ANA | 30-Sep-09 | Q3 2009 | TXU ENERGY (sale through CAPAX DISCOVERY LLC) | Reference to HP and Compaq in contractual documentation | 462,840 | 395,023 | 395,023 |
| 127324 | 12-Oct-09 | Q4 2009 | TXU ENERGY -MDC | Reference to HP on sales invoice in Epicor | 52,151 | 52,151 | 52,151 |
| 127396 | 9-Nov-09 | Q4 2009 | KAISER PERMANENTE-PHARM | Reference to HP on sales invoice in Epicor | 56,832 | 53,990 | 24,320 |
| 127545 | 1-Feb-10 | Q1 2010 | DUN & BRADSTREET, INC | Reference to HP on document identified in Epicor (Note 4) | - | - | - |
| 127573 | 17-Feb-10 | Q1 2010 | DUN & BRADSTREET, INC | Reference to HP on document identified in Epicor (Note 4) | - | - | - |
| 127581 | 1-Mar-10 | Q1 2010 | DUN & BRADSTREET, INC | Reference to HP on document identified in Epicor (Note 4) | - | - | - |
| 5458-ASL | 17-Nov-10 | Q4 2010 | Kuwait National Sec. Bureau (sale through Zenith Gulf Security Systems) | Reference to HP on sales invoice in ERP | 30,906 | 30,906 | 30,906 |
| 8743-ANA 8744-ANA 8745-ANA 8746-ANA | 31-Dec-10 | Q4 2010 | Video Monitoring Services | Reference to HP in contractual documentation and purchase order | 6,004,067 | 6,004,067 | 3,011,265 |
| 6024-ASL | 25-Mar-11 | Q1 2011 | BBC Monitoring | Reference to HP on sales invoice in ERP | 40,628 | - | - |
| Not identified | 4-Apr-11 | Q2 2011 | Department of Defense [TBC] | Reference to HP in TASC purchase order | 191,485 | 191,485 | 191,485 |
| 6431-ASL 6432-ASL | 30-Jun-11 | Q2 2011 | Dubai Police (sale through Zenith Gulf Security Systems) | Reference to HP in purchase order from Zenith Gulf Security Systems and in quotation | 109,342 | 23,092 | 23,092 |
| 6804-ASL | 30-Sep-11 | Q3 2011 | ECSSR (sale through Zenith Gulf Security Systems) | Reference to HP on insight quotation to Autonomy | 2,772,001 | 1,264,000 | 1,264,000 |
| 11242-ANA | 30-Sep-11 | Q3 2011 | UBS AG | Reference to HP in contemporaneous Autonomy analysis relating to the transaction | 794,118 | 794,118 | 794,118 |
| | | | | **Totals** | **15,213,025** | **9,656,158** | **6,610,729** |

Note 1:
Quarter is based on invoice dates. The quarter in which revenue was recognised may differ if revenue was accrued or deferred, for example as a result of journal entries.

HP-SEC-01813601

FOIA CONFIDENTIAL TREATMENT REQUESTED

| Invoice number | Invoice date | Quarter (Note 1) | Customer (Note 2) | Comments on identification of HP hardware (Note 3) | Total invoice value (net of tax) $ | Total likely HP hardware $ |
|---|---|---|---|---|---|---|

**Note 2:**

Customer names from Epicor represent the name shown in the "address_name" column within the Epicor system data. Customer names from ERP represent the name shown in the "Company Name" column within the ERP system data.

The varying names for Arvato Digital Services appear likely to represent different locations / delivery addresses for the same customer.

**Note 3:**

Transactions have been identified as involving HP hardware by word searches on invoice narrative within data from Autonomy's main billing systems or from references identified in other analysed documentation. Further information or analysis may result in the identification of additional relevant transactions.

**Note 4:**

Appears to be an invoice for nil value and states "FAILURE". It is unclear what this document represents.

HP-SEC-01813602

# EXHIBIT 3

## TO DECLARATION OF SUSAN D. RESLEY IN SUPPORT OF MOTION TO QUASH SUBPOENA ISSUED TO NON-PARTY HEWLETT-PACKARD COMPANY

**Resley, Susan D.**

| | |
|---|---|
| **From:** | Leach, Robert (USACAN) <Robert.Leach@usdoj.gov> |
| **Sent:** | Monday, August 29, 2016 4:34 PM |
| **To:** | Resley, Susan D. |
| **Cc:** | Reeves, Adam (USACAN) |
| **Subject:** | Autonomy |

Susan:

I write to request that HP produce:

(1)    All documents produced in the UK litigation relating to Autonomy.

(2)    All documents relating to sales of hardware by HP to Autonomy prior to October 2011.

Please produce responsive documents by Tuesday, September 6.  You need not produce a responsive document for (1) if it has been previously produced.  Going forward, if you produce a document in the UK litigation, I request that you produce it to the government.  With respect to the second category, I'd also appreciate it if you can produce as soon  as possible information sufficient to show the magnitude of sales of hardware by HP to Autonomy.

Thanks.

Bob

*****************************

Robert S. Leach

Assistant United States Attorney

United States Attorney's Office

Northern District of California

450 Golden Gate Avenue, 11th Floor

San Francisco, California 94102-3495

Phone:  (415) 436-7534

Fax:  (415) 436-7234

# EXHIBIT 4

## To Declaration of Susan D. Resley in Support of Motion to Quash Subpoena Issued to Non-Party Hewlett-Packard Company

**Resley, Susan D.**

| | |
|---|---|
| **From:** | Reeves, Adam (USACAN) <Adam.Reeves@usdoj.gov> |
| **Sent:** | Wednesday, March 29, 2017 5:03 PM |
| **To:** | Resley, Susan D.; Stolley, Martha B. |
| **Cc:** | Leach, Robert (USACAN); Wong, Michael Li-Ming |
| **Subject:** | US v Hussain (Autonomy): Morgan Lewis and Proskauer Rose Witness Interviews |
| **Attachments:** | 2017018 Signed Amended Protective Order in US v Hussain (Autonomy).pdf |

Susan and Martha:

The USAO requests that HPE please produce, on a voluntary basis, all written summaries (and accompanying exhibits) of witness interviews conducted by Morgan, Lewis & Bockius LLP and Proskauer Rose LLP in connection with their investigations into pre-acquisition accounting irregularities at Autonomy Corporation plc. By this request, the USAO seeks only documents and materials that contain factual, non-privileged, information about what a witness may have said. The USAO is not requesting documents or materials that contain or reflect content that is protected under the work product doctrine or attorney-client privilege or any other privilege belonging to HPE (or its predecessor HP); nor is the USAO asking for a waiver of any such protection or privilege etc. The USAO will treat any document produced pursuant to this request in the same manner we have treated HPE's prior production of certain witness interview write-ups prepared by Morgan Lewis & Bockius produced by the government in January 2017. Specifically, we will use the information only in the above-captioned matter and, in any subsequent production by the government to the defendant in this case, we will designate HPE's production as "Protected Materials" pursuant to the Court's January 18, 2017 Amended Protective Order (copy attached). Please let me know if you have any questions. Thank you for your consideration of this request.

Adam

Adam A. Reeves
Assistant United States Attorney
Deputy Chief, Economic Crimes Section
United States Attorney's Office
Northern District of California
450 Golden Gate Avenue, 11th Floor
San Francisco, California 94102-3495
(415) 436-7157
Fax: (415) 436-7234

KEKER & VAN NEST LLP
JOHN W. KEKER - # 49092
jkeker@kvn.com
JAN NIELSEN LITTLE - # 100029
jlittle@kvn.com
BROOK DOOLEY - # 230423
bdooley@kvn.com
KATE LAZARUS - # 268242
klazarus@kvn.com
NICHOLAS D. MARAIS - # 277846
nmarais@kvn.com
IAN KANIG - # 293625
ikanig@kvn.com

633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415.391.5400
Facsimile:    415.397.7188

Attorneys for Defendant SUSHOVAN HUSSAIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SUSHOVAN HUSSAIN,<br><br>Defendant. | Case No. 3:16-cr-00462-CRB<br><br>[~~PROPOSED~~] **AMENDED PROTECTIVE ORDER**<br><br>Judge:      Hon. Charles R. Breyer<br><br>Case Filed: November 10, 2016<br><br>Trial Date:  TBD |

1

### [PROPOSED] AMENDED PROTECTIVE ORDER

**FOR GOOD CAUSE SHOWN**, it is hereby **ORDERED** that:

1.       Any document, data, or other object produced by the United States to defendant other than documents, data, or other objects originally produced to the government by Hewlett-Packard Company ("HP"), its subsidiaries, or its agents shall be designated as "Protected Materials."

2.       In addition, the United States may also designate as Protected Materials (a) witness statements governed by 18 U.S.C. § 3500, including grand jury testimony governed by Fed. R. Crim. P. 6(e), SEC investigative testimony, and other sworn witness statements, and (b) other witness statements, including FBI Form 302 reports of witness interviews (with attached exhibits) and third-party reports of witness interviews, to the extent that they were originally produced to the government by HP.  The United States may designate as Protected Materials any document attached to a witness statement as an exhibit, but that same document will not be considered Protected Materials to the extent it has been produced separately by the United States or is otherwise available to the defendant or his attorneys.

3.       Defendant may at any time serve upon counsel for the United States a written notice objecting to any designation by the United States pursuant to paragraph 2.  If agreement cannot be reached promptly, defendant may seek relief from the Court.

4.       Possession of copies of the Protected Materials shall be limited to the defendant and his attorneys, including any investigators, paralegals, law clerks, assistants, expert witnesses and other persons who are within the attorney-client privilege (hereinafter collectively referred to as "members of the defense team").  Members of the defense team shall not include individuals (or attorneys) who have entered into a joint defense agreement or other similar agreements with the defendant (or his attorneys).

5.       The defendant, his attorneys, and members of his defense team may use information in the Protected Materials for any purpose consistent with defending against the allegations in the Indictment, including asking a witness or a witness's lawyer about information in the Protected Materials, except they are prohibited from providing or distributing copies of the

Protected Materials to, or sharing copies of the Protected Materials with, other persons without prior authorization from the Court.

6.      The defendant, his attorneys, and members of his defense team shall not use copies of or produce the Protected Materials in any related civil proceeding without prior authorization from the Court.

7.      Defendant, the United States, or any affected third party may seek a modification of this Order for good cause shown.

Date: _January 18, 2017_____


Hon. Charles R. Breyer
United States District Judge
Northern District of California

[PROPOSED] ORDER
Case No. 3:16-cr-00462-CRB

1140905.02

# EXHIBIT 5

## TO DECLARATION OF SUSAN D. RESLEY IN SUPPORT OF MOTION TO QUASH SUBPOENA ISSUED TO NON-PARTY HEWLETT-PACKARD COMPANY

# Morgan Lewis

**Susan D. Resley**
Partner
+1.415.442.1351
susan.resley@morganlewis.com

August 3, 2017

Brook Dooley, Esq.
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111

Re: *United States v. Sushovan Hussain*, No. 16 CR 00462 (CRB)

Dear Mr. Dooley:

As you know, we represent Hewlett-Packard Enterprise ("HPE").  Per your request during our July 31, 2017 telephone call, we are writing to summarize HPE's objections to the Rule 17(c) subpoena you served on Hewlett-Packard Company on July 19, 2017 in connection with the above-referenced action (the "Subpoena").

At the outset, the Subpoena is overly broad and expansive and does not comply with the law governing Rule 17(c) subpoenas, as made clear by the United States Supreme Court in *United States v. Nixon*, 418 U.S. 683, 698 (1974) (holding that Rule 17(c) subpoenas are "not intended to provide a means of discovery for criminal cases").  In that regard, we describe HPE's position as to specific requests.

Of the 73 requests and sub-requests, 52 of them are for materials that HPE has produced to the United States Department of Justice ("DOJ") and/or the Securities and Exchange Commission ("SEC").[1]  As such, either Mr. Hussain already possesses these materials or can easily procure them on his own.  Therefore, these documents are not properly sought through a Rule 17(c) subpoena.  *See United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981) (To seek documents under Rule 17(c), the subpoena proponent "must [] demonstrate that the subpoenaed materials are not available from any other source."); *see also United States v. Reyes*, 239 F.R.D. 591, 598 (N.D.Cal. 2006)(CRB).[2]

The remaining 21 requests fail to satisfy the requirements articulated in *United States v. Nixon* – namely, each is not "relevant to the offenses charged in the indictment" or sufficiently specific, and/or seeks inadmissible hearsay.  418 U.S. 683, 700 (1974) (holding that the proponent of a Rule 17(c) subpoena bears the burden of establishing that each request "clear[s] three hurdles: (1) relevancy; (2) admissibility; and (3) specificity").

---

[1] The documents produced to the DOJ and/or SEC correspond to the following: Requests 1-10, 12-14, 16, 20-22, 24, 25, 27-29, 31-38, 41, 43, 44, and 50-52 (including all sub-requests).

[2] As a courtesy, we will provide Bates numbers for previous productions where the subpoena request is sufficiently narrow and specific – despite Mr. Hussain's ready access to the documents.

**Morgan, Lewis & Bockius LLP**

101 Park Avenue
New York, NY  10178-0060
United States

☎ +1.212.309.6000
🖷 +1.212.309.6001

DB1/ 93090981.3

Brook Dooley
August 3, 2017
Page 2

Further, Requests 15, 17, 18, 42, 43, 44, 45, and 46 seek documents protected by the attorney-client privilege and/or attorney work product doctrine and, consequently, are improper. *See Reyes*, 239 F.R.D. at 598 ("[A] Rule 17(c) subpoena should be quashed or modified if it calls for a privileged matter.")

Similarly, Request 48 seeks settlement materials protected from disclosure by Federal Rule of Evidence 408 and/or the attorney-work product doctrine.

Lastly, Requests 42, 43, 44, and 49 (to the extent it seeks transcripts) seek statements of potential trial witnesses, which are explicitly prohibited from being subpoenaed under Rule 17. *See* Fed. R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule."). To the extent the declarants are not prospective witnesses, the documents are inadmissible hearsay and, therefore, not available under a Rule 17 subpoena.

We appreciate your consideration and look forward to reaching a reasonable resolution regarding the Subpoena.  In that regard, please provide a response by August 7.

Sincerely,

Susan D. Resley

cc:  Martha Stolley, Esq.
     Michael Wong, Esq.