Pages 1 - 171

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE, JUDGE

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
   VS.                         )      No. CR 16-00462 CRB 1
SUSHOVAN TAREQUE HUSSAIN,      )
                               )
          Defendant.           )
_____)      San Francisco, California
                                       Monday, February 5, 2018

**TRANSCRIPT OF JURY SELECTION PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:          ALEX G. TSE
                        Acting United States Attorney
                        450 Golden Gate Avenue, 11th Floor
                        San Francisco, California  94102
                  BY:   **ADAM REEVES**
                        **ROBERT LEACH**
                        **WILLIAM FRENTZEN**
                        **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant:          KEKER, VAN NEST & PETERS LLP
                        633 Battery Street
                        San Francisco, California  94111-1809
                  BY:   **JOHN W. KEKER, ESQ.**
                        **JAN NIELSEN LITTLE, ESQ.**
                        **BROOK DOOLEY, ESQ**
                        **CODY GRAY, ESQ.**
                        **IAN KANIG, ESQ.**
                        **NIC MARAIS, ESQ.**

Also Present:           **SUSAN D. RESLEY, ESQ.**
                        Morgan Lewis

Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
              Official Reporter, U.S. District Court

<u>**Monday - February 5, 2018**</u>                              <u>**9:25 a.m.**</u>

P R O C E E D I N G S

(The following proceedings were held in open court,

outside the presence and hearing of the jury venire)

**THE COURT:**  Would the parties please identify themselves.

**MR. LEACH:**  Good morning, Your Honor.  Robert Leach for the

United States.

**THE COURT:**  Good morning.

**MR. KEKER:**  Good morning, Your Honor.  John Keker for

Mr. Hussain, who is present in court.

**THE COURT:**  Right.  Good morning.

So, I just asked a question, that we're starting jury

selection today.  In the event that it does not appear by the

numbers that we have a sufficient number to exercise all the

peremptory challenges and to select a jury, we won't exercise

any peremptory challenges.  We will wait until -- we'll bring in

additional people on the 22nd.  Because I don't think parties

should have to exercise a peremptory challenge unless they see

the whole thing.

I mean, you know, life is choices, and this is one of the

choices that you need to look at everybody, and then decide A is

better than B if you are going to exercise a challenge.

So that's just where we are.  And I can see that we already

have some problem because now it's 9:30 and nobody's here.

I don't want to say nobody is here.

1      **MR. KEKER:**  Everybody's here except 87, 88 and 90,

2  apparently.

3      **THE COURT:**  Yeah.

4      **MR. KEKER:**  I'm optimistic.  We tried to count the hardships

5  and count the causes.

6      **THE COURT:**  I don't do anything to discourage them from

7  service.

8      **MR. KEKER:**  Yeah, well, some --

9      **THE COURT:**  Well, then, maybe we can.  Listen, I would be

10  delighted if we can.

11     **MR. KEKER:**  We're optimistic, based on what we saw in the

12  questionnaires.

13     **THE COURT:**  All right.

14     **MR. KEKER:**  But we'll see.

15     **MR. LEACH:**  We're willing to try --

16     **THE COURT:**  You'll do what Vincent Hallinan did -- I watched

17  him do this.  I don't know whether you ever saw -- did you ever

18  see him pick a jury?

19     **MR. FRENTZEN:**  I have heard the stories, but I haven't seen

20  it.

21     **THE COURT:**  It's great.  I watched him.  The jury just

22  said -- looked, he said, and you know, the prosecution went

23  through this, and that, and -- "And Mr. Hallinan, it's your

24  turn."

25     He says:  "Anybody, raise your hand if you can't give my

1    client a fair trial.  No hands, I'll take them."

2        And that was the voir dire.

3        **MR. KEKER:**  I don't think we are going to get that far.

4        **THE COURT:**  You probably would not do that.

5        **MR. KEKER:**  But it sounds great.

6        **THE COURT:**  It sounds great, yeah.  Those stories always

7    sound great.

8        All right, so, let's just wait until everybody comes in.  I

9    think we're going to, you know, fill this, fill that and, and --

10    are those people prospective jurors out there?

11        **MR. KEKER:**  Well --

12        **THE COURT:**  Do you want any of those?

13        **MR. KEKER:**  Well, we would really be in good shape.  They're

14    from our office.

15        **THE COURT:**  You never know.  Don't be too confident of that.

16        **MR. KEKER:**  I think -- most of them I think would be good

17    jurors.

18        (Laughter)

19        **THE COURT:**  I thought, then, I would go through the motions

20    in limine.  And then we have sort of a whole series of where are

21    we on other issues that we have raised.  So I'm prepared to do

22    that after we do the jury.

23        **MR. LEACH:**  That's fine with the government, Your Honor.

24        **THE COURT:**  Okay?  All right.  Okay.  Well, I have run out

25    of things to say, so I'll just leave.

1    (A pause in the proceedings)

2    **THE CLERK:**  Calling CR 16-0462, USA versus Sushovan Tareque

3  Hussain.

4    Counsel, please state your appearances

5    **MR. LEACH:**  Good morning, Your Honor, Robert Leach, Adam

6  Reeves and Will Frentzen for the United States.

7    **THE COURT:**  Good morning.

8    **MR. KEKER:**  Good morning, Your Honor.  John Keker, Jan

9  Little and Brook Dooley for Sushovan Hussain, who is present in

10  court.

11    **THE COURT:**  Good morning.  So, let's bring in the jury

12  panel.

13    Is it the number, how are they arranged?

14    **THE CLERK:**  They're still in the same order.

15    **THE COURT:**  They all showed up?

16    (Off-the-Record discussion between the Court and Clerk)

17    **MR. KEKER:**  Your Honor, we all made charts based on this.

18  If we can just leave some of the chairs, the ones who didn't

19  show up, if we can just leave the chair empty, because if we

20  start --

21    **THE COURT:**  No, no, no, we can't do it that way.  Because we

22  -- we figured out some other way to do it.

23    But we'll tell you, you'll hear the name, what --

24    **THE CLERK:**  For example, 9 is not here, so 10 is in its

25  place.  That's the only one out of the chairs that they're going

1    to --

2        **THE COURT:**  Yeah, because we are always going to have spaces

3    out there, too, so it's not going to work.  Even if we left a

4    space -- what I'm saying is even if we left a space, you

5    wouldn't be able to tell out there.

6        **THE CLERK:**  Right.

7        **THE COURT:**  And they're all in that order.

8        **MR. KEKER:**  Except we have got them all written down, we

9    know the person that is sitting there, we know the number, and

10   we can find it.

11       **THE COURT:**  You won't know the number, like, next to that

12   person, if we have missed a number.

13       **MR. KEKER:**  We do because we have set it up that way.  But

14   if somebody is sitting out there (Indicating) with a number and

15   isn't -- here.

16       **THE COURT:**  They don't have numbers out there.

17       **MR. KEKER:**  They do.  All of these are numbered.

18       **THE COURT:**  They do?

19       **MR. KEKER:**  You've got four rows, you've got everybody

20   numbered here.

21       **THE COURT:**  You know this system better than I do.

22       **MR. KEKER:**  And we have set it up so that we know the person

23   sitting back there in the corner is number such and such.

24       **THE COURT:**  She's in charge.  What do you want do?

25       **THE CLERK:**  The numbers have been removed, but however you

1   do your paperwork, that's fine.

2        **THE COURT:**  Okay.  You'll adjust.

3        **THE CLERK:**  Right.

4        **THE COURT:**  And if there's a problem, if there's a problem

5   we'll just take some extra time.  That is not a problem.  Okay.

6   All right.

7        **THE CLERK:**  Okay.

8        **THE COURT:**  Go ahead, let them in.

9        (Jury venire enters the courtroom)

10       **THE CLERK:**  Todd Allen Flournoy.  Juror No. 1, please step

11  forward.

12       Jackelyn Morales?

13       **THE COURT:**  Lashanda, why don't you take the microphone.

14       **THE CLERK:**  Okay.

15       **THE COURT:**  The hand-held microphone.

16       Have a seat, No. 1, Mr. Flournoy.  You may come forward.

17       **THE CLERK:**  Charles Chung Ho, No. 3.  Somsack Sayborivong,

18  4.  Terrence Eugene Higgins, 5.  Keith D. Weiner, 6.  Stephanie

19  Michelle Jameson, 7.  Anien Yip, 8.

20       Evelia Lampitoc Gagan is excused.  Priya Kaul, 10.  Olivia

21  Kelli Wong, 11.  Kenneth Matthew Hall, 12.  John Michael Yencer,

22  13.  Chunlei Mei, 14.  Tensy A. Botto, 15.  Kenneth Roy

23  Knowlton, 16.  Lefkos Byron Aftonomos, 17.

24       Cynthia Lasandra Gill, 18.  Jan Lee Ross, 19.  Richard

25  Walton (sic) Schumann, 20.  Deborah C. Garcia, 21.  Noemy

1    Guadalupe Floresjovel, 22.  John Mulligan, 23, excused.  Raymond

2    Mitsuo Aoki, 24.

3        Thomas E. Johnston, 25.  Kes Poopat, 26.  Danae Dion

4    Cranley, 27.  Craig Lawrence Rowland, 28.  Kirsten Noelle Craig,

5    29.  Keelyn E. Nori, 30.  Galina Gorbatok, 31, excused.  Chris

6    Antaki, 32.  Lucarda Barr, 33.

7        Richard E. Middleton, 34.  Vincent Edward O'Brien, 35.

8    Scott M. Woebcke, 36.  John Walter Pressley, 37.  Julian Mapes

9    Lopez-Morillas, 38.  Donald Edwin Roberts, 39, excused.  Steven

10   Alan Maganazook, 40.

11       Jean Rullamas, 41.  Timothy Logan Conroy, 42.  Beth Ann

12   Fenwick, 43.  Karen Brosseau Shay, 44.  Yana Kiziryan, 45.

13   Candace Ann Plevyak, 46.  John Reisinger, 47.  Paul Martin

14   Walker, 48.  Hector Pinson Palada, 49.

15       Peter Yip, excused, 50.  Ida Koh Branting, excused.  51.

16   Marc Justin Wong, 52.  Alice Claire Combs, 53.  Becky Ling, 54.

17   Patrick L. McClellon, 55.  William H. McAbee -- I'm sorry.

18   Thank you.  56.

19       Gil Pornela Seastres, excused, 57.  Winston Don Moy, 58.

20   Sualen Anita Murphy, 59, excused.  Maria F. --

21       **THE COURT:**  I'm sorry, was 59 excused?

22       **THE CLERK:**  Yes.

23       **THE COURT:**  Thank you.

24       **THE CLERK:**  Maria F. Carmona Rios, 60.  Quinn -- Quinn

25   Maxwell Stallcup, 61.  Eric Alan Naeseth, 62.  Christopher

```
 1    Michael Angel, 63.  Jon David Pevna, 64.
 2        Dan Doveralba, 65.  Ronald Martin Miller, 66.  Joseph
 3    Nicholas Hutka, 67.  Remy Medina Encarnacio, 68.  Yumiko Jayme
 4    Maeda, 69.
 5        Jeffrey Brian French, excused, 70.  Geneva An Dang, excused,
 6    71.  Mariechris Kiara Resplandor, 72.  Camille -- Patricia
 7    Camille Lax Palo, 73.  Laura Ashley Combs, 74.  Shamal Mccord
 8    Stegeman, 75.  Michael Hernandez Soto, 76.
 9        Derek James Cochran, 77, excused.  Markham Brock Miller, 78.
10    Richard Wegener Beaty, 79.  Karen E. Bonilla, 80.  Gustavo
11    Munguia, 81.  Delton Ray Edwards, excused, 82.
12        Pierantonio Cendron, 83.  Tsering Doma Sangpo, 84.  Marjorie
13    Diane Drake, 85.  Shivkumar Ramaswamy, 86.  Graciela Guevara,
14    87.  Mirna Scheffy --
15        THE COURT:  Frederick Streitz?
16        THE CLERK:  Not here.  88, Frederick Streitz, not here.
17    Mirna Scheffy, 89.  Edward Wong, 90, not here.
18        THE COURT:  Okay.  Thank you.  Would you administer the oath
19    to the panel.
20        THE CLERK:  Welcome to the courtroom of the Honorable
21    Charles R. Breyer.  Please stand and raise your right hand.
22        (Jury venire placed under oath)
23        THE COURT:  Call the case.
24        PROSPECTIVE JUROR WOEBCKE:  (Inaudible)
25        THE CLERK:  Do you so affirm?
```

1      **PROSPECTIVE JUROR WOEBCKE:**  That I don't believe in God?

2      **THE COURT:**  No, all you have to do is say you affirm that

3  you will tell the truth.

4      **PROSPECTIVE JUROR WOEBCKE:**  Separation of state and

5  religion.

6      **THE COURT:**  I'm sorry, I don't know who is speaking.  I'm

7  hearing a voice.

8      **PROSPECTIVE JUROR WOEBCKE:**  Juror 36.

9      **THE COURT:**  Sorry?

10      **PROSPECTIVE JUROR WOEBCKE:**  No. 36.  You are asking me to

11  take the oath with the context of God.

12      **THE COURT:**  No.  You don't have to.

13      All you have to do is --

14      **PROSPECTIVE JUROR WOEBCKE:**  Correct, but she used the word

15  "God."  So --

16      **THE COURT:**  I understand --

17      **PROSPECTIVE JUROR WOEBCKE:**  So do we have a separation of

18  church and state here or not?

19      **THE COURT:**  Let me see if this satisfies you.  You don't

20  have to.  If you don't want to do it, you don't have to do it.

21  But will you promise to tell the truth?

22      **PROSPECTIVE JUROR WOEBCKE:**  Yes, absolutely.

23      **THE COURT:**  Thank you.  Okay.

24      **THE CLERK:**  Your Honor, there are 76 jurors present.

25      **THE COURT:**  Great.  Okay.  Will you call the case now.

1          **THE CLERK:**  Calling Criminal Action CR-16-0462, USA versus

2     Sushovan Tareque Hussain.

3          **MR. LEACH:**  Good morning, Your Honor.  Robert Leach for the

4     United States.  And here with my colleagues, William Frentzen,

5     Adam Reeves, Beth Margen, and FBI Special Agent Alexandra

6     Bryant.

7          **THE COURT:**  Thank you.

8          **MR. KEKER:**  Good morning, Your Honor.  John Keker.  And I'm

9     here with my law partners Jan Little and Brook Dooley.  And most

10    importantly, I'm here with our client, Sushovan Hussain.

11         Sushovan, stand up, please.

12         **THE COURT:**  Thank you.

13         **MR. KEKER:**  Good morning.

14         **THE COURT:**  Well, good morning, ladies and gentlemen.  I

15    think you probably were here a bit earlier than right now and

16    it's taken us a bit of time to get organized but the

17    organization I hope will make this, the proceedings today go

18    faster.

19         I think you all heard me or you should have when I spoke to

20    you last week.  I think it was Thursday, not quite sure, but I

21    think it was Thursday before, you filled out a questionnaire.

22    And I don't want repeat myself, though I have a tendency to

23    repeat myself.  But we are now under way in this process of

24    picking a jury.

25         Again, I want to stress a couple of things to you before we

start asking questions.  First, of course, and most importantly,
I want to thank you.  This is a sacrifice on your part.  It's a
sacrifice to you, perhaps to your employment, your friends, your
family, your obligations.  And we wouldn't ask you to do this
unless it was really important.

And I want you to know how important we consider it, the
parties consider it to be, and how essential it is to the
administration of justice in this system.  So what you are
embarking upon is not a trivial matter.  It is a matter that --
that is of great concern to the proper functioning of this
country in a manner in which the founders of the Constitution
believed to be of essential importance.

So I do want to stress that.  I want to also do it in the
context that jury service, while it is service, is -- is so
important that we want to make sure that anybody who serves in
this case can be fair.  And when I say "fair," I mean fair to
both sides.  Fair to the government, and fair to the defense.

Now, we are about to ask you a series of questions.  And
believe me, you have already answered quite a few questions.
The -- the design of the questions is to see whether or not in
this particular case -- not every case, this particular case --
you could render a fair verdict.

So you might think:  Well, I've read something about the
case.  Or:  I have some opinion about the case.  Or:  I have
some opinion about the law in the case.  Any of these things.

1          And I will emphasize the fact that a perfect jury, if there

2     is such thing, is not a jury that has not had life experiences,

3     is not a jury that does not have opinions, is not a jury that

4     hasn't taken positions on individual -- on issues and so forth.

5     It is a jury which is committed to listening to what is the

6     evidence in this case, and then, what is the law in this case.

7     And applying the law to the facts of the case, and making a

8     determination whether or not the government has proven its case

9     beyond a reasonable doubt, as to the guilt or innocence of a

10    defendant.

11         And that really is the -- the test that we're going to use

12    in determining whether or not you can sit here for some

13    considerable period of time.

14         We estimate that the case will be over, I think we said,

15    what, mid-April, right?  Something like that.

16         **THE CLERK:**  Yes.

17         **THE COURT:**  And we're not going to start until the end of

18    the month.  But we need to know that you can be here every day,

19    that you can be here on time, that you can, when you are here,

20    listen to the evidence, and at the conclusion, return a verdict

21    or attempt to return a verdict in this case.  So we need your

22    efforts in order to accomplish this task.

23         Now, saying all that, I want to just give you a couple of,

24    sort of, ideas that perhaps may be of concern to you, but ought

25    not to be.

1          Let me start out with the big concern which people say, is:

2     Well, you know, I don't want to have to adjudicate a punishment.

3     I have strong feelings about penalties, and I don't want to have

4     to weigh in on that.

5          And the answer is:  That's true, you don't.  Your job is not

6     to determine what is suitable in terms of punishment.  Your job

7     is to determine what are the facts in this case.  They may or

8     may not warrant punishment.  That's up to the Court to determine

9     after you have arrived at a verdict.  So you can put that out of

10    your mind.  That's not a consideration.

11         A second thing is:  Well, gee, you know, I don't know that I

12    can sit here through all of this.  You know, my back hurts.  I

13    need fresh air.  I don't know whether it will be sort of too

14    intense.

15         And what I say to that is a couple of things.  Number one,

16    we do take recesses in the morning, recess in the afternoon, we

17    take a short lunch hour and we move quickly.  Because these

18    lawyers know -- and they are so good -- that we have issues that

19    we have to decide as to what you should hear, what are the

20    limits and so forth, what are the areas.  We decide all of that

21    outside your presence at a time when you are not even here.

22         And so when you are here, you will be not stuck in that jury

23    room.  You will actually be out here in this courtroom,

24    listening to evidence.  And we move rather quickly through a

25    case because we know we are taking your time, and that's a

```
 1    valuable commodity.  So we will move as quickly as possible.
 2         So, I'm going to start -- I think each one of you have been
 3    handed a piece of paper, is that right?  And it's sort of a
 4    little script.  I want you to understand that all the parties
 5    have had the opportunity of reading through your questionnaire
 6    so they have a sense of what your answers will be to the
 7    questions that they asked.  And I am going to first go through,
 8    asking all of you to answer the questions, one at a time.
 9    Something may come up that requires some further discussion.
10    I'll be glad to engage you in that exercise.  And then we have
11    -- the parties have the opportunity to ask you some question,
12    themselves.
13         So, there's no -- you know, as they say, a great journey
14    begins one step at a time.  So, let's take the first step with
15    you, Mr. Flournoy, I don't know whether you're in the cat bird
16    seat or not but you are number one on our list.  So if you would
17    answer the questions.  Please, do so.
18         PROSPECTIVE JUROR FLOURNOY:  Okay.  Todd Allen Flournoy.  I
19    live in Orinda.  I have lived in California all 39 years of my
20    life.
21         I am an intern teacher for the seventh grade.  I am married.
22    My wife is a public accountant.  I have three children.  Seven,
23    2, and three months.
24         I have never served in the military.  And never served on a
25    jury.  And I can be fair to both sides in this case.
```

1   **THE COURT:**  Thank you, Mr. Flournoy.  Hand the microphone to

2   Ms. Morales.

3   And if I mispronounce your name correct me.

4   **PROSPECTIVE JUROR MORALES:**  Thank you.  My name is Jackelyn

5   Morales.  And I lived in Hercules for 15 years but before that I

6   lived in San Francisco.  I'm in Daly City.  And I live in

7   California for 33 years, all my life.  And I'm a licensed

8   vocational nurse.

9   And I am married, and my husband, he does -- he's a

10  registered nurse.  And I do have one child and he's three years

11  old.  And I never served in the military.  And I, um, never

12  served on a jury.

13  And on this case I can be fair on both sides.

14  **THE COURT:**  Thank you.

15  Mr. Chung.

16  **PROSPECTIVE JUROR HO:**  Mr. Ho.

17  **THE COURT:**  Pardon me?

18  **PROSPECTIVE JUROR HO:**  Last name is Ho.

19  **THE COURT:**  Oh, I'm sorry.  Thank you for correcting me.

20  Mr. Ho.

21  **PROSPECTIVE JUROR HO:**  I'm Charles Chung Ho.  I live in San

22  Leandro.  Lived there for about 18 years.  I am a construction

23  project manager.

24  I am married.  And my wife is a financial analyst.  I have a

25  12-year-old son.  I have never served in the military.

1      I was on a jury before.  It was a criminal case.  And there

2  was a verdict.

3      I can be fair to both sides of the case.

4      **THE COURT:**  Thank you, Mr. Ho.  Let me ask you a question

5  because now you raised an interesting issue.  Your wife's

6  employment is as a financial analyst.

7      **PROSPECTIVE JUROR HO:**  Yeah.

8      **THE COURT:**  Is she self-employed or does she work for a

9  company?

10      **PROSPECTIVE JUROR HO:**  Yes, she works at Kaiser Permanente.

11      **THE COURT:**  Kaiser Permanente.  And I'm not quite sure I

12  know, if you can elaborate a little bit about what you mean by

13  "financial analyst."  Does she do bookkeeping in the sense that

14  she works in records or what?

15      **PROSPECTIVE JUROR HO:**  Yes.  She is also in the same

16  division as I am in Kaiser.  I work for Kaiser.  She -- I handle

17  construction so there is a lot of budgets going on and she is

18  the financial analyst, analyzes the cash flows and where the

19  funding's coming from, and make sure it's spent correctly.

20      **THE COURT:**  Now in this case -- and we always have to talk

21  about because, you know, each case is different -- in this case,

22  there will be a fair amount of information and testimony about

23  financial transactions.  And about bookkeeping or accounting or

24  how do you -- how do you look at certain figures, how do you

25  understand them.  What do they mean.  Things that I would guess

1    your wife has some expertise, and you might as well.

2         **PROSPECTIVE JUROR HO:**  Correct.

3         **THE COURT:**  So the question is, given that -- two things.

4    Number one, let's do the first one first, which is:  You

5    understand that whatever your expertise, whatever your

6    understanding is, you have to listen to what the witnesses say

7    and evaluate the witnesses, not necessarily bring in your own

8    specialized training in accounting.

9         Do you understand that?

10        **PROSPECTIVE JUROR HO:**  I understand.

11        **THE COURT:**  Okay, and do you further understand that no

12   matter how fascinating you find all of this information to be by

13   the brilliant presentation of it by both sides, you are not to

14   go home and discuss with it your wife?

15        Do you understand that?

16        **PROSPECTIVE JUROR HO:**  I understand.

17        **THE COURT:**  Yeah, sometimes it is very useful to be able to

18   say:  Don't discuss what you have done during the day with your

19   spouse, partner, whatever.  And, but it's a serious matter in

20   particular where your wife may have some expertise with the very

21   subject matter that we're going to be addressing in this court.

22        Is that all right?

23        **PROSPECTIVE JUROR HO:**  That's all right.

24        **THE COURT:**  You don't have any problem saying:  The judge

25   told me I can't talk about it?

1      **PROSPECTIVE JUROR HO:**  I have no problem.

2      **THE COURT:**  Okay, all right.  Thank you very much, Mr. Ho.

3      Yes.  Mr. Sayborivong.

4      **PROSPECTIVE JUROR SAYBORIVONG:**  My name is Somsack

5      Sayborivong.  I live in Concord, California, for over 28 years.

6      I lived in California, same, over 28 years.  I'm retired from

7      computer technician.

8      I am single.  I have not served in the military service.  I

9      never serve in jury service and I can be fair for both sides.

10     **THE COURT:**  Let me ask you, because obviously English is not

11     your first language.  Is that right?

12     **PROSPECTIVE JUROR SAYBORIVONG:**  That's correct.

13     **THE COURT:**  But you seem to be conversant in English, is

14     that fair to say?

15     **PROSPECTIVE JUROR SAYBORIVONG:**  I don't really understand,

16     what's that?

17     **THE COURT:**  Well, that's going to be my question.  I want to

18     find out whether you are able to understand -- whether your

19     level of understanding of the English language, what -- how do

20     you assess it?  Where do you place it?

21     **PROSPECTIVE JUROR SAYBORIVONG:**  My daily life I'm okay, but

22     in term of law vocabulary or scientific work, I have a problem

23     -- I have a hard time to understand that.

24     **THE COURT:**  Have you actually studied English outside the

25     United States?

1      **PROSPECTIVE JUROR SAYBORIVONG:**  Yes, from my country.

2      **THE COURT:**  And how many years of English did you take?

3      **PROSPECTIVE JUROR SAYBORIVONG:**  Two years.

4      **THE COURT:**  Okay.  Do you have any difficulty understanding

5   my questions to you?

6      **PROSPECTIVE JUROR SAYBORIVONG:**  Yes, sir.

7      **THE COURT:**  You do have some difficulty.

8      **PROSPECTIVE JUROR SAYBORIVONG:**  Yes, sir.

9      **THE COURT:**  Okay.  Do you feel -- if you are selected as a

10  juror, one of the requirements for a juror is to be willing to

11  discuss his or her views with the other jurors.

12      Now, do you feel your English is good enough or it's not

13  good enough to engage in these discussions?

14      **PROSPECTIVE JUROR SAYBORIVONG:**  Your Honor, like I said, if

15  the word that they use in law or scientific, I'm hard time to

16  understand that too.

17      **THE COURT:**  Okay.  All right.  Well, we will leave it at

18  that.

19      I will only say to all of you, there will be in the course

20  of this trial sometimes terms that are very technical.  The law

21  hopefully will be simple enough, but who knows whether it's

22  simple enough.  Judges are supposed to make it understandable.

23  Who knows?  I'll try.

24      But you don't need to have -- I think what I'm trying to say

25  is you don't need to have any expertise in the law.  You don't

1  need to have any expertise in accounting.  That's not necessary.

2  We will try, and I'm sure the lawyers will, to make terms as

3  clear as possible to the jurors.  Their job is to convince you

4  of their position.  And the only way they can do that is to make

5  things as clear as possible to you.  You are the audience.  Not

6  me.  You're the audience.  So it is their task to make things

7  clear.  We hope they will.

8      And I'm going to -- and the parties may ask you some further

9  questions about your English.  Thank you very much.  And will

10  you pass it on to Mr. Higgins.

11      **PROSPECTIVE JUROR HIGGINS:**  Thank you.

12      My name is Terrence Higgins.  I live in Berkeley; I have

13  been there for two years and two months.  I have spent my entire

14  life in California, where I was born.  I'm a mental health

15  counselor in private practice.

16      But if I were selected for the jury, I would no longer

17  probably be in practice because I would see my entire caseload

18  migrate to other practitioners.  So I need to state that that's

19  a thing that's going on in my mind.

20      I'm married.  My wife is a consultant to individuals in

21  small companies.  I have no children.  I have not been in the

22  military.

23      I have been on two juries in the past.  One civil, one

24  criminal.  One reached a verdict, the other did not.  I could be

25  fair to both sides.

1          **THE COURT:**  Thank you.

2          (Reporter interruption)

3          **PROSPECTIVE JUROR HIGGINS:**  Two years, two months.

4          **THE COURT:**  You lived elsewhere.

5          **PROSPECTIVE JUROR HIGGINS:**  Yes.

6          **THE COURT:**  Because you have been in the Bay area.

7          **PROSPECTIVE JUROR HIGGINS:**  I have been in the Bay area

8    pretty much my entire life, with two expatriate periods, one in

9    Mexico, one in Indonesia, about three months each.  And prior to

10   living in Berkeley, I lived in Marin County.  And prior to that

11   I was a San Francisco resident for 30 years.  Born and raised in

12   the East Bay prior to that.

13         **THE COURT:**  Thank you, Mr. Higgins.

14         Mr. Weiner?

15         **PROSPECTIVE JUROR WEINER:**  Hi, my name is Keith Weiner.  I

16   live in Half Moon Bay, California.  I have been there for about

17   three and a half years.  Prior to that I have been in California

18   for 36 years.

19         I'm a building inspector.  I am married.  My wife is a

20   director for clinical trials for a pharma company.  I have two

21   stepchildren.  They will be 14 and 16 this month.

22         I'm prior Air Force.  I was a mechanic on airplanes the

23   entire time I was in the service.

24         I have never been on a jury before.  And I could be fair to

25   both sides.

1      **THE COURT:**  Thank you.

2      Ms. Jameson.

3      **PROSPECTIVE JUROR JAMESON:**  My name is Stephanie Jameson.  I

4   live in Concord, and I have lived there for two years, and I

5   recently moved to California.  I have only been living in

6   California for two years.  I moved here from the East Coast.

7      I'm a consulting utility forester.  I am single.  I have

8   never been in the military or served as a jury.

9      And no, I don't think I can be fair to both sides.  I think

10  that the stress and anxiety, that all of the personal financial

11  hardships this is going to cause me, with eight weeks of serving

12  as a juror, is not going to make me be able to listen fairly to

13  both sides of the case.

14     **THE COURT:**  Okay.  Thank you, Ms. Jameson.

15     And we'll bring it down to Ms. Yip.

16     **PROSPECTIVE JUROR YIP:**  Hi, my name is Anien Yip.  And I

17  live in Alameda.  And I have been there for ten years.  I lived

18  in California for 40 years.  Minus the five years that I lived

19  in Colorado, from 2005 to 2009.

20     My occupation is an accountant.  I am married.  And my

21  husband is a personal trainer.

22     I have two kids and they are 12 and 10 years old.  I have

23  not served in the military service before.  And I never served

24  in a jury.  And I could be fair to both side of this case.

25     However, in 2007, the company that I worked for was acquired

 1  by Hewlett-Packard.  And in 2009, I was laid off.  And I felt a

 2  little bit bitter about being laid off by Hewlett-Packard.

 3  Because I feel like they just acquired, um, just the competition

 4  and didn't care about the people.  So, that's it.

 5      **THE COURT:**  And do you -- does that feeling persist today?

 6      **PROSPECTIVE JUROR YIP:**  Kind of.  Because after that, I was

 7  acquired -- acquisitions that I feel strongly about.

 8      **THE COURT:**  All right.  Thank you very much, Ms. Yip.

 9      **PROSPECTIVE JUROR KAUL:**  My name is Priya Kaul.  I am a

10  resident of San Francisco and I have lived there for about two

11  years.  I have lived in California for on and off, 20 years.  I

12  am an attorney.

13      I am unmarried, do not have children.  Have not served in

14  the military or on a jury.  And can be fair to both sides.

15      **THE COURT:**  An attorney.

16      **PROSPECTIVE JUROR KAUL:**  Yes, Your Honor.

17      **THE COURT:**  There are a few out here.

18      **PROSPECTIVE JUROR KAUL:**  I noticed.

19      **THE COURT:**  There are quite a few in the back.

20      **PROSPECTIVE JUROR KAUL:**  I noticed that too.

21      **THE COURT:**  All right, so let's talk about your legal

22  career.  Are you associated with a law firm?

23      **PROSPECTIVE JUROR KAUL:**  Yes.  Gibson Dunn & Crutcher.

24      **THE COURT:**  Gibson Dunn & Crutcher, I have a heard of them.

25  And they are a Los Angeles law firm with an office here?

1    **PROSPECTIVE JUROR KAUL:**  Yes.  I work in the San Francisco

2    office.

3        **THE COURT:**  And how long have you been associated with them?

4        **PROSPECTIVE JUROR KAUL:**  A little over two years.

5        **THE COURT:**  And have you formed a specialty?

6        **PROSPECTIVE JUROR KAUL:**  No.

7        **THE COURT:**  Okay, what type of work do you do when you go in

8    at 6:00 a.m. in the morning?  What's your day like?

9        **PROSPECTIVE JUROR KAUL:**  So I work on the litigation side.

10   Haven't worked on any criminal matters, so mostly civil, but

11   both plaintiff and defense side.

12       **THE COURT:**  Okay.  And do you understand that if you serve

13   as a juror, while you are an expert in the law because you are a

14   lawyer, you have to accept the law that the Court gives you as

15   being the law in this case.

16       Are you willing to do so?

17       **PROSPECTIVE JUROR KAUL:**  Yes.

18       **THE COURT:**  Even if you disagree with it, even when you took

19   the bar, the judge was just wrong on that issue, you know?  You

20   have -- you could accept it.  And even when the Court makes an

21   erroneous evidentiary ruling, you can't sit back there and say:

22   Gee, the judge is wrong, I'm going to come to my own opinion.

23   You're willing to accept the Court's view.

24       **PROSPECTIVE JUROR KAUL:**  Yes.

25       **THE COURT:**  Okay.  You do that, and I'll try to be right.

1    Thank you very much.

2        Ms. Wong.

3        **PROSPECTIVE JUROR O.K. WONG:**  My name is Olivia Wong.  I

4    have lived in San Francisco for the past four years.  I have

5    lived in California for a total of ten years.  I'm an account

6    management at an advertising agency.

7        I'm single.  No children.  Have not served in the military.

8    Have not served as a juror.  And I believe I can be fair to both

9    sides in this case.

10        **THE COURT:**  Thank you.

11        Mr. Hall.

12        **PROSPECTIVE JUROR HALL:**  My name is Kenneth Hall.  I have

13    lived in Redwood City for the last 15 years.  I have lived in

14    California for 51 years.  I am an architect.

15        I am married.  My spouse is a community college instructor.

16    We have no children.  I have not served in the military or on a

17    jury.  And I'm unsure if I can be fair, mainly because of the

18    time impacts on my work commitments.  But I'll try.

19        **THE COURT:**  Well, let's talk about that.  One thing I

20    neglected to tell the jurors is that on the average, we will

21    meet four days a week.  Not five.  And, and sometimes there will

22    be a couple of days in a row that we won't meet.  That's because

23    the Court has other commitments that will take -- that I

24    absolutely have to honor because they're professional

25    commitments.

1          So you will be able to make sure that once a week, at least,

2   you will be able to devote to what other -- other things.  But

3   we know it's a sacrifice from everybody, so we really are asking

4   each of you to see whether there's some way you could -- you can

5   make that work for you.

6          Do you believe you can?

7          **PROSPECTIVE JUROR HALL:**  I can try.  I have got two time

8   problems.  One is, if I could get out two days a week at around

9   3:00, then I can make my physical therapy sessions.

10         The second one is I have got signed contracts for designing

11  new houses for people.  The time crunch mainly is we need to get

12  building permits by October 15th in order to --

13         **THE COURT:**  I think we may be able to work around your

14  physical therapy.  We'll take a look at that, if you do sit.

15         **PROSPECTIVE JUROR HALL:**  Oh great.

16         **THE COURT:**  Thank you very much.

17         Mr. Yencer, sir.

18         **PROSPECTIVE JUROR YENCER:**  Yes, sir, John Michael Yencer.  I

19  live in San Francisco.  Probably for the past eleven years.  I

20  have lived in California all my life which has been about 45

21  years.

22         I am married.  My wife does billing and coding for UCSF,

23  electrophysiology.  And we have two children.  They're ten and

24  four.

25         And no military service, I have never served on a jury, and

1    I think I can be fair to both sides on this case.  But

2    unfortunately I do have a financial hardship issue as well.

3        **THE COURT:**  What is the nature of the financial hardship?

4        **PROSPECTIVE JUROR YENCER:**  I only get paid for four weeks

5    through my employer, and if it goes over that, I don't get paid

6    at all for the last, you know, number of weeks that we are

7    serving.

8        And also my daughter's starting preschool in March and

9    that's an additional financial hardship as well.

10       **THE COURT:**  Okay.  All right, thank you very much.

11       **PROSPECTIVE JUROR YENCER:**  Thank you.

12       **PROSPECTIVE JUROR MEI:**  Hi, my name is Chunlei Mei.  I live

13   in San Francisco and almost 14 years, lived in California.  I'm

14   a saleslady in Macy's.  And I'm married.

15       And also my husband is a salesman.  And we don't have any

16   children.  And never served in military before and also I never

17   served in jury before.  I will be fair to both side in this

18   case.

19       **THE COURT:**  Thank you.

20       Ms. Botto.

21       **PROSPECTIVE JUROR BOTTO:**  Hello, my name is Tensy Botto.  I

22   live in Sausalito, Marin County.  I lived there for nine years.

23   And my -- I'm unemployed.  My previous occupation was bookkeeper

24   at a financial institution.

25       I'm single.  I have two children, the age of 20 and 13, and

1    one on the way.  And I don't have any previous military service.

2    And I have not served in a jury.  And I can be fair for both

3    sides.

4        **THE COURT:**  Thank you.  Okay, would you bring the microphone

5    to Mr. Knowlton.

6        I'm sorry; there is a hand.  Yes, what is your name?

7        **PROSPECTIVE JUROR RESPLANDOR:**  Your Honor, I was wondering

8    if I can be excused to go to the ladies' room.

9        **THE COURT:**  Oh, yes.  Certainly.  Yeah.  All right.  Sorry

10   we have to go through this process but -- we are going to take a

11   break shortly.  So, let's -- we will probably just go through to

12   the end of this.

13       Go ahead.

14       **PROSPECTIVE JUROR KNOWLTON:**  My name is Kenny Knowlton.  I

15   live in Sebastopol.  I have lived in my current residence for

16   four years.  I have lived in Sebastopol basically my whole life.

17   So I have lived in California my whole life.  I'm a high-school

18   physical education teacher and athletic director.

19       I'm married.  My wife is a marketing director for Redwood

20   Credit Union.  I have two small children, ages 5 and 6.  I have

21   never served in the military.  I have never served on a jury.

22   And I believe I can be fair to both sides.

23       **THE COURT:**  Now, okay, you have raised the issue of the

24   commute.

25       **PROSPECTIVE JUROR KNOWLTON:**  Yeah.

1    **THE COURT:**  Is that right?  So obviously it is a commute

2    from Sebastopol.  If we start at 9:00 --

3        **PROSPECTIVE JUROR KNOWLTON:**  Which makes it even worse

4    because traffic gets worse.

5        **THE COURT:**  It's worse.

6        **PROSPECTIVE JUROR KNOWLTON:**  Yeah.

7        **THE COURT:**  You are not suggesting we start at 7:00.

8        **PROSPECTIVE JUROR KNOWLTON:**  It would make my commute

9    easier.

10       **THE COURT:**  Your commute easier and my commute impossible.

11   So I see that is a lengthy commute.  We do, again, end at about

12   4:00, but then again you are going to hit a commute.  So you

13   foresee a four-hour commute.

14       **PROSPECTIVE JUROR KNOWLTON:**  Two hours each way.

15       **THE COURT:**  Okay, thank you very much.

16       **PROSPECTIVE JUROR AFTONOMOS:**  I am Lefkos Aftonomos.  I live

17   in San Francisco and I have been here in California since 1978.

18   I'm a semi-retired physician.  I'm not married.  No children.

19       I have not been in the military.  I have been on two jury,

20   juries, civil cases.  And there were verdicts in both, both

21   times.  And I can be fair.

22       **THE COURT:**  Thank you.

23       Ms. Gill.  Good morning.

24       **PROSPECTIVE JUROR GILL:**  My name is Cynthia Gill.  I live in

25   San Francisco for 20-plus years.  I have lived in California for

1  62 years.  I'm a teacher.

2      I'm single.  No children.  No military service.  And I have

3  served once as a juror in a criminal case, and it was a partial

4  verdict.  And yes, I can be fair on both sides.

5      **THE COURT:**  Thank you.

6      **PROSPECTIVE JUROR ROSS:**  My name is Jan Ross.  I live in

7  San Leandro.  I have been there for 26 years, California, 62

8  years.  I'm an administrative assistant for a food broker.  I'm

9  married.  My spouse is a cobbler.  I have a kid that's 28, he

10  works for City Parks Department and stagehand crew.  No

11  military.

12      I have been on a civil case in the nineties and there was a

13  verdict.  And I can be fair on both sides.

14      **THE COURT:**  Okay.  You indicated -- did you indicate that

15  you had a friend who worked for Hewlett-Packard?

16      **PROSPECTIVE JUROR ROSS:**  A close work friend, her husband.

17      **THE COURT:**  Could you hand the microphone?

18      **PROSPECTIVE JUROR ROSS:**  A close work friend, her husband

19  works for Hewlett-Packard.

20      **THE COURT:**  Okay.  Now, I don't know whether you have any

21  familiarity with this particular case.  Did it --

22      **PROSPECTIVE JUROR ROSS:**  No.

23      **THE COURT:**  -- ring a bell with you?

24      **PROSPECTIVE JUROR ROSS:**  Nothing.

25      **THE COURT:**  Okay and you may -- if you serve as a juror, you

1  may be called upon to decide -- you will be called upon to

2  decide an issue.  Obviously it may have some impact or it

3  involves in some manner Hewlett-Packard.  You understand that.

4      **PROSPECTIVE JUROR ROSS:**  Yes.

5      **THE COURT:**  Okay.  Now, it may be that you come to a

6  decision that you think is right but may be different from what

7  Hewlett-Packard might want or think is right in any given

8  situation.

9      Does that cause you any discomfort?

10     **PROSPECTIVE JUROR ROSS:**  No.

11     **THE COURT:**  And you will agree not to discuss the case with

12 your friend during your jury service.

13     **PROSPECTIVE JUROR ROSS:**  Yes.

14     **THE COURT:**  Okay.  Thank you very much.

15     **PROSPECTIVE JUROR SCHUMANN:**  My name is Richard Schumann.  I

16 live in Sebastopol.  Nineteen years.  67 years in California.

17 Retired.  Previous occupation was, last one was a courier.

18 Prior to that I was a parts manager.

19     I'm married.  My wife is also retired.  She -- last --

20 office manager was last position for her with a recycling

21 company.

22     I have four children.  The oldest is 40, she is a housewife.

23 Second daughter is 38 and she's a compliance manager for Sutter

24 Medical.  Then I have a 33-year-old daughter and she is a

25 records.clerk for Sutter Medical.  And then my youngest is 30

1    and she is a scheduler for Sutter Medical.

2        No prior military service, have not served on a jury, and I

3    believe I can be fair to both sides.

4        **THE COURT:**  So you also have that commute.

5        **PROSPECTIVE JUROR SCHUMANN:**  Yeah.

6        **THE COURT:**  If you two are selected maybe you ought to

7    commute together.  You can do that, you know.  As long as you

8    don't talk about the case on the way down and on the way back.

9    You have to just talk about events in Sebastopol.

10       Okay, thank you very much.

11       **PROSPECTIVE JUROR GARCIA:**  Good morning, name is Deborah

12   Garcia.  I live in Oakland.  I have been there for 30 years.  I

13   was born in California.  I am an Alameda County Department of

14   Child Support assistant.

15       I am married.  And my husband is a sales rep, estimator for

16   West Bay Plastics, countertops.  And I have two children 29, and

17   he is into animation rigor.  And my other son is an assistant

18   manager for Raley's.

19       And I have not served in the military service and I have not

20   served on a jury service.  And I can be fair.

21       **THE COURT:**  Thank you.

22       **PROSPECTIVE JUROR FLORESJOVEL:**  My name is Noemy

23   Floresjovel.  I live in Rohnert Park, I lived there for the last

24   14 years.  34 years in California.  I am in accounts payable for

25   a biotech company.

 1       I am married.  My husband is a jacuzzi and spa technician.

 2   I have two daughters.  One is 14, in school, eighth grade.  And

 3   the older one is a philanthropy coordinator.  She's 25.

 4       I have not served -- been in the military.  And I have not

 5   done any jury duty.  And yes, I can be fair to both sides.

 6       **THE COURT:**  Thank you.

 7       Let's go a bit further.  Mr. Aoki.

 8       **PROSPECTIVE JUROR AOKI:**  My name is Raymond Aoki.  I live in

 9   El Sobrante, California, for 25 years.  I have been in

10   California for 40 years.  I'm a retired bartender.

11       I'm married.  My wife works for airlines.  I have a daughter

12   who's 30, who's in between jobs right now.  No military service.

13   No jury service.  And I can be fair for both sides.

14       And I requested a -- if I could be excused from this jury

15   because I'm -- like you, I have plans on my vacation.

16       **THE COURT:**  I knew it was a mistake for me to tell -- I told

17   the jurors, I told the jurors that actually in the next ten days

18   I do -- I'm taking a vacation.

19       **PROSPECTIVE JUROR AOKI:**  (Inaudible)

20       **THE COURT:**  And I sort of got glimmers of:  Oh, well, look

21   at this, a little irresponsible of the judge to go right off.

22       But tell me, you said you got tickets.  Are they --

23       **PROSPECTIVE JUROR AOKI:**  March 1st.

24       **THE COURT:**  I see, okay.  Well, thank you, Mr. Aoki.  Have a

25   seat.

1    **PROSPECTIVE JUROR JOHNSTON:**  My name is Tom Johnston.  Live

2    in Pinole, lived in California all but eleven years of our

3    lives.  We were eight years in Hawai'i.  I was born in Detroit,

4    but we came here when I was three.

5    I'm a pastor and a teacher.  And I teach math and other

6    subjects as a substitute teacher in the district.

7    Married, happily.  That's the status of my marriage.  My

8    spouse's occupation, we own a business.  She's a floral designer

9    and event coordinator.  So, I assist her in that as well.

10    We have three daughters.  29, she's a marriage and family

11    counselor.  25-year-old who is getting her double doctorate,

12    full ride, from St. Louis University, in bioethics.  And I --

13    our youngest daughter is 21, at UC Irvine, in dramatic arts.

14    No previous military service.  I was on a jury, I was the

15    jury foreman, and we did reach a -- a criminal judgment.  And I

16    can be fair to both sides of this case.

17    **THE COURT:**  Because of your occupation, I would like to ask

18    you this question, but of course, it applies to everybody across

19    the board, which is:  A juror, the task of a juror is to be the

20    judge of facts.  What are the facts.  And then applying the law:

21    Do the facts support a conviction or do they not support a

22    conviction?  So you actually have to pass judgment.

23    And other than the sort of vanilla way to describe it in

24    terms of passing facts -- obviously it is passing judgment on

25    another person's conduct.  I mean ultimately, that's what it is.

1    At least in part.

2        So sometimes people in your profession and others feel

3    uncomfortable about passing judgment on another person.  Even

4    indirectly, in terms of -- in terms of a verdict.

5        My question to you is:  Are you able to do so?

6        **PROSPECTIVE JUROR JOHNSTON:**  Yes, I am.

7        **THE COURT:**  Okay, thank you very much, Mr. Johnston.

8        **PROSPECTIVE JUROR POOPAT:**  My name is Kes Poopat.  I live in

9    Brentwood for nine years.  I have been in California for 32

10   years.  I'm a branch manager at a bank.

11       Unmarried.  I have a 26-year-old daughter who is a full-time

12   student at graduate school.

13       No to No. 8, no to No. 9.  And I'll do my best.

14       **THE COURT:**  Thank you.

15       (Reporter interruption)

16       **PROSPECTIVE JUROR CRANLEY:**  My name is Danae Cranley, and I

17   live in Berkeley.  And we have been there for five years.  I

18   have been in California for 40 years.  I am employed as an

19   employee benefits account manager.

20       I'm married.  My husband works for a startup in Oakland.  I

21   have three children, ages 9, 6 and 6.  I have not been in the

22   military.  I have not been on a jury.  And I believe I can be

23   fair to both sides.

24       **THE COURT:**  Thank you.

25       **PROSPECTIVE JUROR ROWLAND:**  My name is Craig Rowland.  I

also live in Sebastopol, California.  I have lived in California

for over 60 years.  I'm a certified official for the Department

of Veterans Affairs.  Generally, GI Bill payments for the

veterans at Santa Rosa Junior College.

I'm divorced.  I have two children.  My son is an electrical

engineer in Oregon and my daughter is a certified state welder

up in Chico.

I have 16 years military service.  I served in the United

States Army.  I was a combat engineer and paratrooper.

I have been called to jury duty seven times and I have been

recused seven times, so I have never served on a jury.  I can be

fair to both sides.  But I know myself, and it is a two-hour

commute each way.  And if I get mad, after a certain period of

time, I'm just going to be a thumbs down.

**THE COURT:**  Okay.  Thank you.

**PROSPECTIVE JUROR CRAIG:**  All righty.  I'm Kirsten Craig.  I

live in San Francisco and I have lived here for about three

years.  I have lived in California for 25 years.

I'm a partner marketing manager at Sales Force.  I'm single;

I do not have children.  I have not served in the military and I

have not served in jury service.

I'm not sure I can be fair to both sides.

**THE COURT:**  And what is your concern about being fair?

**PROSPECTIVE JUROR CRAIG:**  I have a few different connections

to HP, and I'm familiar with this case.

1        **THE COURT:**  Okay.  Thank you very much.

2        **PROSPECTIVE JUROR NORI:**  My name is Keelyn Nori.  I live in

3    San Francisco, and I have been there for about seven years.  I

4    have lived in California for the same.  My occupation is a -- an

5    engineer at a large semiconductor company.

6        I am married.  My husband is -- he works as a software

7    engineer for a small tech company.  I have no children.  I have

8    not served in the military.  I have not served on a jury

9    previously.

10        I think I'm going to have trouble being fair because I --

11    missing that much work.  I work for a small group that does

12    things for the whole company, and it's just going to -- I am

13    going to have some anxiety problems.  If I get bored, I might

14    think about work.

15        **THE COURT:**  Thank you.

16        **PROSPECTIVE JUROR ANTAKI:**  My name is Chris Antaki.  I have

17    lived in San Francisco for the last 14 months.  Lived in

18    California for about 30 years.  I'm a software engineer.

19        Single.  No children.  No military service.  No previous

20    jury service.  And I could definitely be -- I'll definitely try

21    to be fair to both sides in the case.

22        **THE COURT:**  Well, Mr. Antaki.

23        **PROSPECTIVE JUROR ANTAKI:**  Uh-huh.

24        **THE COURT:**  Yeah, you raised some concerns about United

25    Kingdom and some of their policies.

1       **PROSPECTIVE JUROR ANTAKI:**  (Nods head)

2       **THE COURT:**  Which raises a question to me for all jurors.

3    You understand that the defendant in this case, I assume, is not

4    an American citizen, though I don't know whether he is or not.

5    Is that correct?

6       **MR. KEKER:**  He is an English citizen, Your Honor.  Emigrated

7    there from Bangladesh.

8       **THE COURT:**  Okay, so he is an English citizen emigrated to

9    the United Kingdom from Bangladesh.  So obviously if anybody has

10   any feelings at all towards citizens from the United Kingdom,

11   individuals who are born and raised in Bangladesh, such

12   feelings, if they would at all influence in any way, your

13   decision, it's important for us to know that.  Okay.  It's

14   important for us to know that.

15      So now we have those out there on the table, be sure to tell

16   us if that's the case.

17      But turning back to you, sir, does that create any problems

18   for you?  Or issues?

19      **PROSPECTIVE JUROR ANTAKI:**  I mean, there might be a small

20   impact.  I'm not -- I think that the UK definitely has some

21   policies I don't agree with.  And the fact that the people

22   allowed those to become a law, like, kind of concerns me.  But I

23   don't know if that -- I don't know how he voted, so --

24      **THE COURT:**  And, unlikely to find out.  The -- the fact is

25   that anybody who is from a foreign country or in the United

States may have disagreements with the policies or the

government of the United States with a foreign country.  But the

-- you know, we don't have a country on trial.  We have an

individual on trial.  And that individual, wherever that

individual's from, is entitled to the full protections of the

Constitution of the United States.

And so to -- the law that will be applied here in this case,

even though it involves an individual who is not an American

citizen, will be the same as if he were an American citizen.

He's entitled to all of those protections as all the rest of us

are.

So would you have any hesitation giving the defendant in

this case the full protections of the United States

Constitution?

**PROSPECTIVE JUROR ANTAKI:**  That seems fair.

**THE COURT:**  Okay.  Thank you very much.

**PROSPECTIVE JUROR BARR:**  Good morning, Your Honor.  My name

is Lucarda Barr.  I live in San Bruno, California and have lived

there for 35 years.  I lived in the state of California for 67

years.  I'm a retired administrative admin from San Francisco

Unified School District.

I have been married over 40 years.  My spouse's occupation

is a retired tilesetter.  I have three children.  Two

biological.  One stepson.  Stepson is 43.  He's been estranged

for quite a few years.

1    My biological sons, the oldest is 37, works at Fox Marble,

2    heads the tile and marble department.  Our youngest is 35, he's

3    a San Francisco fireman.

4    I have not served in the military.  I have not served on

5    jury.  And not sure if I can be fair in both side of the case.

6    Simply because there's a lot going on in my life.  I presently

7    have a lawsuit, got into a car accident that injured my neck and

8    my back.  And my husband's health is extremely compromised.  So

9    I don't know if I really can put my full focus and be fair in

10   this case.

11       **THE COURT:**  Okay.  Thank you very much.

12       **PROSPECTIVE JUROR MIDDLETON:**  My name is Richard Middleton.

13   I live in Sebastopol, California --

14       **THE COURT:**  Oh.  We're going to -- we're going to get a bus.

15   I know there's somebody in Rohnert Park.  On the way in, we can

16   pick them up too.

17       **PROSPECTIVE JUROR MIDDLETON:**  I have lived for over 17

18   years.  Born and raised in California, 54 years.  My occupation

19   is a securities financial advisor and compliance officer.

20   I'm single.  I have no children.  Served in the military, US

21   Air Force trainee.  I have never served on a -- in a trial.  And

22   I can be fair.

23       **THE COURT:**  Now, in this case, we are -- while we are

24   talking about accounting, we are also talking about it in the

25   context of laws which -- which may regulate certain financial

1    transactions.

2        And the question I have for you is whether, notwithstanding

3    your experience and your expertise and so forth, you would

4    simply listen to the witnesses, evaluate those witnesses

5    according to a standard that I'm going to put in place, and not

6    rely on your own expertise to come to a conclusion.

7        Can you do that?

8        **PROSPECTIVE JUROR MIDDLETON:**  Facts and nothing but the

9    facts.

10       **THE COURT:**  There we go.  Thank you.

11       **PROSPECTIVE JUROR O'BRIEN:**  Good morning, Your Honor.  My

12   name is Vincent Edward O'Brien.  I live in Greenbrae,

13   California.  I have lived there 39 years.

14       I have three daughters, ages 44, 41, and 23.  The oldest is

15   a schoolteacher in Sacramento.  The middle one is a TV producer

16   in Los Angeles and the youngest one is an analyst for Visa here

17   in the city.  I'm single.  Oh, my occupation is a testifying

18   expert on economic damages.  I am single.  Said and done that,

19   okay.

20       And I have, I have two years of ROTC in college but no

21   military service.  Never been on a jury.  I think I can be fair

22   and impartial to both sides, but the Court needs to understand

23   that I have worked for Mr. Keker and his firm.  I have worked

24   for the U.S. Attorney General's office.  I have appeared or

25   filed reports opposite the U.S. Attorney General's office.  And

 1  I have worked for cases for Hewlett-Packard and opposite

 2  Hewlett-Packard.

 3      **THE COURT:**  Okay.  Thank you very much, Mr. O'Brien.

 4      **PROSPECTIVE JUROR WOEBCKE:**  My name is Scott Woebcke.  I

 5  live in Sonoma, California.  I have lived in California for 37

 6  years.

 7      I'm a cook by trade, currently unemployed, single, no

 8  children.  No military experience.  I have been summoned to a

 9  jury for a criminal trial but didn't have to serve.

10      And as far as being fair on both sides, I don't think it's

11  conceivably possible to be fair, given the sheer amount of

12  documents on both sides.  I can't see myself being fair without

13  actually being able to physically review everything that they

14  had to come to the conclusion to put this man here on trial.

15  So, I mean --

16      **THE COURT:**  Well, let me just pursue it just a bit further.

17  There will be a lot of documents.  There will be summaries of

18  documents.

19      And the jury will be shown the documents.  And during the

20  course of the deliberations, the jury will have all of the

21  evidence available to it.

22      **PROSPECTIVE JUROR WOEBCKE:**  Yeah, I get that.

23      **THE COURT:**  Not the testimony -- sorry?

24      **PROSPECTIVE JUROR WOEBCKE:**  I mean, there's got to be

25  thousands of pages.  For me to put someone's life in harm's way,

1    to be completely unbiased, I mean, I would have to take a really

2    huge look.  So I don't -- I mean --

3        **THE COURT:**  Okay.

4        **PROSPECTIVE JUROR WOEBCKE:**  There's no way I won't --

5        **THE COURT:**  I appreciate that.  Thank you very much.

6        **PROSPECTIVE JUROR PRESSLEY:**  Good morning, Your Honor.  My

7    name is John Walter Pressley.  I live in Pittsburg, California.

8    I have been there since 2008.  I came here to California in

9    1989.  I drive a coach bus for some of the tech companies in

10   Silicon Valley.

11       I'm married.  My wife worked contract throughout the state,

12   compensation company.  I have no kids.

13       I served time in the U.S. National Guard Service in Alabama.

14   I served on one jury which was criminal.  I was in the federal

15   witness -- I served as a witness for a federal case.

16       And because of my hardship, I can try to be fair, but after

17   three days I don't know, because I only get paid for three days.

18       **THE COURT:**  Thank you very much, Mr. Pressley.

19       **PROSPECTIVE JUROR LOPEZ-MORILLAS:**  Hello, I'm Julian

20   Lopez Morillas.  I live in Crockett, been there for eight years.

21   Lived in California almost 45 years.  I'm a stage actor and

22   teacher.

23       I'm married.  My wife is an editor, writer, and teacher.  No

24   children.  No military service.  I have never been impaneled on

25   a jury.

1    And I -- I think I can be fair to both sides.

2    **THE COURT:**  Thank you.  So, ladies and gentlemen, we're

3    going to take a recess now.  And there are two things I want to

4    tell you.  First of all, you haven't really heard -- I know you

5    haven't heard any evidence in this case.  You've heard some

6    remarks by myself and your fellow jurors.  But you really don't

7    know anything about the case.  So I would ask you during the

8    recess not to discuss the case because I don't think you really

9    know anything about the case yet.

10    Secondly, I want you to look to the right and left of you.

11    These are your new best friends.  And what that means is when

12    you come back into the courtroom make sure you are seated next

13    to your new best friends in the same order that you presently

14    are.  And we will be in recess until 11:00.  You may leave

15    anything you want to on the bench.

16    (Jury venire excused)

17    **THE COURT:**  Can I see all the lawyers at sidebar?  We don't

18    need a --

19    (Sidebar discussion held off the Record)

20    (Recess taken from 10:50 a.m. to 11:02 a.m.)

21    **THE COURT:**  Okay.

22    (The following proceedings were held in the presence of the

23    jury venire )

24    **THE COURT:**  Let the record reflect all parties are present;

25    the panel members are present.

1      I think we are starting with Mr. Maganazook?  Did I

2  mispronounce your name?

3      **PROSPECTIVE JUROR MAGANAZOOK:**  It's okay.  So, Steven

4  Maganazook.  I live in Livermore.  I have lived there about two

5  years.  I have lived in California for 32 years.  I'm a

6  researcher at a national laboratory.

7      I'm married.  My wife stays home with my two children, aged

8  4 and 2.  No military service.  No previous jury service.  I

9  certainly can be fair.

10     There is a medical condition which would impair that which I

11 would rather discuss in private.

12     **THE COURT:**  Sorry, didn't hear your last sentence.

13     **PROSPECTIVE JUROR MAGANAZOOK:**  As far as being fair there is

14 a medical condition that would prevent that, which I would

15 rather discuss in private.

16     **THE COURT:**  We will discuss it in private.  Thank you very

17 much.

18     **PROSPECTIVE JUROR RULLAMAS:**  Good morning, Your Honor.  My

19 name is Jean Rullamas.  I live in Freemont.  Been there about 16

20 and a half years.  I have lived in California for 34 years.

21     I'm married.  My husband is an outside sales manager.  We

22 have four kids.  One, 18 years old, she's in the food industry

23 as a hostess.  I have a 12-year-old, a four-year-old and a 4

24 year old.  Oh, and I have never been in the military.

25     I have served on two criminal cases.  And one we reached a

 1    verdict, and the other one not.  And I can be fair to both

 2    sides.

 3         **THE COURT:**  Thank you.

 4         **PROSPECTIVE JUROR CONROY:**  My name is Timothy Conroy.  I

 5    live in Walnut Creek.  I've been there for ten years.  I've

 6    lived in California my whole life, 34 years.  I'm a mechanical

 7    engineer.

 8         I'm married.  My wife is self-employed as an event planner.

 9    I have two children, they are about to turn six and seven.  I

10    have no military service.  I have never served on a jury.  And I

11    believe I can be fair to both sides.

12         **THE COURT:**  Thank you.

13         **PROSPECTIVE JUROR FENWICK:**  My name is Beth Fenwick.  I live

14    in Redwood City.  I have been there 23 years.  I have lived in

15    California all my life.  I am a part -- assistant

16    bookkeeper/IT/database maintenance of a small automatic door

17    company.

18         I'm not married.  I have no children.  Not in the military,

19    not on a jury.  And I can be fair to both sides.

20         **THE COURT:**  Thank you.

21         Ms. Shay.

22         **MS. SHAY:**  My name is Karen Shay.  I currently live in

23    Sonoma.  Been there 18 months.  Prior to that I have always

24    lived in California.  I'm currently a licensed psychotherapist,

25    private practice in Marin County.

1      I'm married.  My husband is an architect and artist.  I have

2  one daughter, who's 24.  She's in grad school right now.  No

3  military service.  No jury service.  And I believe I can be

4  fair.

5      **THE COURT:**  Thank you.

6      **PROSPECTIVE JUROR PLEVYAK:**  I'm -- Juror No. 45 is missing,

7  so I'm No. 46.

8      **THE COURT:**  Okay.  Thank you.

9      **PROSPECTIVE JUROR PLEVYAK:**  My name is Candace Plevyak.  I

10  live in Livermore.  I've been there about 14 years.  Been in

11  California for 51 years.  I'm a CPA.

12      I'm married.  My husband is a financial advisor.  I have

13  three children.  The 20-year-old is a student, the 18-year-old

14  is a student, 17-year-old, student.  No prior military service.

15  No prior jury service.  And I can be fair on both sides.

16      **THE COURT:**  Thank you.

17      **PROSPECTIVE JUROR REISINGER:**  My name is John Reisinger.  My

18  city of residence is Pittsburg.  We have been there five years.

19  I have lived in California all 63 years of my life.  I am

20  clerical office support with the FDIC here in San Francisco.

21      I am very happily married.  My wife is on-call office

22  support for the school board in Contra Costa County at various

23  schools.  We have no children.

24      I have not served in the military.  I have not had previous

25  jury duty service.  And I can be fair to both sides in the case.

1          **THE COURT:**  Sir, you indicated you had a connection with the

2     FDIC.  What is it that you do with respect to them?

3          **PROSPECTIVE JUROR REISINGER:**  I work for RICO USA in

4     clerical office support.  And we are subcontracted to the

5     San Francisco Regional Office of the Federal Deposit Insurance

6     Corporation.

7          **THE COURT:**  Okay.  Thank you very much.

8          **PROSPECTIVE JUROR REISINGER:**  You are welcome, sir.

9          **PROSPECTIVE JUROR WALKER:**  My name is Paul Walker.  I have

10    lived in San Rafael for eight years and California for 44.  I'm

11    a product marketer.

12         I am married.  My spouse is a personal trainer.  I have no

13    children, no military service or no previous jury service.

14    While I think I can be fundamentally fair, I do have a family

15    medical hardship I wanted to address.  If I may?

16         **THE COURT:**  Yes.  Please.

17         **PROSPECTIVE JUROR WALKER:**  My mother, as indicated in

18    there -- and I included medical records -- has recently been

19    diagnosed as stage 4 lung cancer and I'm her primary family

20    caregiver at this time.

21         **THE COURT:**  I understand.  Thank you very much.

22         **PROSPECTIVE JUROR PALADA:**  My name is Hector Palada.  I live

23    in Daly City for more than 30 years.  I live in California for

24    more than 40 years.  I'm a letter carrier for U.S. Postal

25    Service.

1    I am married.  I have -- my wife is a receptionist.  I have

2    two daughters.  The older one is 35 years old, is a stay-at-home

3    mom.  And the younger one is a doctor assistant who is 30 years

4    old.

5    I served in the military for three years as a power

6    generation guy.  I have no -- I have not served in the jury

7    service before and I can be fair to both sides in this case.

8    **THE COURT:**  Thank you.

9    Mr. Wong.

10    **PROSPECTIVE JUROR M.J. WONG:**  Hello, my name is Marc Wong.

11    I'm currently a resident in Dublin for the past 14 years.  I

12    have lived in California, mainly the Bay area, all my life.

13    My current occupation is a software programmer for telephony

14    equipment, for a telephony vendor.

15    I'm currently married.  My spouse's occupation is, she's

16    like a data analyst for like business and financial stuff.  I do

17    have -- I have a young son and daughter.  My son is one year old

18    and my daughter is nine.  No occupations right now, so -- I have

19    not served in the military.

20    I have served as a juror on two juries.  One a civil and one

21    a criminal case.  And we did come to a verdict.

22    In regards to being fair, I like to be fair.  I just have

23    some hardships in regards to care during the day for my two

24    children because they are young and I am the primary care for

25    them during the day.

1              And I do have some amendments in regards to my questionnaire

2    where I do have some connections to some of the entities listed

3    in this case.

4         **THE COURT:**  Oh, what is the nature of the connections that

5    you have?

6         **PROSPECTIVE JUROR M.J. WONG:**  Mainly, my wife used to work

7    for a company that was acquired by the entity that is --

8         **THE COURT:**  By Hewlett-Packard?

9         **PROSPECTIVE JUROR M.J. WONG:**  No, by Autonomy.

10        **THE COURT:**  Autonomy, I see.  Okay.  Thank you very much.

11        **PROSPECTIVE JUROR A.C. COMBS:**  My name is Alice Combs.  I

12   live in San Francisco.  I have lived here for four and a half

13   years, also lived in California for that long.  I'm an artist

14   and arts educator.  Single, no children.

15            No military, no previous jury service.  I can be fair to

16   both sides.

17        **THE COURT:**  Thank you.

18        **PROSPECTIVE JUROR LING:**  My name is Becky Ling.  I'm a

19   resident of San Mateo, I live there about 20 years and live in

20   San Francisco for ten years.  I do have to go back and forth

21   because I do need to take care of my 82-year-old mom.  And, I am

22   a fast-food restaurant store manager.

23            I am single.  No kids.  No previous military service.  I do

24   serve one jury, in San Mateo, it's a criminal.  It's not coming

25   to a verdict.

```
1            I don't think I would be fair because of the financial

2       hardship.  And because I am on a fast-pace person.  So I -- I

3       will not slow down, which is -- make mistakes in here.  And

4       English is not my first language so I don't think I would be

5       fair.

6            Thank you.

7            THE COURT:  Thank you.

8            PROSPECTIVE JUROR McCLELLON:  My name is Patrick McClellon.

9       I have lived here in San Francisco for 18 years and lived in

10      California for 18 years.  I'm a software engineer for Charles

11      Schwab.

12           I'm single.  No military service.  Never served on a jury.

13      I think I could be fair.

14           THE COURT:  Thank you.

15           PROSPECTIVE JUROR McABEE:  My name is William McAbee.  I

16      have lived in San Mateo, California, and California all my life,

17      69 years.  My occupation, I'm a retired auto technician.

18           I'm married.  My wife is a paralegal.  I have two adult

19      children.  One 45, and one 47.  And they're both in child care.

20      No military service.  Was on a jury, a criminal jury trial once.

21      And there was a verdict.  And I can be fair.

22           THE COURT:  Mr. McAbee, you indicated your wife is a

23      paralegal?  Pardon me.

24           PROSPECTIVE JUROR McABEE:  Yes.

25           THE COURT:  And is she -- is she associated with a law firm
```

1    or a company that uses her services?

2       **PROSPECTIVE JUROR McABEE:**  She does contract work at home,

3    like research and stuff for the Appellate Court and ACLU and

4    different --

5       **THE COURT:**  Okay.  But she's not associated with any law

6    firm that's involved in this particular case.

7       **PROSPECTIVE JUROR McABEE:**  No.

8       **THE COURT:**  Okay.  Thank you.

9       **PROSPECTIVE JUROR MOY:**  My name is Winston Moy.  I live in

10   Berkeley, California.  I have lived there about 35 years.  I

11   have been in California about the same amount of time.  I'm

12   federal employee.  I'm a grant administrator with the U.S.

13   Department of Housing and Urban Development.

14      I'm single.  I have no children.  I have not served in the

15   military.  I've served on four juries, two in Alameda County,

16   one criminal where we had a verdict.  A civil where we did not.

17   It was settled before.  And two civil cases where there were

18   verdicts in Multnomah County, Oregon.

19      And, can I be fair?  I would like to think that I can be

20   fair.  However, I am an HP stockholder.

21      **THE COURT:**  Well, okay.  First of all, Hewlett-Packard is

22   not a party to this case.  I appreciate the fact that you are --

23   indicated you are a stockholder.  But I don't know -- I'll have

24   to give some thought as to whether or not that is a reason for

25   disqualification.  Might be, might not.  I don't know yet.  I'll

1    have to hear from the parties.

2        But thank you very much.  Other than that, you feel you

3    could be fair.

4        **PROSPECTIVE JUROR MOY:**  Yes, yes.

5        **THE COURT:**  Do you know anybody at Hewlett-Packard?

6        **PROSPECTIVE JUROR MOY:**  No.

7        **THE COURT:**  Do you have any relationship with

8    Hewlett-Packard other than being one of --

9        **PROSPECTIVE JUROR MOY:**  No.

10       **THE COURT:**  -- millions of shareholders?

11       **PROSPECTIVE JUROR MOY:**  No.

12       **THE COURT:**  Okay.  Thank you.

13       **PROSPECTIVE JUROR CARMONA:**  My name is Maria Carmona.  I

14   have been living in Richmond for three years and I have lived in

15   California for 28.  My occupation is material handler in a

16   warehouse.

17       And I'm married.  And my husband's occupation is the same as

18   mine.  Just in a different company.  And I have a 16-year-old

19   daughter.

20       I have never served in the military, never served in a jury.

21   And definitely I can be fair to both sides.  But I have a little

22   concern.  I think the level of my understanding English is not

23   very good.  I don't know if that could interfere with this case.

24       **THE COURT:**  Well, have you understood my questions?

25       **PROSPECTIVE JUROR CARMONA:**  Most of it.

1        **THE COURT:**  That's better than most people.

2        (Laughter)

3        **THE COURT:**  I appreciate that.  But have you -- you have

4    some difficulty understanding English?

5        **PROSPECTIVE JUROR CARMONA:**  Yes, my concern is that there

6    might be some kind of vocabulary that is -- that I don't

7    understand.

8        **THE COURT:**  Okay.  All right.  Thank you very much.

9        **PROSPECTIVE JUROR STALLCUP:**  Good afternoon, Your Honor.  My

10   name is Quinn Stallcup.  I live in Napa.  I have lived there for

11   20 years.  I have lived in California for 22 years.  I am a

12   full-time toxicologist.

13       I am single.  I have no prior military service.  I have not

14   served on a jury before.  And I do not believe I can be fair due

15   to a financial hardship.

16       **THE COURT:**  And what is the nature of the hardship?

17       **PROSPECTIVE JUROR STALLCUP:**  My current job can only cover

18   my absence for three days.

19       **THE COURT:**  Okay.  Thank you very much.

20       **PROSPECTIVE JUROR NAESETH:**  My name is Eric Naeseth.  I have

21   lived in San Francisco and in California for seven years.  I'm a

22   software engineer.

23       Single.  I don't have any children, and I have never served

24   in the military or on a jury.  I can be fair to both sides in

25   this case.

1      THE COURT:  Thank you.

2      PROSPECTIVE JUROR ANGEL:  My name is Christopher Angel.  I

3   have lived in Sonoma, California, for 17 years.  I have lived in

4   California for 21 years.  I'm a building engineer in

5   San Francisco.

6      I'm not married.  I'm single.  No children.  No military

7   service.  No previous jury service.  And I can be fair to this

8   case.

9      THE COURT:  Thank you.  Pass to it Mr. Pevna.

10      PROSPECTIVE JUROR PEVNA:  Good morning, Your Honor.  My name

11   is John David Pevna.  I have lived in San Ramon, California for

12   12 years.  I was born and raised in California but have lived in

13   Hawai'i for five years, Nevada for two years, Chicago for two

14   years, and three-month stints in Houston, Snowmass at Aspen, and

15   Washington, D.C.

16      I am currently an autism specialist with the San Ramon

17   Valley Unified School District.  But I am retired from banking

18   and the legal profession.  I have worked at Bank of America,

19   Bank of Hawai'i, Bank of the West in their financial services in

20   the areas of compliance and legal departments.

21      I have also been the director of bank secrecy and anti-money

22   laundering in one of my employments.  I also worked for the

23   California Supreme Court.  I was associate Dean at Golden Gate

24   University law school.  I have taught at USC Law Center and I

25   was a legal administrator.

1    I'm single.  I have no children.  I have no military

2    service.  I had one criminal municipal court case in which a

3    verdict was reached.

4        I do believe that my background will lead me to be fairly

5    critical of both sides, given my continuing interest in

6    education and bank secrecy and anti-money laundering.  I had

7    relationships with auditors from the Federal Reserve, OCC and

8    OTS.

9        I have also had experience with the three consulting firms

10   that were listed, and do not have very high opinions of any of

11   them.

12       **THE COURT:**  Thank you.

13       **PROSPECTIVE JUROR DOVERALBA:**  Hi, I'm Dan Doveralba.  I have

14   lived in San Francisco in California for 18 years.  Director of

15   engineering.

16       Separated, no children, military or jury service.  I do not

17   think I can be fair to both sides.

18       **THE COURT:**  And you indicated that you had suffered some

19   financial loss, is that correct?

20       **PROSPECTIVE JUROR DOVERALBA:**  That's partially -- yeah,

21   that's true but I think the other part of why I can't be fair is

22   more substantial.  And speaking that in front of the jury would

23   likely --

24       **THE COURT:**  Yeah, okay, we don't need to go into the

25   reasons.  You just -- I understand.  Thank you very much.

1          **PROSPECTIVE JUROR R.M. MILLER:**  My name is Ronald Miller.  I

2     live in San Bruno.  I have been there 35 years.  I have been in

3     California all my life.  I work as a field utility worker for

4     PG&E.

5          I am married.  My wife works as an office manager/bookkeeper

6     for a small supermarket.  Let's see.  We have no children.  No

7     military service.

8          I have served on two juries, both criminal.  One we reached

9     a verdict, the other we didn't.  And I can be fair to both

10    sides.

11         **PROSPECTIVE JUROR ENCARNACIO:**  My name is Remy --

12         **THE COURT:**  Thank you.  Before we start, let the record

13    simply reflect that Joseph Hutka, who was the juror who preceded

14    you, was excused for health reasons.

15         Go ahead.  Go ahead.

16         **PROSPECTIVE JUROR ENCARNACIO:**  My name is Remy Encarnatio.

17    I live in Dublin for 15 years.  I have lived in California for

18    27 years.  I am an engineering administrator for a

19    telecommunication company.

20         I am single.  I have two children.  My daughter is 19 years

21    old and my son is 17 years old.  I have no military service and

22    I have no previous jury service.  And yes, I can be fair to both

23    sides in this case.

24         **THE COURT:**  Thank you.

25         **PROSPECTIVE JUROR MAEDA:**  Hi, my name is Yumi Maeda, Yumiko

 1    Maeda.  I live in San Mateo.  I have lived there for seven

 2    years.  I have lived in California for 37.  I am a contract

 3    compliance officer with the City of San Francisco, but I was

 4    formerly an attorney.

 5        I am married.  My husband is a Sysco programmer, manager

 6    with a biotech company.  I have one child.  He is two years old.

 7    No military service.  Never served on a jury.

 8        I don't think I can be fair to both sides in this case.  As

 9    I mentioned, I was an attorney in my previous life.  I -- my job

10    was akin to a public defender so I represented individuals from

11    marginalized communities who had very negative experiences with

12    the criminal justice system.  And that has definitely colored my

13    view and my experience with the courts in general, the, the

14    criminal justice system at large.

15        **THE COURT:**  Okay, thank you.

16        **PROSPECTIVE JUROR RESPLANDOR:**  My name is Mariechris Kiara

17    Resplandor, I live in Daly City and lived in California for nine

18    years.  Prior to that I came from the Philippines.

19        And I'm a store manager, located in Stanford Mall.  And my

20    husband's also in retail management.  We have three children.  I

21    have a 13-year-old, I have a four-year-old, and a five-year-old.

22        I have not served in a jury and I have no military service.

23    I -- I could be fair.  But unfortunately my mom just passed away

24    last November, and my dad lives with me right now, waiting for

25    his, um, USCIS status which -- after which, any time now we want

1    to go back to the Philippines to honor my mom's ashes.

2        **THE COURT:**  Thank you.

3        **PROSPECTIVE JUROR PALO:**  My name is Patricia Palo.  I'm from

4    Vallejo.  I have lived in Vallejo, California for 14 years.  I'm

5    a psychiatric technician at a state hospital.

6        I'm single, never been married, no children, never served in

7    the military or jury service.  I'm going to try to be fair to

8    both sides, since I work in a state hospital and I work with

9    mentally ill patients with criminal offenses.

10       And I also asked to be excused because I have a vacation

11   coming up next month.

12       **THE COURT:**  Thank you.

13       **PROSPECTIVE JUROR L.A. COMBS:**  Hello, good morning.  My name

14   is Laura Ashley Combs.  I live in San Leandro, California.  I

15   have lived there for about five and a half years.  I have lived

16   in California my entire life.  So, 24 years.  I am a case

17   management supervisor for a nonprofit here in San Francisco that

18   works with homeless and formerly homeless families.

19       I am single.  I do not have any children.  I have no

20   previous military service.  I have no previous jury service.

21   And I do feel that I could be fair on both sides of this case.

22       Though, as indicated on my questionnaire, I have several

23   different family things that are current family medical things

24   that are currently happening that sometimes cause me to have to

25   go to Modesto, my hometown, unexpectedly.

1      **THE COURT:**  Thank you.

2      **MR. STEGEMAN:**  Good morning, Your Honor, my name is Shamal

3   Mccord Stegeman.  I currently live in Oakland, California, been

4   there for about five or six years.  The rest of my life has been

5   spent in California.  I'm currently the sole sales operations

6   and shipping manager at my medical device company that I work

7   at.

8      I am not married.  I have no children.  No military service.

9   I have not been in jury service before.  And I think I can be

10  fundamentally fair to both sides of this case, but I would

11  request a recusal due to the critical nature of my job.

12     **THE COURT:**  Thank you.

13     **PROSPECTIVE JUROR HERNANDEZ SOTO:**  My name is Michael

14  Hernandez Soto.  I live in Sonoma, originally grew up there and

15  I have lived there for the last year.  I have lived in

16  California for 23 years.  I'm a project engineer at a demo

17  company.

18     I'm single, no children.  I have never served in the

19  military, nor a jury.  And I believe I could be fair on both

20  sides in this case.

21     **THE COURT:**  Thank you.

22     **PROSPECTIVE JUROR M.B. MILLER:**  Good morning, I'm Markham

23  Miller.  I live in Daly City.  I have lived there for the past

24  18 years.  I have lived in California for 22 years.  I work in

25  fundraising and development for a local hospital foundation.

1  I am married.  My spouse worked for UCSF in learning and

2  development.  I have no military service, I have never served in

3  a jury, and I believe I can be fair to both sides.

4  **THE COURT:**  Thank you.

5  **PROSPECTIVE JUROR BEATY:**  My name is Richard Beaty.  I have

6  lived at my current address for 33 years.  I have been in

7  California for approximately 51 and a half years, except for a

8  brief five-month time I went to the state of Washington.  I was

9  employed by the U.S. Postal Service for over 40 years as a

10 letter carrier.

11 I'm single.  Don't have any children.  No military service.

12 Not served on a jury.  A couple of times I got close and I was

13 excused.  And I think I could be fair to both sides.

14 However, there is a couple of things I want to say first.  I

15 have a very, very secondary connection to the Keker law firm.  I

16 used to deliver their mail for 13 years.  Actually was a

17 situation where I sorted the mail at 630 Sansome; they come from

18 their law offices and pick it up.

19 I knew the woman that was a receptionist because I knew her

20 brother.

21 I don't know if Roberta still works for you, I knew Roberta,

22 we used to call her "Bert."

23 The other thing, I do have a medical situation where I have

24 a doctor's appointment once a month, and usually it is on a

25 Thursday.

1      THE COURT:  Thank you.

2      PROSPECTIVE JUROR BONILLA:  My name is Karen Bonilla.  I

3  currently live in Richmond, California for about two years and a

4  half.  The rest of my life, here in California.  I'm currently

5  property management, just an operations manager.

6      I'm married.  My husband is a retail manager.  We do have

7  two children.  We have a four-year-old and a ten-year-old.  I

8  never had any military service.  Never been on -- done jury

9  service.

10      And I can't be fair to both sides because I do start a new

11  job March 1st.  So that would just be extreme hardship for us.

12  I am leaving my current job, so I wouldn't have any seniority or

13  any pay or anything in the new job.

14      THE COURT:  Thank you.

15      PROSPECTIVE JUROR MUNGUIA:  My name is Gustavo Munguia.  I

16  live in Menlo Park, California for 27 years.  I work for VTA,

17  Valley Transportation Authority, as an upholsterer.

18      I'm married.  My wife is retired.  I have two sons.  One is

19  47, he works for Lucky Stores.  And the second one is 42, and he

20  is a salesman.  And never served the military.  And never been

21  into a jury service.  And I guess I can be fair.

22      THE COURT:  Thank you.

23      PROSPECTIVE JUROR CENDRON:  Good morning, Your Honor, my

24  name is Pierantonio Cendron.  I live in Concord right now and I

25  have lived there for four years.  I -- excuse me.  I have been

in California for 12 years altogether.  I am currently a baker.
And I'm divorced.  And I have a five-year-old son.

I have no previous military service.  No jury duty.  And I
believe I can be fair to both sides.

**THE COURT:**  Where do you bake?

**PROSPECTIVE JUROR CENDRON:**  In Berkeley.  I bake the best
food in the world, which is pizza.

**THE COURT:**  Great.  Thank you very much.

**PROSPECTIVE JUROR SANGPO:**  My name is Tsering Sangpo.  Lived
in San Mateo for 15 years and California for 15 years.  Works as
an NA and home health aide.

I'm married, and two stepchildren, 28 and 29.  And spouse
works as a cook.  No previous military service.  Yes, jury
service once, criminal, but I don't know if it's verdict or not.

I can be fair, but if you can excuse me because I have a
problem with my rotator cuff injury, so I might have to go back
to the doctors and I might get the surgeries.  So if I into the
surgery I have to have like four or five months off, so I don't
have enough PTOs and stuff if I stay here for long.

Thank you.

**THE COURT:**  Thank you.

**PROSPECTIVE JUROR DRAKE:**  Hi, my name is Marjorie Drake.  I
live in Newark.  I have lived there for 16 years.  I have lived
in California all but -- I'm 66, I have lived here for all but
four of those years.  When I was a kid we moved back to

1    Arlington, Virginia.  For the last 20 years I have been a

2    software engineer.  I'm retired now.

3        I'm divorced.  My son -- I have one son.  He's 39.  And he

4    works on online sales for Lamp Plus.  I have never served in the

5    military.  I have never served on a jury.  And I think I can be

6    fair on both sides of this case.

7        **THE COURT:**  Thank you.

8        **PROSPECTIVE JUROR RAMASWAMY:**  Good morning.  My name is

9    Shivkumar Ramaswamy.  I live in Dublin and I have lived there

10   for three and a half years.  I live in California for 19 years.

11   I'm an IT consultant.

12       I'm single.  And I have one son, he's 24, he is a student.

13   I have not served in military nor have I served in a jury.  And

14   yes, I can be fair to both sides.

15       **THE COURT:**  Thank you.

16       **PROSPECTIVE JUROR GUEVARA CORRAL:**  Hi, my name is Graciela

17   Guevara.  I live in Rohnert Park.  I have lived there for 19

18   years.  And I have lived in California for 24 years.  I work in

19   retail at Nordstrom Rack.

20       I am single.  I have one child, he is one.  And I have not

21   served in the military.  Nor a jury.  And I can be fair to both

22   sides.

23       **THE COURT:**  Which Nordstrom's do you work at?

24       **PROSPECTIVE JUROR GUEVARA CORRAL:**  The Nordstrom's at

25   Coddingtown in Santa Rosa.

1          **THE COURT:**  Okay, thank you.

2          **PROSPECTIVE JUROR SCHEFFY:**  Good morning, Your Honor.  My

3    name is Mirna Scheffy.  I have lived in San Francisco for the

4    past ten years and I have also lived in California for the past

5    ten years.  I also attended high school in Marin County.  I'm an

6    attorney, at a law firm in San Francisco.

7          I am married.  My husband is an investment banker.  We don't

8    have any children.  I have never served in the military.  I have

9    never served on a jury.  And I can be fair to both sides in this

10   case.  However, I do have a vacation on February 26th and then I

11   also have a trial --

12         **THE COURT:**  Don't worry about the trial.  Don't worry about

13   the trial.  I'll take care of the trial.

14         **PROSPECTIVE JUROR SCHEFFY:**  No, I will have a trial of my

15   own on March 28th.

16         **THE COURT:**  Sorry.  You say a trial of your own?

17         **PROSPECTIVE JUROR SCHEFFY:**  Well, I'll be first-chairing a

18   trial in San Diego.

19         **THE COURT:**  Okay, what law firm are you associated with?

20         **PROSPECTIVE JUROR SCHEFFY:**  Hawkins Parnell Thackston and

21   Young.

22         **THE COURT:**  And what do they specialize in?

23         **PROSPECTIVE JUROR SCHEFFY:**  Products liability and

24   employment law.

25         **THE COURT:**  I would like to hand the microphone to

1    Ms. Kiziryan.  I think you had, you were a bit late, so -- and I

2    understand why.  So, could you answer the questions.

3        **PROSPECTIVE JUROR KIZIRYAN:**  I apologize for being late.

4        **THE COURT:**  No that's all right, go ahead.

5        **PROSPECTIVE JUROR KIZIRYAN:**  My name is Yana Kiziryan.  I

6    have lived in San Francisco for three years and in California

7    for almost 25.  I am the director of accounting at a renewable

8    energy company.

9        I'm married.  My husband is a software engineer.  We have

10   two young children.  One is three years old and the other is

11   nine months old.  And I'm a nursing mother.

12       I don't have military or jury service, previously.  Although

13   I can be fair to both sides on the trial, I was hoping to be

14   excused because I need to take breaks to pump during the day.

15   And also, I found out that my company only pays for ten days of

16   jury duty per year.

17       **THE COURT:**  Okay, your husband is an investment banker?

18       **PROSPECTIVE JUROR KIZIRYAN:**  Software engineer.

19       **THE COURT:**  Oh, he is a software engineer.  And by whom is

20   he employed?

21       **PROSPECTIVE JUROR KIZIRYAN:**  Chegg.

22       **THE COURT:**  Pardon me?

23       **PROSPECTIVE JUROR KIZIRYAN:**  Chegg, C-H-E-G-G.

24       **THE COURT:**  Thank you.

25       So, ladies and gentlemen, we're moving right ahead.  May not

1    seem that way, but we are.

2        I'm going to have a very brief consultation with the

3    attorneys at the sidebar.  And during that time, you are free to

4    talk.  Can't leave.  But if you would like to talk to the

5    people, your best friends, if you would like to talk to them, go

6    right ahead.

7        In the meanwhile I'll see counsel at sidebar.

8        (The following proceedings were heard at the sidebar:)

9        **THE COURT:**  So we are outside the presence of the panel.

10   What I like to do is give you a preliminary indication of people

11   I would recuse for hardship or for cause.

12       You don't have to agree.  You don't even have to state a

13   position.  But obviously, if you agree, you don't have to ask

14   them any questions so there's a --

15       **MS. LITTLE:**  Would you tell us whether they are hardship or

16   cause?

17       **THE COURT:**  Not really, because it's sort of a waste of time

18   at this point.  It may -- I mean, I don't know.  I just didn't

19   write it down on this list (Indicating).  So, see where you are.

20   I think it's fairly obvious why I recuse; maybe not.

21       No. 5.  Higgins.  7, Jameson.  8, Yip.  Y-I-P.  I don't know

22   what to do about 16, the guy from Sebastopol.

23       **MR. LEACH:**  I thought the bus is a good idea.

24       **THE COURT:**  In the final analysis I certainly would excuse

25   him because he thinks it's a problem.

1          **MR. REEVES:**  Right.

2          **MR. LEACH:**  Right.

3          **THE COURT:**  Then they don't, and I'm not going to excuse

4     him.  But anyway, that's up in the air.

5          **MS. LITTLE:**  That was 16, did you say?

6          **THE COURT:**  No, 16.

7          **MR. KEKER:**  So that is up in the air is what you are saying.

8          **THE COURT:**  By the way, they are all up in the air.

9          **MR. KEKER:**  I get that.

10         **THE COURT:**  This is just my first take on it.  No. 24, okay.

11    28, Rowland.  29, Craig.  30, Nori.  33, Barr.  35, O'Brien.

12    36, Woebcke --

13         **MR. KEKER:**  You don't like Woebcke?

14         **THE COURT:**  I like him.  I only have one year to try this

15    case.

16         37, Pressley.  40, Maganazook.  45, I don't know.  The

17    mother issue is one that we can address.

18         **MR. KEKER:**  It is the ten days' pay.  Also she worked for

19    KPMG.

20         **THE COURT:**  Okay.

21         **MR. KEKER:**  And she was at KPMG and that is an important

22    factor in this case.

23         **THE COURT:**  Okay, so I will probably recuse her.  Excuse

24    her, whatever it is.

25         48, Walker.  52, Wong.  54, Ling.  61, Stallcup.

1    **MR. KEKER:**  Just a second, Your Honor.  61, Stallcup.

2    **THE COURT:**  64, Pevna.  P-E-V-N-A.  65, Doveralba.

3    **MR. KEKER:**  Done --

4    **THE COURT:**  Right.  69, Maeda.  73, Palo.  75, Stegeman.

5    80, Bonillo.  Bonilla, pardon me.  And 84, Sangpo.

6        Now, I would note that there are a couple whose English is

7    dicey.  So, that's something that I thought we ought to -- you

8    can explore and I ought to hear them a bit more and maybe you

9    ought to hear them a bit more to decide whether -- you don't

10   have to be proficient in English but you have to be good enough

11   to --

12    **MR. KEKER:**  I think actually in this case it is going to be

13   important.  There's only two that I think are at issue, two

14   people --

15    **THE COURT:**  That's right.

16    **MR. KEKER:**  Because the language is going to be obtuse.

17    **THE COURT:**  Yeah, language is pretty important.  It is not a

18   who-done-it or where-it-happened.

19    **MR. KEKER:**  Your Honor.

20    **THE COURT:**  Yes, Mr. Keker.

21    **MR. KEKER:**  What I'm planning to do is if -- accept this

22   list, and unless I -- the only reason I would go question one of

23   them is would be because I'm trying to rehabilitate them, but I

24   don't think I'm going to do that, so I'm going to rely on these

25   and not try to develop as much cause as I can, I'm just --

1    **THE COURT:**  Oh, think --

2    **MR. KEKER:**  Try to save time.

3    **THE COURT:**  I think that's fine, but I think you have to

4    hear --

5    **MR. KEKER:**  Sure, if they want to rehabilitate them that's

6    fine.

7    **THE COURT:**  And then you have to act on your instincts.

8    **MR. KEKER:**  Fair enough.

9    **THE COURT:**  But I'm satisfied at this point that I would

10   excuse all these people.  That is my statement.

11   **MR. DOOLEY:**  Would the Court entertain a brief break so we

12   can figure out whether it is worth our time?

13   **THE COURT:**  Let's take five minutes.  Is that enough time?

14   **MR. DOOLEY:**  Yeah, I think that's fine.

15   **MR. KEKER:**  Yeah.

16   **THE COURT:**  Okay.  Okay.

17   **MR. DOOLEY:**  Is the Court going to take a lunch break?

18   **THE COURT:**  Let's talk about that.  I could actually send

19   them to lunch now.  If you -- because then they will get into

20   the cafeteria before any lines and so forth.  And get them back

21   here at quarter of 1:00.

22   **MR. KEKER:**  That's fine.

23   **THE COURT:**  Or 12:30.

24   **MS. LITTLE:**  Great idea.

25   **THE COURT:**  And then you can use that time.

1        **MR. DOOLEY:**  I don't expect it to take long, but this way

2    I'll figure it out.

3        **THE COURT:**  That is even better.  Okay.

4        **MR. DOOLEY:**  So let them go.

5        (Conclusion of sidebar discussion; the following

6    proceedings were held in the presence and hearing of the Jury:)

7        **THE COURT:**  Ladies and gentlemen, the parties were so

8    concerned about your well-being that what they have urged me to

9    do -- and I think it makes a great deal of sense -- is excuse

10   you for lunch right now.

11       So I'm going to ask you to come back here at a quarter of

12   1:00.  You will have an hour to sample the really fine cuisine

13   that exists in this neighborhood.  I'm being facetious, because

14   of course I'm referring to the federal cafeteria.  But you

15   probably won't get poisoned.  And I eat there all the time, and

16   it's just fine.  And there are other places around.

17       So, I'm going to urge you to go now because there won't be

18   lines.  And be back here, at a quarter of 1:00.  Again, with the

19   admonition that you're not to discuss this case.  And with a

20   further admonition that you are to take the same seat you had

21   before.

22       Thank you.

23       (Jury venire excused)

24       (The following proceedings were held outside of the

25   presence of the jury venire)

1    **THE COURT:**  Okay.  So, proceed first with the government and

2    then the defense.  And then, assuming we finish all of the

3    voir dire, we will excuse the jurors and take up challenges for

4    cause.  And then we have to see where we are.  I don't know.

5    You know, I haven't even added this up so I don't know the

6    numbers yet, whether we are going to make it or not.

7    We decided on four alternates.

8    **MR. KEKER:**  Yes, sir.

9    **MR. LEACH:**  Yes.

10   **THE COURT:**  Okay.  So let's see where we are.  All right.

11   Thank you.

12   **MR. LEACH:**  Thank you, Your Honor.

13   **MR. REEVES:**  Thank Your Honor.

14   **MR. KEKER:**  May we stay here, Your Honor?

15   **THE COURT:**  Pardon me?  You can stay here, anything you want

16   to do.

17   **MR. KEKER:**  Thanks.

18   **THE COURT:**  Yeah.

19   (Recess taken from 11:47 a.m. to 12:47 p.m.)

20   (The following proceedings were held in the jury room,

21   outside the presence and hearing of the public and the jury

22   venire.)

23   **THE COURT:**  You indicated -- we have a court reporter

24   here -- that you wanted to mention something.  You mentioned

25   that.

1      **PROSPECTIVE JUROR MAGANAZOOK:**  Yeah.  So --

2      **THE COURT:**  (Inaudible)

3      **PROSPECTIVE JUROR MAGANAZOOK:**  Right, so I have bipolar

4  disorder.  And part of that comes with anxiety attacks.

5      **THE COURT:**  And you feel that you might have --

6      **PROSPECTIVE JUROR MAGANAZOOK:**  Yeah, it's a daily thing, I

7  have a half hour, have anxiety, I have to leave.  It happens at

8  work.  Business travel, especially.

9      **THE COURT:**  Do you take medication for it?

10      **PROSPECTIVE JUROR MAGANAZOOK:**  Not for anxiety.  They give

11  you sedatives for anxiety.  So, you take them --

12      **THE COURT:**  Nothing for bipolar disorder?

13      **PROSPECTIVE JUROR MAGANAZOOK:**  Oh, yeah, Lithium.

14      **THE COURT:**  Okay.

15      **PROSPECTIVE JUROR MAGANAZOOK:**  Latramagen (Phonetic).  It

16  has a few names.

17      **THE COURT:**  Lomicatal (Phonetic).

18      **MR. KEKER:**  Yeah.

19      **PROSPECTIVE JUROR MAGANAZOOK:**  Lomicatal (Phonetic).

20      **THE COURT:**  So you would prefer not serving.

21      **PROSPECTIVE JUROR MAGANAZOOK:**  I think it would be

22  disruptive.  Like when I'm in my office, about every half hour I

23  have to leave.  With work travel it's more frequent.

24      **THE COURT:**  That's fine.  I think that's fine.  And stay

25  now, but we will -- you will be excused at the -- when I read

1    people's names.  Okay?

2        **PROSPECTIVE JUROR MAGANAZOOK:**  Yes.  I brought this

3    (Indicating) just in case, they said -- documentation from

4    psychiatrist.

5        (Document handed up to the Court)

6        **THE COURT:**  Yeah, from -- all right.  Doctor --

7        **MR. KEKER:**  Dougal.

8        **THE COURT:**  Dougal, right, from Kaiser Permanente.  Thank

9    you very much, appreciate your willingness to come down here

10   today.

11       **PROSPECTIVE JUROR MAGANAZOOK:**  Thank you.

12       **THE COURT:**  Okay.

13       (Conclusion of discussion; the following proceedings were

14   held in the presence and hearing of the jury venire:)

15       **THE COURT:**  Can I see the parties for a moment?

16       (Sidebar discussion held off the Record)

17       **THE CLERK:**  Judge, we are missing one juror.

18       **THE COURT:**  All right.  Let's wait.

19       **THE CLERK:**  Yes, please.

20       **THE COURT:**  Which one is it?

21       **UNIDENTIFIED MAN:**  32.

22       **THE CLERK:**  32.  Okay.

23       (A pause in the proceedings)

24       **THE COURT:**  Okay, let the record show it's 15:50.

25   Mr. Frentzen, you wish to commence?

1    **MR. FRENTZEN:**  That's fine, Your Honor.  Do we have all the

2    jurors?

3    **THE COURT:**  Well, we don't.  We're missing No. 32.  I don't

4    want to wait too long.  Let's -- we didn't spot him, so --

5    **MR. FRENTZEN:**  I'm fine with proceeding, Your Honor.  I

6    don't know if -- if there is a desire --

7    **THE COURT:**  What do you want to do?

8    **MR. KEKER:**  If he's going to be excused, that's fine with

9    us.

10    **THE COURT:**  Oh, I'm going to excuse him, then, if he -- I

11    mean, I don't know when he waltzes in, but we'll see.

12    **MR. KEKER:**  I think he ought to be here for all the

13    proceedings.

14    **THE COURT:**  Yeah.

15    **MR. KEKER:**  I don't have any objection to excusing him

16    because he's late.

17    **MR. FRENTZEN:**  That's fine with the government, Your Honor.

18    **THE COURT:**  All right, then I'm excusing him.

19    Okay, go right ahead.

20    **UNIDENTIFIED MAN:**  (Inaudible)

21    **MR. FRENTZEN:**  I'm going to proceed, okay, thank Your Honor.

22    **THE COURT:**  Yeah.

23    **MR. FRENTZEN:**  I didn't know if the Court wanted to say

24    anything.

25    **THE COURT:**  Yeah, go ahead.

1    **MR. FRENTZEN:**  All right.

2    Good morning, ladies and gentlemen.  As we ran through early

3    this morning, my name is William Frentzen.  I am an Assistant

4    United States Attorney for the United States Attorney's office

5    for the Northern District of California.

6    I will try to stay by this mic but I want to address all of

7    you.

8    I've been in California -- I work in California, in the

9    Northern District.  And if I could briefly introduce to you as

10   well my colleagues.

11   Robert Leach is also an Assistant United States Attorney,

12   same office.  And Adam Reeves, similarly, Assistant United

13   States Attorney (Indicating).  We are all based here in

14   San Francisco.  And it will be our job to present the

15   government's case to you as we go through this.

16   Beth Margen is a paralegal specialist, also with our office,

17   the U.S. Attorney's office here in San Francisco.  And Special

18   Agent Alexandra Bryant is a Special Agent with the Federal

19   Bureau of Investigation.  She also based here in San Francisco,

20   California.

21   I think as I go through this process, number one, I hope to

22   be brief.  Number two, I intend to ask a number of questions

23   which are really aimed at the entire group, and hopefully we can

24   move through it quickly.  If I ask you a question and you have a

25   response and feel like you need to raise your hand, go ahead,

1    and then we'll pass around the mic and talk further about it.

2        But the bulk of my questions are going to be for you as a

3    whole, just about a number -- a couple of broad issues that we

4    are concerned about in this case.  When I say "concerned about,"

5    not really concerned about, but more, we want to just make sure

6    it's not an issue for you in serving as a juror on this case.

7    And then I think I have a couple of specific questions for just

8    a few of you, and I'll do those at the end.

9        There are -- and again, we have -- and you have seen us

10   moving them around on the table, we have the jury questionnaires

11   that you already took the time to fill out.  And there is a lot

12   of you that describe in the past, either yourselves or somebody

13   close to you, some interaction with law enforcement.  And I want

14   to ask just a couple of questions about that generally.  And if

15   you have -- if we need to do some followup, raise your hand and

16   we'll go ahead and do it.

17       But a number of you obviously, either yourselves or people

18   close to you, have in the past been victims of crime.  We don't

19   want to get into all of that.

20       I have a fairly simple question:  As a result of what

21   happened to you or the person close to you that you described in

22   the questionnaire, do you have any lingering feelings about

23   being a victim, interacting with law enforcement, that cause you

24   some sort of concern about sitting in this particular criminal

25   case?

1    Does anyone have that sort of feeling where we ought to go

2    ahead and talk about it?

3    (A hand is raised)

4    **THE COURT:**  Yes, sir.

5    (Hands raised).

6    **PROSPECTIVE JUROR BEATY:**  I have to do it in private, sir.

7    I cannot do it before the Court.

8    **MR. FRENTZEN:**  I'm sorry, sir?

9    **THE COURT:**  If you can wait until you get to the microphone,

10   and then if you stand up, identify yourself, that would be

11   helpful.

12   **PROSPECTIVE JUROR BEATY:**  I'm Richard Beaty, No. 79.  I'm

13   sorry, I cannot answer that in court.  I will do it in private.

14   It's more than one instance.

15   **MR. FRENTZEN:**  Can I have one moment, Your Honor.  Does the

16   Court want to take this up at a sidebar?

17   **THE COURT:**  Let me ask you this question, Mr. Beaty.

18   **PROSPECTIVE JUROR BEATY:**  Sure.

19   **THE COURT:**  First of all, thank you for responding.

20   Secondly, is the experience that you've had with law

21   enforcement, whatever that experience is, for, with, or being a

22   victim in a crime?  And maybe we should define it, maybe we

23   should break that down.

24   Were your concerns as a result of being a victim?  Or were

25   your concerns as a result of any interaction you have with law

1  enforcement?

2      **PROSPECTIVE JUROR BEATY:**  Okay, I have to separate the two.

3  I've had numerous experience with law enforcement.  And I've had

4  numerous crimes committed on me.

5      **THE COURT:**  Go ahead.

6      **PROSPECTIVE JUROR BEATY:**  First --

7      **THE COURT:**  Go ahead.

8      **PROSPECTIVE JUROR BEATY:**  The first crime that was committed

9  on me changed my life.

10     **THE COURT:**  And your feeling is that as a result of that --

11     **PROSPECTIVE JUROR BEATY:**  I can answer, too.  As a result of

12  that, I find myself in a position, when it really comes down to

13  it, I do not trust anyone.  And I repeat:  Anyone.

14     **THE COURT:**  Okay.  Thank you.  I think that response will --

15     **MR. FRENTZEN:**  Thank you very much.

16     **THE COURT:**  And Mr. Frentzen, there was somebody in the jury

17  room.

18     **MR. FRENTZEN:**  In the box?

19     **THE COURT:**  Yeah, the box.

20     **PROSPECTIVE JUROR HALL:**  Kenneth Hall.  I don't have

21  anything comparable to that.  The two incidents, one involving

22  myself as a victim, was a burglary.  And the response from the

23  police was, um, I thought it was outrageous.  Very poor.

24     Second one was my nephew, arrested for drugs.  And again,

25  when it came down to it, the police were shown to be very

1   negligent.  And so I -- I question, I question authority, put it

2   that way.

3       **MR. FRENTZEN:**  And I appreciate that.  I appreciate you

4   sharing that with us.  Is this -- this sounds like it was

5   something that was -- had a meaningful impact on you?

6       **PROSPECTIVE JUROR HALL:**  Yes.

7       **MR. FRENTZEN:**  And is that something that you feel like

8   could interfere with you serving as a juror in this case?

9       **PROSPECTIVE JUROR HALL:**  I'll try not to let it.  I just

10  want to let you know that I always look very skeptically upon

11  police.  And sort of law enforcement in general.

12      **MR. FRENTZEN:**  Sure, I understand that.  And I guess the

13  question is, we don't know you.  We've learned fair amount about

14  you, granted.  But we don't know you before today.  You know

15  yourself better.

16      And really, the issue is, I know it's a hard thing to do.

17  But we need to have sort of a preview of, you know, is this

18  something that you can do.

19      In other words, if we get halfway through and you say:  I

20  really can't be fair, these feelings are coming back or

21  something like that, it's a little too late.

22      And so I know it is a difficult exercise, but can you -- I

23  mean, do you have a deep concern about serving on this jury

24  because of these prior instances that happened to you?

25      **PROSPECTIVE JUROR HALL:**  I would say so, yeah.

1        **MR. FRENTZEN:**  Thank you.  Thank you, sir.

2        And, I don't think there were any other hands?

3        (No response)

4        **MR. FRENTZEN:**  Great.  And actually, I think Mr. Hall got

5     into a little bit of this already.  But the flip side of this,

6     because my question was really about if you or someone close to

7     you was a victim, the flip side is -- and I know for some folks

8     they responded either themselves or somebody in their family had

9     previously been arrested, and of course that happens in life.

10       The question really for the group is:  Is there anything

11    about that experience that happened to you or to somebody very

12    close to you, that would cause you to have residual feelings

13    where you could not serve in this particular case?

14       (No response)

15       **MR. FRENTZEN:**  In other words, there's no feelings that

16    somebody was so poorly treated by law enforcement that you --

17    you can't serve on this case.

18       (No response)

19       **MR. FRENTZEN:**  Okay, great.

20       Moving on, there's a lot of news lately about politics.

21    There's a lot of news lately about, among other things, the

22    Department of Justice and the Federal Bureau of Investigation.

23       As I indicated when we first started out, the folks here in

24    this courtroom all work in San Francisco, California.  We are --

25    we have been out here, working on cases for quite some time.

1    That's our day-to-day job.  We do not have -- we're not in

2    Washington, D.C.; we're not politicians.

3        And my question is --

4        **MR. KEKER:**  Objection, Your Honor.  I object.  If you want

5    to hear about it, I'll tell you.

6        **THE COURT:**  Well, I want to know what the objection is.

7        **MR. KEKER:**  The objection is they are politicians, and

8    Mr. Reeves did work in the Eastern District of Virginia.

9        **THE COURT:**  Well.

10       **MR. KEKER:**  And this speech really has nothing -- if they

11   are going to prove where they worked -- we'll cross-examine them

12   on that.

13       **THE COURT:**  Okay.  Let me -- I think the line of questioning

14   is fine.  Maybe I can take over here.

15       There is -- there is a lot of publicity about the FBI and

16   the Department of Justice.  It's been in the paper for some

17   period of time.  And the question is, the question is:  That

18   publicity, that information, those reports and so forth, are you

19   influenced by those, that somehow you will permit it to

20   influence you in this particular case?

21       (No response)

22       **THE COURT:**  Or are you so influenced by it anyway, by what

23   you have read and what you have heard, that your -- your mind is

24   uncertain as to whether or not you would apply it to this

25   particular case and to the government here?

1          Both sides are entitled to a fair trial.  Both sides are

2    entitled to present their case as they see their case, without

3    jurors drawing inferences, one way or the other, by who's

4    presenting the case.  Defense is presenting their case;

5    prosecution is presenting their case.  They're entitled to

6    present it without any presumptions that they are biased or

7    acting improperly.

8          Is there anybody who would disagree with that?  Think it

9    might influence them in this particular case?

10         (A hand is raised)

11         **THE COURT:**  Yes, sir, okay, so there is -- we'll just note

12    that.  You are number -- Juror Number --

13         **PROSPECTIVE JUROR PEVNA:**  64.

14         **THE COURT:**  Pardon?

15         **PROSPECTIVE JUROR PEVNA:**  64.

16         **THE COURT:**  Juror No. 64.  Okay.  Thank you.  You are

17    Mr. Pevna.

18         **PROSPECTIVE JUROR PEVNA:**   Pevna.

19         **THE COURT:**  Pevna.  Sorry, thank you very much.  Okay, you

20    may proceed.

21         **MR. FRENTZEN:**  Thank you, Your Honor, I appreciate that.

22         There's already been some discussion here today about a

23    couple of companies, Hewlett-Packard and Autonomy.  This is a

24    criminal case; it is not a civil case.

25         As the Court indicated before, Hewlett-Packard is not a

1    party to this case.  But, does anybody have issues with respect

2    to either Hewlett-Packard or Autonomy, other than the ones we

3    have already discussed earlier today, that would cause you

4    concerns about sitting on this particular case?

5       (A hand is raised)

6    **MR. FRENTZEN:**  Yes, sir.  And I think we already addressed

7    that.  Did you have anything more to add?  I'm sorry, could you

8    just tell us your number, please.

9    **PROSPECTIVE JUROR DOVERALBA:**  65.

10   **MR. FRENTZEN:**  And your name, sir?

11   **PROSPECTIVE JUROR DOVERALBA:**  Dan Doveralba.

12   **MR. FRENTZEN:**  Thank you, sir.  Yes.  We got one more.

13   **THE COURT:**  What is your name?

14   **PROSPECTIVE JUROR KAUL:**  I'm Juror No. 10, Priya Kaul.  I

15   don't know if this is an issue, but just for full disclosure, my

16   firm represents HP in many firm matters, including people I

17   know.  So.

18   **THE COURT:**  Well, yes.  I mean, thank you for identifying

19   it.  Are you working or have you worked on any of the matters

20   involving Hewlett-Packard?

21   **PROSPECTIVE JUROR KAUL:**  Not directly, but I have spoken

22   with colleagues about it offhand.  But I'm not directly involved

23   in it.

24   **THE COURT:**  And when you say you have spoken with colleagues

25   about it, were there -- did you speak with the colleagues or

privy to conversations in dealing with this particular

transaction?

**PROSPECTIVE JUROR KAUL:**  No.

**THE COURT:**  Okay.  Thank you very much.

**MR. FRENTZEN:**  And -- oh, I'm sorry, we have got one more.

**PROSPECTIVE JUROR CRAIG:**  Kirsten Craig, No. 29.  I too have

spoken with colleagues regarding the Autonomy/HP acquisition.

**THE COURT:**  Thank you.

**MR. FRENTZEN:**  Thank you.  Okay, no one else?

(No response)

**MR. FRENTZEN:**  All right.  One of the issues that we expect

may arise in the course of this case -- and again this is not a

civil case, this is a criminal case, we represent the United

States government -- is the potential issue of corporate fraud,

that's the allegation, corporate fraud against, among other

folks, a corporation.  Hewlett-Packard.

And my question is really:  Does anyone have deep-seated

issues about corporations, about corporate America, that cause

you to think that this is not the type of case that you should

be a juror on, and this is not the kind of case in which you can

render a fair verdict to both sides?

(A hand is raised)

**THE COURT:**  Yes, sir.

**PROSPECTIVE JUROR WOEBCKE:**  Yeah, absolutely.

**THE COURT:**  Hang on.  Sorry, you have to wait for the

1    microphone.

2        And may I have your name?

3        **PROSPECTIVE JUROR WOEBCKE:**  Scott Woebcke.

4        Yeah, I think the fact that the government decided that

5    corporations are people is pretty pathetic, so naturally I'm

6    going to have a bias against corporations with a history of

7    being intertwined with the military industrial complex and

8    government.

9        **MR. FRENTZEN:**  Thank you, sir.

10        **THE CLERK:**  No. 36.

11        (A hand is raised)

12        **MR. FRENTZEN:**  Oh, yes, ma'am.

13        **PROSPECTIVE JUROR DRAKE:**  I find this difficult to speak

14    about.

15        **THE COURT:**  I need to have your name.

16        **PROSPECTIVE JUROR DRAKE:**  I'm 85, Marjorie Drake.

17        **MR. FRENTZEN:**  Thank you.

18        **PROSPECTIVE JUROR DRAKE:**  Anyway, I was arrested in San Jose

19    during the Vietnam war.  And at this particular demonstration,

20    it was a demonstration against, I would say, corporate America,

21    Dow Chemical and whatever.

22        And my charges were originally felony charges and they were

23    dropped to misdemeanor.  And I think got probation.  But one of

24    our fellow demonstrators was convicted of felony assault and got

25    six months to life.  And I spent two years visiting him.

1    And, um, I didn't think that the -- well, I would say that

2    the criminal justice system was far from unbiased.  And, um, I

3    still feel that today.  Anyway.  And so to be quite honest, I

4    mean, I can judge facts.  But I definitely have a deep-seated,

5    um, bias against corporate America.

6        **MR. FRENTZEN:**  And just, if I could follow up -- I'm

7    sorry -- briefly, that's something that makes you think this is

8    not the right case for you to sit on?

9        **PROSPECTIVE JUROR DRAKE:**  Um, I -- I'm definitely against --

10   if someone -- I think I could judge facts.  And I would love to

11   see a corporate America who's been -- people who have been

12   fraudulent, I think they need to -- you know, I think I could be

13   a fair judger of facts.

14       But, I'm not sure that -- well, I don't know.  Yeah.  I

15   think I could be fair in judging somebody, but -- anyway.

16       **MR. FRENTZEN:**  Okay.  All right.  Thank you, ma'am.  I

17   appreciate that.

18       All right.  Anyone else where they view that as an issue?

19       (No response)

20       **MR. FRENTZEN:**  I would say animosity towards corporate

21   America in terms of sitting as a juror on this case?

22       (No response)

23       **MR. FRENTZEN:**  There is -- as we indicated, this is a

24   criminal case brought by the government.  We've got to prove our

25   case beyond a reasonable doubt.  There is one defendant on trial

1    here.  Mr. Hussain.  Mr. Hussain is entitled to an

2    individualized decision.

3        In other words, we have got to prove our case against

4    Mr. Hussain, or not.  But this is a case against Mr. Hussain.

5    Other individuals -- what may or may not have happened to other

6    individuals who do not show up in court and testify would

7    largely be what we would refer to as "speculation."

8        Is everybody okay with the notion that this is a case with

9    one defendant, and the only -- the question is whether the

10   government proves its case against that defendant or not?

11   Anyone have any issues or problems with that?

12       (No response)

13       **MR. FRENTZEN:**  Great.  Oh.

14       (A hand is raised)

15       **MR. FRENTZEN:**  Oh, I'm sorry.  We have got a hand in the

16   front row.

17       **PROSPECTIVE JUROR CRAIG:**  Kirsten Craig, 29.  Given my

18   experiences with witnessing acquisitions, it is not always just

19   one person.  There's more people involved in this.

20       **MR. FRENTZEN:**  Well, that may or may not be true.  But the

21   issue here is just -- the only question that this jury will be

22   presented with is:  Has the government proved its case against

23   Mr. Hussain.  And that's it.

24       Great.  Okay.  Thanks.

25       I would also just like to ask, as kind of a catchall, I know

1    that there's a lot of questions on that questionnaire.  I don't

2    want to rehash things that folks have already talked about.  At

3    the end of the day, both sides are just looking for a fair trial

4    with a jury that can listen to the facts, apply it to the law

5    that the Court gives you, and decide whether or not the

6    government has proved its case.

7        Is there anything about yourself that was not brought up on

8    the questionnaire or that we didn't already talk about, here in

9    court, which should cause either side, the government or the

10    defendant, any concern about you serving as a juror on this

11    case?

12        (A hand is raised)

13    **MR. FRENTZEN:**  In other words, have we just not touched on

14    something that you think would be a problem?

15        Yes, sir.

16    **PROSPECTIVE JUROR HIGGINS:**  I would like to apologize for

17    not making it clear during the reading of those questions.

18    **THE COURT:**  Mr. Higgins.

19    **PROSPECTIVE JUROR HIGGINS:**  Terrence Higgins, No. 5.

20    **MR. FRENTZEN:**  Thank you, sir.

21    **PROSPECTIVE JUROR HIGGINS:**  Serving on this trial would be

22    an unmitigated disaster for my private practice.  I would be

23    able to receive no new referrals.  I would have to transfer

24    virtually my entire caseload to other practitioners.  And it

25    would take me two months to rebuild it.  I would essentially be

1    out of income for four months.

2        And it wouldn't affect my impartiality, because by principle

3    I could still be fair to both sides.  But I don't think I was

4    clear in saying that this is not the best time in my life to be

5    using four to five to six to eight weeks serving my society.

6        **MR. FRENTZEN:**  Mr. Higgins, I appreciate you reiterating it.

7    I thought your questionnaire was pretty clear.  But thank you,

8    sir; I appreciate that.

9        **PROSPECTIVE JUROR HIGGINS:**  Thank you.

10       **MR. FRENTZEN:**  I would like to ask a couple of questions of

11   a couple of individual jurors.

12       May I have one moment, Your Honor?

13       **THE COURT:**  Sure.

14       (Off-the-Record discussion between counsel)

15       **MR. FRENTZEN:**  If we could get Juror No. 53, Ms. Combs,

16   Ms. Combs.  I'm sorry, C-O-M-B-S.

17       Hi, Ms. Combs.

18       **PROSPECTIVE JUROR A.C. COMBS:**  Hi.

19       **MR. FRENTZEN:**  Sorry to call you out.  I just want to

20   clarify a couple of things that were on your questionnaire, if

21   that's all right with you.

22       **PROSPECTIVE JUROR L.A. COMBS:**  Sure.

23       **MR. FRENTZEN:**  There's some commentary about capitalism,

24   corporate America, and I guess the system in general.  I know

25   and I appreciate before you said you could be fair to both

```
 1    sides.  I hear you.  I just want to make sure that what's on
 2    your questionnaire, are you still in the same place?
 3        In other words, do you have concerns about serving on this
 4    jury, given the views that you have?
 5        PROSPECTIVE JUROR A.C. COMBS:  Um, I would say, um, I have
 6    dislike for both sides.  So I think I can be fair because I
 7    feel, you know, kind of badly about both.  But I -- I think I
 8    can still be fair, even though I have those views.
 9        MR. FRENTZEN:  Okay.  So in other words, if the government
10    proves its case, you are not going to have a problem coming back
11    with a guilty verdict.
12        PROSPECTIVE JUROR A.C. COMBS:  No.
13        MR. FRENTZEN:  And if we don't prove our case, you don't
14    have a problem coming back with a not-guilty verdict.
15        PROSPECTIVE JUROR A.C. COMBS:  No.
16        THE COURT:  And you understand in this case, the argument
17    is, as I understand it to be, that a victim in the case is a
18    corporation.
19        PROSPECTIVE JUROR A.C. COMBS:  Uh-huh.
20        THE COURT:  That a corporation was injured.  Okay.  That's
21    an argument.
22        So the question is:  Well, looking at that, if that's the
23    case, I feel they ought to be -- corporations ought to be
24    treated differently, or I'm not so concerned, or I wouldn't vote
25    one way or the other.  You know, I wouldn't vote guilty because
```

1    it's a corporation.

2        Do you understand what I'm saying?  And we need to know

3    whether that's your state of mind or whether you would simply

4    say:  Well, let's see what the evidence is.  If the evidence

5    shows that the defendant did X, I would -- and that's a

6    violation of the law, I would convict him.  If the evidence

7    shows he didn't do X, then I wouldn't convict him.

8        Do you understand my question?

9        **PROSPECTIVE JUROR A.C. COMBS:**  Yeah.  I think I would want

10    to see the evidence and decide.

11        **THE COURT:**  Okay, so you could decide based solely on the

12    evidence, not based upon some feelings you have about

13    corporations.

14        **PROSPECTIVE JUROR A.C. COMBS:**  I think so.

15        **THE COURT:**  Okay.  Thank you very much.

16        **MR. FRENTZEN:**  Okay, thank you.  And if we could just go

17    briefly to Juror No. 76.  Mr. Hernandez Soto, I have a similar

18    question for you.

19        Just, you had expressed some concerns in your questionnaire

20    about sort of the system as a whole that -- and I just want to

21    make sure, I heard you also say you can be fair to both sides.

22        **PROSPECTIVE JUROR HERNANDEZ SOTO:**  Uh-huh.

23        **MR. FRENTZEN:**  Do you still feel the same way or do you have

24    any lingering concerns about your beliefs causing any kind of

25    problem being a juror in this particular kind of case?

1    **PROSPECTIVE JUROR HERNANDEZ SOTO:**  I think for this

2    particular case, I would be fair to both sides.

3    **MR. FRENTZEN:**  Great.  Thank you, sir.  I appreciate that.

4    May I have one moment with my co-counsel, Your Honor?

5    (Off-the-Record discussion between counsel)

6    **MR. FRENTZEN:**  That's all I have.  Thank you, Your Honor.

7    Thank you, everybody.  Appreciate it.

8    **MR. KEKER:**  Good afternoon, ladies and gentlemen.  This is

9    afternoon.

10    And as and as I introduced myself before, I'm John Keker.

11    And my law partner Jan Little and my law partner Brook Dooley

12    are representing Sushovan Hussain.

13    Mr. Hussain left Bangladesh with his family at eight years

14    old, the evidence will show, came to England, and is now an

15    English citizen and lives near London.

16    I have some general questions based on my colleague's --

17    esteemed colleague's questions to you.

18    They read you a statement of the case, and they talked about

19    corporate fraud and so on.  Is there anybody here that thinks

20    that corporate fraud occurred, or somehow has been proved or is

21    what this case is about?

22    (A hand is raised)

23    **MR. KEKER:**  Yes, ma'am.  Okay.

24    (A hand is raised)

25    **MR. KEKER:**  You've talked and sort of told us what you think

about it.  Sir, can you -- you are -- shoot.  Juror Number --
I'm sorry, what is it?  What is your number, or what is your
name?

**PROSPECTIVE JUROR ROWLAND:**  Are you talking to me?

**MR. KEKER:**  Yeah.

**PROSPECTIVE JUROR ROWLAND:**  No. 28, Craig Rowland.

**MR. KEKER:**  Okay, Mr. Rowland.

**PROSPECTIVE JUROR ROWLAND:**  I thought the question was had I
heard that this was about corporate fraud.  Yes, I have.

**MR. KEKER:**  You heard that because that was read to you
about what the government is alleging against Mr. Hussain.

Does anybody think that corporate fraud actually occurred?
That's my question.  You haven't heard an inch of evidence.

Do you have an open -- well, I guess another way to put it
is, is your mind open to the possibility or the fact or the
proof that corporate fraud didn't occur?

**PROSPECTIVE JUROR ROWLAND:**  That it did not occur.

**MR. KEKER:**  Right.

**PROSPECTIVE JUROR ROWLAND:**  Sure, yeah.  I have another bias
which I would address in private.

**MR. KEKER:**  Okay.  All right.  I'm not sure that's going to
be necessary.  But, okay.

Is there anyone --

**THE COURT:**  I think, Mr. Keker, there was a hand raised on
the other side.

1          (A hand is raised)

2       **MR. KEKER:**  I saw him, and I don't think that's necessary

3    either, Your Honor.

4       **THE COURT:**  Okay, all right.  Okay.

5       **MR. KEKER:**  Some of you, if you raise your hand and I don't

6    ask questions of you, it's because I don't think I need to.  I

7    mean, you know, sort of, yet.  Because some of you have made

8    your feelings pretty clear in the questionnaires and the

9    questioning, and we appreciate that, and we're ready to act on

10   it.

11      Just one second.  Excuse me.

12      Is there anybody sitting here that thinks that the

13   government wouldn't bring this case unless Mr. Hussain was

14   guilty?  If you think that, you need to tells us.

15      **PROSPECTIVE JUROR ROWLAND:**  That's a tough one.

16      **MR. KEKER:**  Pardon?

17      **PROSPECTIVE JUROR ROWLAND:**  I said generally, where there is

18   smoke, there's fire.

19      **MR. KEKER:**  Okay.

20      **THE COURT:**  This is Mr. Rowland.

21      **PROSPECTIVE JUROR ROWLAND:**  No. 29.

22      **MR. KEKER:**  How many jurors think that where there's smoke

23   there's fire?

24          (Hands are raised)

25      **MR. KEKER:**  Come on, most people think that where there's

```
 1   smoke, there's fire.  Put your hand up if that's what you think.
 2   At least let us know.
 3       MR. FRENTZEN:  Is the question literal?  Smoke --
 4       (Mr. Frentzen raises his hand)
 5       MR. KEKER:  Well, actually the question is literal, and
 6   there are times that there's smoke and no fire.  Does anybody
 7   recognize that?
 8       UNIDENTIFIED WOMAN:  Yes.
 9       MR. KEKER:  So if the government thinks there is smoke and
10   what they are trying to prove is fire they can't prove it by
11   just smoke.  Is there anybody that disagrees with that.
12       MR. KEKER:  Is there anybody that is not willing to put the
13   government to the burden which the law gives them, and which
14   they have just accepted in these questions, which is they have
15   to prove what they are trying to prove beyond a reasonable
16   doubt?
17       Anybody have a problem with that?
18       (No response)
19       PROSPECTIVE JUROR WOEBCKE:  Yeah.
20       MR. KEKER:  Mister -- okay, you're another one that I don't
21   even think we need to hear from, sir.  I think we've got you
22   covered.
23       PROSPECTIVE JUROR WOEBCKE:  Thank you very much.
24       MR. KEKER:  All right, thank you.  I'm just trying to move
25   this along.
```

1    We've heard, and I have already told you, that Mr. Hussain

2    lives in England.  The evidence is going to show that he was the

3    equivalent of a CPA in this company, operating under English

4    accounting rules, being audited by an English accounting firm,

5    Deloitte and Touche, but applying English rules.

6    Is there anybody here that is going to hold -- and I think

7    the evidence is going to show those are the rules he had to play

8    by, English rules, not U.S. rules.  Anybody here going to be

9    prejudiced by that or think that he should be judged by some

10   different set of rules than the English rules that he lived

11   with?

12   (No response)

13   **MR. KEKER:**  The evidence is going to show that

14   Hewlett-Packard bought the company that he was the CFO of in a

15   merger under English takeover law rules, which are different

16   from the United States, the evidence will show.

17   Anybody have a problem of applying English takeover rules

18   when thinking about this merger?

19   (No response)

20   **MR. KEKER:**  And then a couple of final questions.  And I

21   don't want to insult anybody, but we need to know.

22   I think you were instructed when you first filled out the

23   questionnaire, that it's important in this case to take the

24   evidence from the witness chair, from the documents.  From the

25   courtroom, in other words, and not from social media, Google

```
 1   searches and so on.

 2        Is there anybody that has done that sort of outside-of-court

 3   research on this case since you first heard about it?

 4        (No response)

 5        MR. KEKER:  Is there anyone here that thinks:  I have seen

 6   so many people going around -- a lot of people can't even cross

 7   the street without an iPhone in front of their face.  Is there

 8   anybody here that thinks they're going to have trouble getting

 9   through the trial, long trial, without doing research or

10   searches or some of the -- using some of the tools that are

11   available to you on the social media, news media and so on?

12        (No response)

13        MR. KEKER:  So you -- okay.  Because that's a rule that is

14   going to be terribly important to follow.

15        I have some specific questions for specific jurors.  And I'm

16   going to start, I'm just going to go in order so nobody's going

17   to be surprised.

18        Could we give the microphone to Mr. Flournoy.  No. 1.

19        THE COURT:  No. 1.

20        MR. KEKER:  Mr. Flournoy, excuse me.  Your wife works at

21   Price Waterhouse Coopers?

22        PROSPECTIVE JUROR FLOURNOY:  Correct.

23        MR. KEKER:  How long has she been there?

24        PROSPECTIVE JUROR FLOURNOY:  Seventeen years.

25        MR. KEKER:  What does she do there?
```

1    **PROSPECTIVE JUROR FLOURNOY:**  She was in research -- learning

2  and development most recently, and then audits before that.

3    **MR. KEKER:**  Okay, Pricewaterhouse documents for sure, and

4  witnesses, maybe, will be involved in this case.  They'll be

5  talking about Pricewaterhouse.

6    Given the fact that your wife works for a witness in the

7  case, are you going to be able to be fair?

8    **PROSPECTIVE JUROR FLOURNOY:**  Yes.

9    **MR. KEKER:**  Okay.  You expressed some concern in your

10  questionnaire -- well, let me ask you another question.  A lot

11  of people made -- I don't know if it was a mistake or not, but

12  Question 33 in this questionnaire, you were going down checking

13  No, No, No.  And Question 33 said:

14          "The Court will instruct you on the laws and the

15          duties as jurors.  Will you be able to follow these

16          instructions even if you disagree with them?"

17    And you answered "No."  Was -- is that what you meant?  Or

18  was that a mistake?

19    **PROSPECTIVE JUROR FLOURNOY:**  I thought that the question had

20  a typo in it.

21    **MR. KEKER:**  Okay.

22    **PROSPECTIVE JUROR FLOURNOY:**  So I answered the question as

23  it was written, I thought.

24    **MR. KEKER:**  And I'm not trying -- a lot of people -- I'm

25  just trying to find out if you meant no, the Court will instruct

1   you on the laws, will you be able to follow these instructions

2   even if you disagree with them, what the answer that you meant

3   to give was what?

4     **PROSPECTIVE JUROR FLOURNOY:** It would be yes to that

5   question.

6     **MR. KEKER:** And there was a typo because it goes off and

7   says "If 'Yes,' please explain." That -- it should have been

8   "If 'No,' please explain."

9     So you didn't mean -- okay. Good.

10     **PROSPECTIVE JUROR FLOURNOY:** Correct.

11     **MR. KEKER:** And then finally, you said, I think -- you said

12   that you were a student teacher, and had five more observations

13   scheduled prior to the end of the school year, in order to

14   receive a degree as scheduled.

15     **PROSPECTIVE JUROR FLOURNOY:** That's correct.

16     **MR. KEKER:** Can you explain that to us and tell us what

17   problem that will present if you serve on this jury?

18     **PROSPECTIVE JUROR FLOURNOY:** It's possible that my

19   graduation would be pushed ahead. Based on not being able to

20   teach during the time frame where the observations are going to

21   be held by the university.

22     **MR. KEKER:** The only person that could answer this is you.

23   I mean, is this issue, possible conflict, something that would

24   keep you from being a fair juror?

25     **PROSPECTIVE JUROR FLOURNOY:** No.

1      **MR. KEKER:**  Okay.  Would you like to be on this jury?

2      **PROSPECTIVE JUROR FLOURNOY:**  (Shrugs shoulders) If the Court

3  decides.

4      **MR. KEKER:**  Okay.  Okay.  Thank you.

5      Ms. Morales.

6      **PROSPECTIVE JUROR MORALES:**  Yes.

7      **MR. KEKER:**  This is the time the lawyer can just make, like,

8  70 people he doesn't know mad, so I don't really want to do

9  that, but I need to ask you some questions about this.

10      Do you think you can be a fair juror in this case, given

11  some of the things you have said in this questionnaire?

12      **PROSPECTIVE JUROR MORALES:**  No.

13      **MR. KEKER:**  Okay.  Um, well, I'm going to stop right there.

14      And if I can go back, I mean, if there's any issue about it,

15  Your Honor -- I'm --

16      **THE COURT:**  Well, I think I need to explore that a bit.

17  Because you've answered, in a sense, you have answered the

18  question both ways.

19      You have now sat here for the morning, listened to a lot of

20  questions --

21      **PROSPECTIVE JUROR MORALES:**  (Nods head)

22      **THE COURT:**  -- I have asked, the parties have asked.  So --

23  and you were early on in the process.  But now you have heard

24  all sorts of responses.

25      So thinking about it now, knowing what the case is about,

1    knowing the parties as you now know them to be, the question is:

2    Do you think you can be fair to both sides?

3        Now, if you feel you can't, please let us know.  If you feel

4    you can, please let us know.

5        **PROSPECTIVE JUROR MORALES:**  I'm sorry, I take that back.  I

6    can be fair, but then I just -- that my mind won't be fully on

7    the case because I have -- I'm -- because of the financial and

8    the -- who will be taking care of my son.  During this time.

9        **THE COURT:**  Let me explore that, if I might, a little bit.

10   Now, we will be meeting four days a week.  You will be expected

11   to be here 9:00 to 4:00.  And the case will be over some time in

12   April.

13       Given those -- and some days it will be fewer days than four

14   during the week, but for the most part, four days a week.  I

15   don't think ever five.

16       Okay.  Now, given that, would you be able -- from a

17   financial point of view, would you be able to participate on the

18   jury?

19       **PROSPECTIVE JUROR MORALES:**  No, I wouldn't.

20       **THE COURT:**  Okay.  Thank you.

21       **PROSPECTIVE JUROR MORALES:**  Okay.

22       **MR. KEKER:**  And there's some other questions that I could

23   pursue, but --

24       **THE COURT:**  Well, no, that satisfies me.

25       **MR. KEKER:**  Okay.  All right, thank you very much,

1    Ms. Morales.

2        Mister -- and I'm going to butcher this, Mr. Sayborivong.

3        **PROSPECTIVE JUROR SAYBORIVONG:**  Sayborivong.

4        **MR. KEKER:**  Born in Laos.  Again, Question 33, sort of a

5    trick question.  You said yes, you can follow the instructions

6    and then you said "Court instructions are rules and I have no

7    problem following them."

8        So you are a person who, once you understand the rules, you

9    follow them.

10        **PROSPECTIVE JUROR SAYBORIVONG:**  Yes.

11        **MR. KEKER:**  And you think other people should do that?

12        **PROSPECTIVE JUROR SAYBORIVONG:**  I think so.

13        **MR. KEKER:**  Okay.  You expressed some issue earlier with

14    your comprehension of English?

15        **PROSPECTIVE JUROR SAYBORIVONG:**  Yes.

16        **MR. KEKER:**  There's going to be a bunch of business people

17    and accountants and engineers testifying.  No law enforcement.

18    But engineers and so on.

19        Do you think that their language will be something that you

20    can fully understand?

21        **PROSPECTIVE JUROR SAYBORIVONG:**  I don't think I fully

22    understand all of them.

23        **MR. KEKER:**  I'm sorry, I didn't understand what you just

24    said.  Say it again.

25        **PROSPECTIVE JUROR SAYBORIVONG:**  I say that I am not fully

1   understand every single, single word that they say.

2       **MR. KEKER:**  When Mr. Frentzen was talking, did you

3   understand all of his questions?

4       **PROSPECTIVE JUROR SAYBORIVONG:**  Most of them.

5       **MR. KEKER:**  Were there some that you didn't understand?

6       **PROSPECTIVE JUROR SAYBORIVONG:**  Oh, I forgot already.

7       **MR. KEKER:**  Okay.  Would you -- given your, your English as

8   a second language, would you be more comfortable not to be on

9   this jury, or would you be comfortable to be on the jury?  How

10  do you feel about it?

11      **PROSPECTIVE JUROR SAYBORIVONG:**  I feel more comfortable not

12  in this jury.

13      **MR. KEKER:**  Okay, if you were in Mr. Hussain's situation,

14  and wanted people to be able to understand the case, would you

15  think you would be the right juror for Mr. Hussain's case?

16      **PROSPECTIVE JUROR SAYBORIVONG:**  I don't quite understand

17  your question.

18      **MR. KEKER:**  Do you think you understand enough English, I

19  guess, to, to comprehend the entire eight-week trial, and give

20  Mr. Hussain and the government a fair trial?

21      **MR. FRENTZEN:**  (Inaudible)

22      **MR. KEKER:**  Sorry?

23      **PROSPECTIVE JUROR SAYBORIVONG:**  I'm going to try my best,

24  but I'm afraid I'm going to make mistake.

25      **MR. KEKER:**  All right.  Thank you very much, sir.

1    Mister -- Mr. Weiner, you are a building official in Portola

2  Valley?

3    **PROSPECTIVE JUROR WEINER:**  Yes, sir.

4    **MR. KEKER:**  And you were in the Air Force.

5    **PROSPECTIVE JUROR WEINER:**  Yes, sir.

6    **MR. KEKER:**  What were you doing in the Air Force?

7    **PROSPECTIVE JUROR WEINER:**  I was a hydraulic mechanic.

8    **MR. KEKER:**  You mentioned in the hardship question about

9  working for a small municipality.  Is that -- you are -- are you

10  going to be able to be covered if you are in trial?

11    **PROSPECTIVE JUROR WEINER:**  They will hire a contractor.

12    **MR. KEKER:**  Your brother had some problems.

13    **PROSPECTIVE JUROR WEINER:**  That's true.

14    **MR. KEKER:**  How long ago was that?

15    **PROSPECTIVE JUROR WEINER:**  That was 1984.

16    **MR. KEKER:**  A long time ago.

17    **PROSPECTIVE JUROR WEINER:**  Yes, sir.

18    **MR. KEKER:**  Are you close to your brother?

19    **PROSPECTIVE JUROR WEINER:**  Not particularly.  We go fishing

20  once a year.

21    **MR. KEKER:**  Okay, that's close.  Anything about your

22  brother's experience that would affect your feelings about a

23  criminal trial?

24    **PROSPECTIVE JUROR WEINER:**  Um, it was a proper verdict, I'm

25  sad to say.

1        **MR. KEKER:**  Okay.  So, I stick with my question.

2        **PROSPECTIVE JUROR WEINER:**  He broke the law.  He got busted.

3        **MR. KEKER:**  And is there anything about that experience that

4    your brother had, that your family had, that would make you a

5    better or worse juror in this case, for one side or the other?

6        **PROSPECTIVE JUROR WEINER:**  No, I think that -- I think the

7    justice system worked.

8        **MR. KEKER:**  All right.  Thank you.

9        All right, I'm skipping a few, so -- Ms. Jameson, you can

10    smile.  I'm skipping.  I'm coming over here.

11        Ms. Kaul.  You, Ms. Kaul, you worked as a lawyer at Gibson

12    Dunn & Crutcher.  Fine law firm.  Right?

13        **PROSPECTIVE JUROR KAUL:**  Yes.

14        **MR. KEKER:**  And you know that Gibson Dunn & Crutcher

15    represents Hewlett-Packard in this case, suing Autonomy, suing

16    Mr. Lynch -- Dr. Lynch and Mr. Hussain, right?

17        **PROSPECTIVE JUROR KAUL:**  I was not aware of that.

18        **MR. KEKER:**  You saw Mr. Wong, Michael Wong is a partner in

19    the Gibson Dunn & Crutcher office?

20        **PROSPECTIVE JUROR KAUL:**  Yes.

21        **MR. KEKER:**  And Mr. Wong has been working with the

22    government to try and help them as much as he can in the case,

23    you knew that?

24        **MR. FRENTZEN:**  Objection.

25        **THE COURT:**  Yeah.

1        **MR. FRENTZEN:**  That characterization.

2        **THE COURT:**  Well, first question is:  Do you know -- the

3   jury should disregard it.

4        Do you know Mr. Wong?

5        **PROSPECTIVE JUROR KAUL:**  I do.

6        **THE COURT:**  And do you know what his role has been in

7   connection with this matter?

8        **PROSPECTIVE JUROR KAUL:**  I do not.

9        **THE COURT:**  Okay.  How do you relate to Mr. Wong?  That is,

10  does he give you cases, or do you consult with him?

11       What's your --

12       **PROSPECTIVE JUROR KAUL:**  He's a partner in the office that I

13  work in.  We haven't worked together in the past, but we know

14  each other.

15       **THE COURT:**  Okay.

16       **MR. KEKER:**  And you saw him here today.

17       **PROSPECTIVE JUROR KAUL:**  I did.

18       **MR. KEKER:**  Watching the jury selection.

19       **PROSPECTIVE JUROR KAUL:**  Yes, sir.

20       **MR. KEKER:**  Did you know why he was here?

21       **PROSPECTIVE JUROR KAUL:**  I suspected it had to do with

22  HP-related matters, but I did not know.

23       **MR. KEKER:**  You talked to him, didn't you?

24       **PROSPECTIVE JUROR KAUL:**  We said "Hello, how are you."

25       **THE COURT:**  I think, I think I have enough information on

 1    that.  Thank you.

 2         **MR. KEKER:**  All right.  Thank you, Your Honor.

 3         Mr. Hall.  You mentioned, during Mr. Frentzen's questioning,

 4    something about law enforcement testimony and your concern about

 5    that.

 6         There will be no law enforcement testimony that I know of in

 7    this long trial.  There won't be an FBI agent or a --

 8         **MR. FRENTZEN:**  That's not accurate, Your Honor.

 9         **THE COURT:**  There may be.  We'll see.  There may be law

10    enforcement.

11         **MR. KEKER:**  Okay.  We have been given an exhibit list --

12         **THE COURT:**  Well, whatever.  Let's just -- let's just move

13    on and ask him whether --

14         **MR. KEKER:**  Okay.

15         **THE COURT:**  -- that presents an issue.  Okay?

16         **MR. KEKER:**  Okay.  I'm just -- I'll just move on.

17         **THE COURT:**  Okay.

18         **MR. KEKER:**  Mr. Yencer, Mr. Yencer, you said in your

19    questionnaire that you would get paid for some period but not

20    all of the jury duty.

21         **PROSPECTIVE JUROR YENCER:**  Correct.  For four weeks.

22         **MR. KEKER:**  Is that going to present a problem with you

23    serving as a juror who can concentrate and listen to the

24    evidence and make a fair decision and not be distracted?

25         **PROSPECTIVE JUROR YENCER:**  I think I would be slightly

1    distracted.

2        **MR. KEKER:**  Well, okay.  You need -- again --

3        **PROSPECTIVE JUROR YENCER:**  But I think I can definitely be

4    fair, if I were selected, but it would definitely be a --

5        **THE COURT:**  The payment, is it, like, do they say to you,

6    you have 20 days off?

7        **PROSPECTIVE JUROR YENCER:**  Four weeks or 28 days.

8        **THE COURT:**  You get 28 days off.

9        **PROSPECTIVE JUROR YENCER:**  Uh-huh.

10       **THE COURT:**  So in other words, if we only do four days a

11   week, that's four days charged against the 28.

12       **PROSPECTIVE JUROR YENCER:**  I believe so, to the best of my

13   knowledge.

14       **THE COURT:**  Okay, that's fine.

15       **MR. KEKER:**  Looks like seven weeks you would have, seven

16   weeks.

17       **THE COURT:**  I would anticipate --

18       **MR. KEKER:**  I got it.

19       **THE COURT:**  -- that the jury payment would cover that period

20   of time, but I can't make any promises at this time.

21       **MR. KEKER:**  Or at least, close.  Ms. Mei.

22       **PROSPECTIVE JUROR MEI:**  Yes.

23       **MR. KEKER:**  And again, and Question 33, this kind of trick,

24   everybody saying no, and then they kept saying no, and no was

25   the wrong answer.

1    You said -- the Court:  Will you be able to follow these

2    instructions, even if you disagree with them?

3    And you said no.  Is that what you meant?

4    **PROSPECTIVE JUROR MEI:**  Yes.  Actually, English is my second

5    language.  So for that question I'm not really understand very

6    well.

7    **MR. KEKER:**  Okay.

8    **PROSPECTIVE JUROR MEI:**  Yeah.

9    **MR. KEKER:**  Same questions for Mister -- I won't try it

10    again, the man from Laos.  The same question for you.

11    Is your English such that you think you would not be a fair

12    juror for Mr. Hussain and the government, who want jurors who

13    can understand everything that happens in this courtroom?

14    **PROSPECTIVE JUROR MEI:**  Telling the truth, I think it's not

15    fair for him because I'm not 100 percent understand.

16    **MR. KEKER:**  Okay.

17    **THE COURT:**  Is there anything that I have said to you that

18    you have not understood?

19    **PROSPECTIVE JUROR MEI:**  So far, it's okay.

20    **THE COURT:**  So far, so good.  What about Mr. Frentzen?  Have

21    you understood his questions?

22    **PROSPECTIVE JUROR MEI:**  Most of them.

23    **THE COURT:**  Well, that's good.  Okay.  And what about

24    Mr. Keker?  Have you understood his questions?  About the same?

25    **PROSPECTIVE JUROR MEI:**  Sometimes.

1      **THE COURT:** Sometimes. Not quite as good as Mr. Frentzen.

2  Okay. Well, we'll just have to -- we'll be working on that.

3      **MR. KEKER:** I was about to say that's not always a test of

4  English.

5      **PROSPECTIVE JUROR MEI:** Sorry about that.

6      **MR. KEKER:** Don't be.

7  Okay. Mr. Knowlton. Right here.

8      **PROSPECTIVE JUROR KNOWLTON:** Right here.

9      **MR. KEKER:** She's going to get you the mic.

10      **PROSPECTIVE JUROR KNOWLTON:** Yeah.

11      **MR. KEKER:** Mr. Knowlton, you talked about this four-hour

12  commute from Sebastopol. You have a number of colleagues here,

13  take a van pool or something with you.

14  But you said: I have two kids at home that I care for most

15  every day after work. I also see an athletic department; it's a

16  four-hour commute each way.

17  What is the answer? Can you be a fair juror in this case,

18  given the transportation and the other issues that you have to

19  deal with?

20      **PROSPECTIVE JUROR KNOWLTON:** I think I could.

21      **MR. KEKER:** Do you want to?

22      **PROSPECTIVE JUROR KNOWLTON:** Yes.

23      **MR. KEKER:** Okay. Why do you want to?

24      **PROSPECTIVE JUROR KNOWLTON:** I think this is fascinating,

25  just being in here and seeing it --

1      **THE COURT:**  Yeah, I told you all that these lawyers are so

2   good, that even though the case is -- involves accounting and

3   not really, you know, day-to-day street issues, it's going to be

4   fabulous.  It's just going to be fabulous.  The experience is

5   going to be unforgettable.  Unforgettable.

6      **MR. FRENTZEN:**  Hard to live up to, Your Honor.

7      **MR. KEKER:**  We are going to skip a little bit and go all the

8   way up to Mr. Schumann.  Mr. Schumann.

9      **PROSPECTIVE JUROR SCHUMANN:**  Schumann.

10      **MR. KEKER:**  Mr. Schumann, you also were one of those

11   Question 33 -- you -- the Question 33 people that said can you

12   follow the instructions, and you said no.

13      **PROSPECTIVE JUROR SCHUMANN:**  No, I can follow the

14   instructions.  Like you said, that was a trick question.

15      **MR. KEKER:**  That's really, you meant to say yes.

16      **PROSPECTIVE JUROR SCHUMANN:**  Yes.

17      **MR. KEKER:**  Okay.  The Sebastopol commute not a problem?

18      **PROSPECTIVE JUROR SCHUMANN:**  Not at all.  I did it for nine

19   years once, and then another seven after that, so yeah, I can

20   make the commute.

21      **MR. KEKER:**  You said on your questionnaire that you were --

22   had taken some courses in criminal law and introduction to law

23   enforcement.

24      **PROSPECTIVE JUROR SCHUMANN:**  Yeah.

25      **MR. KEKER:**  How long ago was that?

1    **PROSPECTIVE JUROR SCHUMANN:**  Oh, that was way back in 1970.

2    **MR. KEKER:**  What were your reasons?

3    **PROSPECTIVE JUROR SCHUMANN:**  I was going to become a police

4    officer but I tore up my ankle so I had to switch majors.

5    **MR. KEKER:**  Do you have any other -- any experience with the

6    criminal justice system?

7    **PROSPECTIVE JUROR SCHUMANN:**  No.

8    **MR. KEKER:**  All right.  Thank you.

9    Ms. Floresjovel.  Am I pronouncing it right?

10   **PROSPECTIVE JUROR FLORESJOVEL:**  "Jovel," that was close.

11   **MR. KEKER:**  Close.  You said, you were an accountant, and

12   you work with Ernst & Young.

13   **PROSPECTIVE JUROR FLORESJOVEL:**  They are the firm that come

14   out to our biotech office every three months to do the external

15   audit.

16   **MR. KEKER:**  And, Ernst & Young auditors who were working for

17   Hewlett-Packard will or may testify in this case.

18   Do you -- will you be able to listen to their testimony in

19   an unbiased manner or --

20   **PROSPECTIVE JUROR FLORESJOVEL:**  Absolutely, yes.

21   **MR. KEKER:**  What do you think about Ernst & Young?

22   **PROSPECTIVE JUROR FLORESJOVEL:**  They are really good at what

23   they do.  And they are very picky.  And when they come out and

24   do our external audit, they are very thorough.

25   **MR. KEKER:**  Have you worked with other auditing firms?

1    **PROSPECTIVE JUROR FLORESJOVEL:**  Not directly.  They are the

2    ones that come and sit next to me every three months, and we

3    work together.

4        **MR. KEKER:**  Have you ever worked with Deloitte?

5        **PROSPECTIVE JUROR FLORESJOVEL:**  No.  Although our -- our

6    office does, but not myself, directly, no.

7        **MR. KEKER:**  All right.  Do you have any opinions about

8    Deloitte?

9        **PROSPECTIVE JUROR FLORESJOVEL:**  No.

10       **MR. KEKER:**  You said you carpool five children to and from

11   school Monday through Friday, three families will be affected,

12   and so on.

13       Tell us how that's going to affect your ability to be a

14   juror.

15       **PROSPECTIVE JUROR FLORESJOVEL:**  Yes.  It would cause some

16   issues to the other families that do not have transportation for

17   their children.  But because of the fires and the school that my

18   daughter goes to was lost, they are at a different location

19   which is closer to our home.  And some of the other parents have

20   agreed to help, if need be.

21       **MR. KEKER:**  That's great.  People around those fires have

22   been helping each other.  So this is taken care of, as far as

23   you are concerned.

24       **PROSPECTIVE JUROR FLORESJOVEL:**  Not quite there yet, but if

25   I was chosen, then yes, I will move on to make it happen.

1    **MR. KEKER:**  Would you like to be on this jury?

2    **PROSPECTIVE JUROR FLORESJOVEL:**  Yes.

3    **MR. KEKER:**  Okay.  Why?

4    **PROSPECTIVE JUROR FLORESJOVEL:**  Sounds fascinating, so far.

5    **MR. KEKER:**  All right.  Good.

6    Mr. Poopat --

7    **PROSPECTIVE JUROR POOPAT:**  Hi.  I'm Ms --

8    **MR. KEKER:**  Ms., I'm sorry, I beg your pardon, Ms. Poopat.

9    Very sorry.

10    You said in your questionnaire in response to the question

11    about following instructions and so on, you said you will "do my

12    best," but you are not sure.  Right?

13    **PROSPECTIVE JUROR POOPAT:**  Yes.

14    **MR. KEKER:**  What did you mean by that?

15    **PROSPECTIVE JUROR POOPAT:**  So I have my own opinion, too.

16    **MR. KEKER:**  You have some biases that -- against certain

17    races that you were worried about?

18    **PROSPECTIVE JUROR POOPAT:**  Yeah, to be honest with you.

19    **MR. KEKER:**  Yeah, no, I mean that's what we are doing here

20    is being honest.  But, do you have a bias against people from

21    Bangladesh or brown people?  Or who do you have a bias against?

22    **PROSPECTIVE JUROR POOPAT:**  Do I have to tell you?

23    **MR. KEKER:**  Okay, no, you don't have to tell me.  I mean --

24    do you think that bias is going to -- would make you a fair

25    juror?

1    **PROSPECTIVE JUROR POOPAT:**  To be honest with you, no.

2    **MR. KEKER:**  Okay.  And you -- you are one of -- you kept

3    talking in your questionnaire about fraudulent activities and so

4    on.

5        Do you think some fraudulent activities have been proved?

6    **PROSPECTIVE JUROR POOPAT:**  Yes.

7    **MR. KEKER:**  Yes?  The mere fact that he's here, you think

8    shows that there were fraudulent activities?

9    **PROSPECTIVE JUROR POOPAT:**  No.  Not in his case.  But at my

10   work.  I work in the bank.  There's a lot of fraudulent

11   activities.  So when I hear the word "fraudulent," I don't like

12   it.

13   **MR. KEKER:**  Okay.  Well, only you can tell us.  Do you have

14   biases -- which you have been very honest about.  Maybe you had

15   better tell us, who are you biased against?

16       Are you biased against --

17   **PROSPECTIVE JUROR POOPAT:**  Not him particularly, but I can

18   be biased toward some races.

19   **MR. KEKER:**  You're -- you have a bias against certain races.

20   **PROSPECTIVE JUROR POOPAT:**  I'm afraid.  Let's put it that

21   way.

22   **MR. KEKER:**  Okay.

23   **THE COURT:**  Well, I'm trying to figure out -- we all

24   appreciate your honesty.  I'm trying to figure out, the

25   defendant is from Bangladesh, and he is also a citizen of the

1    United Kingdom.

2        Given those two things, do you have any bias towards people

3    from Bangladesh or from people from the United Kingdom?

4        **PROSPECTIVE JUROR POOPAT:**  No.

5        **MR. KEKER:**  When you say that you will do your best, you

6    cannot say that you will be fair.  You say you will do your best

7    to be fair.  Right?

8        **PROSPECTIVE JUROR POOPAT:**  Yes.

9        **MR. KEKER:**  So why can't you say -- just explain this, why

10   can't you say you can be fair?

11       **PROSPECTIVE JUROR POOPAT:**  It depends on the context and

12   everything, the evidence I'm going to hear.  And I'm not sure I

13   can be 100 percent impartial.

14       **MR. KEKER:**  And which way would your impartiality go?  Is

15   this something the government ought to worry about or something

16   we ought to worry about?

17       **PROSPECTIVE JUROR POOPAT:**  Either one, you know.  I can go

18   against either one, I can go --

19       **THE COURT:**  Ultimately -- maybe I can jump in here.

20       Ultimately when you hear evidence in a case, or the lack of

21   evidence in a case, you will be influenced by it.  As a matter

22   of fact, that's exactly what we're talking about what the jury

23   does.  They listen to evidence, and it influences their

24   decision.

25       So at the end of the case, after you've heard all of the

evidence and the law, you have to make up your mind.  And you

are going to favor one side or the other.  That's not called

partiality.  That's not called unfairness.  That's simply called

listening to all the evidence and making up your mind.

Now there are some people who say:  Well, you know, I don't

care what the evidence is, I'm going to rule one way or I'm

going to rule the other way.  Because I can do that.

If that's the way you feel, we need to know that.  Is that

the way you feel?  That you think that you might rule one way or

the other, outside of what the evidence is?

**PROSPECTIVE JUROR POOPAT:**  No.  I'm going to listen to the

evidence and make decision.

**THE COURT:**  And also, you mentioned the fact that there is

an allegation here, you heard some discussion about fraudulent

activity.  And that is of concern to you.  And it's been my

experience, in being a judge, that charges, themselves, number

one, do talk about behavior that is upsetting.  But they're just

charges.  That is to say, they're not evidence of the -- of the

activity.

So you could be against fraud or you could be against

robberies or you could be against any number of things.  That's

okay.  You can serve as a juror.  But, you have to realize that

there are -- they are just allegations.  And it's the obligation

of the government to prove whether those allegations are true.

Now, can you follow that?

1       **PROSPECTIVE JUROR POOPAT:**  Yes.

2       **THE COURT:**  Okay.  Thank you.

3       **MR. KEKER:**  Mr. Middleton.

4       **PROSPECTIVE JUROR MIDDLETON:**  Yes.

5       **MR. KEKER:**  Thank you, Ms. Poopat.

6       Mr. Middleton, you were another one of the Sebastopol folks.

7  Any problem with the commute?

8       **PROSPECTIVE JUROR MIDDLETON:**  Did it for seven years, and

9  calculated it wasn't really financially worth the time.  But I

10  will do what is asked of me.

11       **MR. KEKER:**  I think they pay you $30 a day to come here.

12       **PROSPECTIVE JUROR MIDDLETON:**  That's ten minutes of my time.

13       **THE COURT:**  I think it's been raised, actually; I think it

14  is now 40.

15       **MR. KEKER:**  Still not much.

16       **THE COURT:**  Still --

17       **MS. LITTLE:**  Anyway.  You're a registered financial advisor.

18  What do you do as a financial the advisor?

19       **PROSPECTIVE JUROR MIDDLETON:**  I calculate macroeconomics.

20       **MR. KEKER:**  For the benefit of those of us who don't

21  understand what you are talking about, tell us what you mean.

22       **PROSPECTIVE JUROR MIDDLETON:**  Well, I figure out the age

23  brackets of different populations.  United States, Europe, Asia.

24  And then calculate what products and goods are going to be

25  needed to purchase for that group.

1      As the age group gets older, we know they need more things

2  in healthcare.  As the age group starts out younger, we know we

3  need more education.

4      **MR. KEKER:**  And who do you do it for?

5      **PROSPECTIVE JUROR MIDDLETON:**  Financial Enhancement Group.

6      **MR. KEKER:**  Which is a corporation -- I mean, is a company?

7      **PROSPECTIVE JUROR MIDDLETON:**  Registered investment advisor

8  group.

9      **MR. KEKER:**  All right.  Thank you.

10     Jumping down to Mr. Conroy, No. 42.

11     **MR. FRENTZEN:**  Your Honor, I'm sorry, one juror's hand up.

12     **THE COURT:**  Oh.

13     **UNIDENTIFIED WOMAN:**  Can I be excused to go to bathroom,

14  please?

15     **THE COURT:**  Yes, go ahead.

16     (Hands raised)

17     **MR. KEKER:**  Could she go too, Your Honor?  (Indicating)

18     **THE COURT:**  Yes.  Let's -- let's -- we're almost at the

19  point where I'm going to excuse all of you for a few minutes.

20  You don't all have to go to the bathroom.

21     But we're sort of, you know, we are on the last leg here of

22  these things, and I think we can deal with the fact that -- and

23  the Court can take responsibility for the rather inelegant way

24  it framed the question of whether you can follow the law.

25     The concept is very simple.  You may disagree with something

I said.  I may say:  The law is X.  And you may say:  That's a
silly law.  Or:  I have always thought it should be Y or just
disagree with it.

    I understand that.  People disagree all the time.  The
question, though, is:  Even if you disagree with it, do you
promise that you will follow my interpretation of the law, and
not your disagreement?

    Does anybody have a problem with that?

    (No response)

    **THE COURT:**  No hands.  So we've dealt with that question.
Great.

    (A hand is raised)

    **MR. KEKER:**  Mr. Conroy.  Mr. Conroy, you said in your
questionnaire something about a project that sounded like it was
going to be finished before we all have to come back on the
26th.

    Is that right?

    **PROSPECTIVE JUROR CONROY:**  That's correct, yeah.

    **MR. KEKER:**  Okay.  So you don't have any conflicts or
problems being a juror.

    **PROSPECTIVE JUROR CONROY:**  Knowing that the trial doesn't
start until the end of the month, I should be fine, yeah.

    **MR. KEKER:**  Good.  Thank you very much.

    The next one I want to ask is Mr. Reisinger.  Am I
pronouncing that right?

1      **PROSPECTIVE JUROR REISINGER:**  Reisinger.

2      **MR. KEKER:**  You were another one on Question 33.

3      **PROSPECTIVE JUROR REISINGER:**  I found it misleading.

4      **THE COURT:**  My responsibility.  Don't blame the lawyers.  I

5  will never ask that question that way again.

6      **MR. KEKER:**  Okay.  You found it misleading --

7      **PROSPECTIVE JUROR REISINGER:**  Could you read the question

8  again, please?

9      **MR. KEKER:**  It said:  Would you be able to follow these

10  instructions even if you disagree with them?  And you checked

11  yes.  And then crossed that out, and then checked no.

12      Do you want to see it?

13      **PROSPECTIVE JUROR REISINGER:**  No, I remember doing that.  I

14  meant to say yes.  But then it said "If 'yes,' please explain."

15  And what explanation is there?

16      **MR. KEKER:**  Got it.  But there's no -- there's no mental

17  issue, just a -- okay.  Got it.  That's fine.

18      Ms. Palada -- or Mr. Palada, excuse me.  Same thing about

19  that Question 33.  Did you mean to check no?

20      **PROSPECTIVE JUROR PALADA:**  Well, just like he said, it is a

21  tricky question, so I can follow the --

22      **MS. LITTLE:**  How have you been following this -- these

23  proceedings?  Do you understand everything?

24      **PROSPECTIVE JUROR PALADA:**  Yes.

25      **MR. KEKER:**  Okay.  Do you think you have any problem with

1    the language or -- that we need to know about?

2        **PROSPECTIVE JUROR PALADA:**  I'll probably be okay.

3        **MR. KEKER:**  All right.  Thank you.

4        Mr. McClellon.  No. 55.

5        (A hand is raised)

6        **PROSPECTIVE JUROR McCLELLON:**  Yeah.

7        **MR. KEKER:**  Mr. McClellon, you're a reformed lawyer, right?

8        **PROSPECTIVE JUROR McCLELLON:**  I never practiced.  I was

9    licensed, but I have never practiced.

10        **MR. KEKER:**  Okay, that was what I was going to ask you.  You

11    trained in the law, became a lawyer?

12        **PROSPECTIVE JUROR McCLELLON:**  I passed the bar in Illinois.

13        **MR. KEKER:**  And then, and then what did you -- did you

14    become a software engineer right away?

15        **PROSPECTIVE JUROR McCLELLON:**  No, I have always -- that's

16    been my day job.

17        **MR. KEKER:**  Why would you not be a lawyer and be a software

18    engineer?

19        **PROSPECTIVE JUROR McCLELLON:**  There was more money in

20    software.

21        **MR. KEKER:**  Not a bad answer.

22        **THE COURT:**  I'm sorry, I didn't hear.

23        **MR. KEKER:**  There's more money in software.

24        **THE COURT:**  Well, I was still thinking about what the term

25    "reformed lawyer" meant.  I haven't met too many of them.  I

1    just wonder...

2        **MR. KEKER:**  There will be -- there's a possibility that

3    there will be some software engineers testifying in this case.

4        **PROSPECTIVE JUROR McCLELLON:**  Okay.

5        **MR. KEKER:**  Do you -- will you give they any more credence

6    or credibility than any other witness?

7        **PROSPECTIVE JUROR McCLELLON:**  No.

8        **MR. KEKER:**  Nothing special about software engineers that

9    makes them different from other people.

10       **PROSPECTIVE JUROR McCLELLON:**  I would imagine so.

11       **MR. KEKER:**  Thank you.

12       Mr. Moy.

13       Where's Mr. Moy?  Hi there, Mr. Moy.

14       You work for HUD.

15       **PROSPECTIVE JUROR MOY:**  Yes, I do.

16       **MR. KEKER:**  And you are the audit liaison manager?

17       **PROSPECTIVE JUROR MOY:**  I did audit liaison years ago.

18       **MR. KEKER:**  You -- you heard something, you have some

19    information about this case?

20       **PROSPECTIVE JUROR MOY:**  Only that I might have read it in a

21    magazine.

22       **MR. KEKER:**  Do you remember anything about what you read?

23       **PROSPECTIVE JUROR MOY:**  No.

24       **MR. KEKER:**  Do you hold stock in Hewlett-Packard?

25       **PROSPECTIVE JUROR MOY:**  Yes, I do.

1    **MR. KEKER:**  And you say that might affect you?

2    **PROSPECTIVE JUROR MOY:**  It could.  I don't know.

3    **MR. KEKER:**  But the indictment in this case is going to

4    charge that stockholders of Hewlett-Packard were defrauded.

5    That's you.  Right?

6    **PROSPECTIVE JUROR MOY:**  Correct.

7    **MR. KEKER:**  Do you think you could be fair, a fair juror,

8    being one of the people that the government says is a victim in

9    the case?

10    **PROSPECTIVE JUROR MOY:**  I don't know how to answer that

11    question.  I mean, I think I can be fair, and I mentioned that

12    earlier.  But I'm human.  And I look at my -- my day job, I look

13    at conflicts of interest.

14    And, you know, we have a standard called "appearance of

15    conflicts" so even though I may be fair and so forth, I'm human.

16    So I don't know how I'll react.

17    **MR. KEKER:**  And in your day job with the Department of

18    Housing and Urban Development, this kind of thing would not pass

19    the appearance-of-impropriety or appearance-of-conflict test,

20    would it?

21    **PROSPECTIVE JUROR MOY:**  We would probably not grant an

22    exception if that were provided to us.

23    **MR. KEKER:**  All right.  And you had some big losses in the

24    stock market?

25    **PROSPECTIVE JUROR MOY:**  Well, I have had some losses.

1      **MR. KEKER:**  Any of it in your HP stock?

2      **PROSPECTIVE JUROR MOY:**  Pardon?

3      **MR. KEKER:**  Any of it in your Hewlett-Packard stock?

4      **PROSPECTIVE JUROR MOY:**  Yes.

5      **MR. KEKER:**  Do you remember when those losses occurred?

6      **PROSPECTIVE JUROR MOY:**  Oh, years ago.  Twenty years ago.

7      **MR. KEKER:**  You follow Hewlett-Packard stock?

8      **PROSPECTIVE JUROR MOY:**  I don't -- I'm not a person that

9  looks every day.

10      **MR. KEKER:**  Thank you very much, Mr. Moy.

11  Ms. Carmona Rios.

12      **PROSPECTIVE JUROR CARMONA:**  Which one works?  Okay.

13      **MR. KEKER:**  You said in response to the hardship question:

14           "My daughter goes to a far school, takes me 30 to 45

15           minutes, I'm the only one that can take her."

16  And so on.  Is the transportation problem going to be an

17  issue for you?

18      **PROSPECTIVE JUROR CARMONA:**  Yes.

19      **MR. KEKER:**  Can you explain to all of us what the issue will

20  be and what the problem is?

21      **PROSPECTIVE JUROR CARMONA:**  Well, since I work during the

22  day and my husband he works at night.  And besides that, the

23  getting worried over there, because I don't know how to write in

24  English so many words so I -- I don't know how to make a long

25  sentence.  That's why I couldn't write everything I -- I wanted

1    to.

2         So beside that I have to take my daughter to school, I have

3    my mom, that she's 86 years old.  And she lives with me.  So

4    before I go to take my daughter to school, I have to take care

5    of my mom too.  And it's -- I have to leave my daughter, I have

6    to drop my daughter to school half an hour before because I have

7    to go back to my job too.

8         Something good, that my job is like three blocks from my

9    house, so that way I can take care of my mom sometimes, come to

10   breaks and lunch to take care of her.  In the meantime, one of

11   my sister comes and helps me.

12        **MR. KEKER:**  Do you think if you were asked to sit as a juror

13   in this case, that you would be able to focus on the case?  Or

14   would your outside issues affect you?

15        **PROSPECTIVE JUROR CARMONA:**  Well, at the beginning I thought

16   it was going to be for from -- something not too long.  But I

17   don't know, probably is going to affect me if it's longer than

18   what I thought.

19        And besides that, something that I mentioned before, is

20   still my concern about my English, you know, because here it is

21   going to be a lot of, um, professional people, that might have a

22   -- a vocabulary that I don't understand because my English is

23   kind of basic to understand with my co-workers and some easy

24   stuff.

25        **MR. KEKER:**  Would you prefer to be off the jury?

1        **PROSPECTIVE JUROR CARMONA:**  Um.

2        **MR. KEKER:**  Not be on the jury, I mean.

3        **PROSPECTIVE JUROR CARMONA:**  I really, I would like to be

4    here and participate, but I'm afraid that not to be as helpful

5    that I should be.

6        **MR. KEKER:**  Okay.  Thank you, ma'am.

7        Mr. Angel.  You said you were going to get paid for -- where

8    are you?

9        **PROSPECTIVE JUROR ANGEL:**  Right here.

10       **MR. KEKER:**  Do you have any kind of limitation on what you

11   would be -- on work?

12       **PROSPECTIVE JUROR ANGEL:**  Now that I found out more about

13   the case, I should be okay.  I have 20 days paid off.

14       **MR. KEKER:**  Okay.  Good.  Thank you.

15       Ms. Encarnacio, you are another Question 33 person that I

16   need ask.

17       **PROSPECTIVE JUROR ENCARNACIO:**  Yes.

18       **MR. KEKER:**  Can you follow the law as given to you by the

19   judge, and apply the facts?

20       **PROSPECTIVE JUROR ENCARNACIO:**  Yes, I do.

21       **MR. KEKER:**  You checked no.  And you meant to check yes?

22       **PROSPECTIVE JUROR ENCARNACIO:**  I meant to check yes.  I'm

23   sorry.

24       **MR. KEKER:**  Thank you.

25       And then, Ms. Resplandor.

1    **PROSPECTIVE JUROR RESPLANDOR:**  Yes.

2    **MR. KEKER:**  You said -- I think you told us before that

3    there were problems.  Your mother had died; you may be going

4    back to the Philippines.

5    Can you be -- could you be a fair juror in an eight-week

6    trial with all that's going on in your life?

7    **PROSPECTIVE JUROR RESPLANDOR:**  Um, I'm very used to making

8    sure that, you know, I separate my life, my personal life with

9    work.  But at the same time, this is very current.

10    And as a manager, I also have to juggle scheduling people's

11    lives.  And with this, although I can see that the scheduling

12    would be something that I could work on, um, I would hope to

13    travel right away.

14    And in looking at my travel plans going back to the

15    Philippines which is very important for me, I would love to go

16    home by March.

17    So, I -- I would love to hear about this because this is

18    very interesting case for me, and I could see that if I see more

19    about this, I am learning something.  And I think that, you

20    know, Mr. Hussain would need some jurors that would really see

21    through it, as well as the government.  So that we could see the

22    -- which is really -- if it's really fraud or not.

23    But I would really hope that you would consider my personal

24    dilemma.

25    **MR. KEKER:**  And what about the kids?  You said something

1    about four kids?

2        **PROSPECTIVE JUROR RESPLANDOR:**  Well, I'm very fortunate that

3    I have my family.  My in-laws helps me out and my dad.  However,

4    I do have some schedule with my dad, come to his checkups.  Due

5    to his health.

6        **MR. KEKER:**  Okay.  So, where do you end up?  Do you want to

7    be on or do you want to be off this jury?

8        **PROSPECTIVE JUROR RESPLANDOR:**  Please let me out.

9        (Laughter)

10        **MR. KEKER:**  That's clear.  Thank you.

11        Ms. Combs.  Laura Combs, No. 74.  Ms. Combs, good afternoon.

12        **PROSPECTIVE JUROR L.A. COMBS:**  Good afternoon.

13        **MR. KEKER:**  Tell us about your hardship and whether or not

14    you think it's going to interfere with your ability to be a fair

15    juror.

16        **PROSPECTIVE JUROR L.A. COMBS:**  About two months ago my mom

17    was diagnosed with ALS.  It's fairly progressive.  And she will

18    likely be passing in the next two years.  She lives in the

19    Central Valley with the rest of my family.  So, at any given

20    point -- like, I sometimes just need to go to Modesto to be with

21    my family.

22        In addition to that, my paternal grandfather has also been

23    diagnosed with multiple myeloma, and is currently battling that

24    type of cancer, and isn't projected to make it past the summer.

25    But we're still trying.  But he also lives in Modesto.

1      And then there is my uncle who lives in Oklahoma, who was in

2   October diagnosed with Hodgkins lymphoma, and almost passed from

3   kidney failure.  And that caused me to have to, like, just drop

4   everything and leave work for a week and go to Oklahoma.

5      **MR. KEKER:**  Okay.  First, I'm sure everybody is distressed,

6   listening to the ailments and things.  But, you have to tell us:

7   Could you be a fair juror sitting here for eight weeks, doing

8   what you need to do as a juror, given what else is going on in

9   your life?

10      **PROSPECTIVE JUROR L.A. COMBS:**  I think I could be fair.  I

11   wasn't aware that there would be one day or more than one day a

12   week that we wouldn't have to be here.  That actually makes it a

13   lot easier.  I don't know if we will know that schedule in

14   advance.

15      **THE COURT:**  Yes, you will.  If you are selected I will go

16   ahead, when we reassemble on the 25th, and give you days that I

17   know we're not going to meet.  I may even have some information

18   on that subject now, too.

19      **PROSPECTIVE JUROR L.A. COMBS:**  Okay.  Thank you, Your Honor.

20   That actually makes things a lot easier because then I can kind

21   of plan a little bit better, if I need to go out of town.

22      I also, for work I only get five days off for jury duty.

23   But I'm salaried, so as long as I work, like, at lunches and

24   after work and stuff like checking up on emails, I still get to

25   keep my salary.  So that wouldn't be a problem.

1        **MR. KEKER:**  Okay.  And would you like to be on this jury?

2        **PROSPECTIVE JUROR L.A. COMBS:**  I would, yeah.

3        **MR. KEKER:**  Mr. Hernandez Soto.

4        **PROSPECTIVE JUROR HERNANDEZ SOTO:**  Yes.

5        **MR. KEKER:**  Another one of the Question 33 people.  Did you

6    mean yes or no when it said:  Can you follow the rules?

7        **PROSPECTIVE JUROR HERNANDEZ SOTO:**  I meant to put yes, like

8    everybody else, misunderstood it.

9        **MR. KEKER:**  And then, let's see.

10       You said, with respect to 73 -- 33, I mean -- can you follow

11   the rules, yes.  And what did you say, and -- it is hard to

12   read, "In some cases, yes."

13       In most cases?  What did you mean?

14       Do you want to see it?

15       **PROSPECTIVE JUROR HERNANDEZ SOTO:**  No, I can't remember, to

16   be honest.

17       **MR. KEKER:**  Okay.  But can you -- can you follow the rules

18   in this case?

19       **PROSPECTIVE JUROR HERNANDEZ SOTO:**  Yeah.  Now that I

20   interpret the question like everybody else, I answer yes.

21       **MR. KEKER:**  And you said you have a strong -- I just have

22   trouble reading it.  (As read):

23              "Strong backing of minority races, blacks, Latinos

24              and Asians who I believe are at a disadvantage in

25              comparison with other races."

1    **PROSPECTIVE JUROR HERNANDEZ SOTO:**  And I don't think that'll

2    apply in this case.  It was just my opinion.

3    **MR. KEKER:**  And then you also said you work at your first

4    job and --

5    "Very new.  I'll be missing valuable time."

6    And so on.  Is this going to cause a problem for you?

7    **PROSPECTIVE JUROR HERNANDEZ SOTO:**  I think it could be --

8    put in a dent and slow down my career goals in this profession

9    I'm trying to get into.

10    **MR. KEKER:**  And the profession is being a contractor?

11    **PROSPECTIVE JUROR HERNANDEZ SOTO:**  Yeah, I'm working my way

12    to become a project manager.

13    **MR. KEKER:**  Okay.  Well, same question for you.  Do you want

14    to be on the jury or not want to be on the jury?

15    What, where's your --

16    **PROSPECTIVE JUROR HERNANDEZ SOTO:**  I would like to not be on

17    the jury, because it would help me keep my career goals in line.

18    **MR. KEKER:**  Okay.  Thank you very much.

19    Almost done, Your Honor.  Could we approach, sidebar?  For a

20    second.

21    **THE COURT:**  Okay.  Do we need it on the record or not?

22    **MR. KEKER:**  No, definitely not.

23    **MR. FRENTZEN:**  Is there a number we should have in mind?

24    **MR. KEKER:**  Yes, 78.

25    (Sidebar discussion held off the Record)

```
 1        THE COURT:  Okay.  So is that it?

 2        MR. KEKER:  Not quite, Your Honor.  Almost.

 3        THE COURT:  Almost.  Okay.

 4        MR. KEKER:  Mr. Munguia.  Am I pronouncing that right?

 5   Munguia?

 6        PROSPECTIVE JUROR MUNGUIA:  Yes.

 7        MR. KEKER:  You said, when asked about being fair, you said

 8   "I guess I can be fair."

 9        PROSPECTIVE JUROR MUNGUIA:  Yes.

10        MR. KEKER:  What did you mean?

11        PROSPECTIVE JUROR MUNGUIA:  I mean yes.

12        MR. KEKER:  Okay.  And I hate to tell you, Your Honor, but I

13   don't have any more questions.

14        THE COURT:  Oh, okay.  Does the government have any further

15   questions?

16        MR. FRENTZEN:  No, Your Honor.  Thank you.

17        THE COURT:  Okay.  Thank you.  So, ladies and gentlemen, you

18   have been very patient.  And we are, I would say 82.4 percent

19   finished.  That's a guess, I want to tell you.

20        But what we're going to do now is take 20 minutes, where

21   you're going to go outside and wander around and I'm going to

22   have a discussion with the government.  And so if you come back

23   here, we'll say 20 to 3:00.  Twenty to 3:00.  Who knows if that

24   clock is accurate.  But, 20 to 3:00.

25        Remember, don't discuss the case.  And please take the same
```

1    seats that you sat in before.  But everybody has to leave.

2        (Jury venire is excused from the courtroom)

3        (Off-the-Record discussion between the Court and Clerk)

4        **THE COURT:**  Have a seat.

5        **THE CLERK:**  No. 25.

6        **THE COURT:**  Mr. Johnston?  Is he Mr. Johnston?  Okay,

7    Mr. Johnston had approached my courtroom deputy, and said that

8    maybe the jurors should be aware of the fact that deliberations

9    can take extra days.  That's very helpful.

10        **MR. KEKER:**  Jury foreman, Your Honor.  In charge.

11        **THE COURT:**  Yeah, okay.  That's not -- all right.  So this

12    is what I would like to do.  Which is, go through a list of

13    people that I would excuse for cause based upon their responses.

14    If you disagree, say you disagree.  And we will have a

15    discussion about it.  If you agree, you don't have to say

16    anything.  Okay?

17        Because I think it is a good idea to come up to the podium

18    so I make sure that I hear whatever your position is.

19        Okay.  Are we ready?

20        **MR. FRENTZEN:**  Government's ready, Your Honor.  Hopefully I

21    will be able to recognize which jurors you are talking about as

22    you go through.

23        **THE COURT:**  Okay.  And then of course, that's without any

24    adjudication of the ones that you may have, obviously.

25        Okay.  Juror No. 5, Higgins.  And I'll take it that if you

1  don't respond, you agree.  Or you don't object.  Maybe that's a

2  better way to do it.

3  No. 7, Jameson.

4  No. 8, Yip.

5  No. 24, Aoki.

6  28 Rowland, unless you people insist that he stay.  And even

7  if you did, I would kick him off.

8  29, Craig.  30, Nori.

9  33, Barr.  35, O'Brien.

10  **MR. KEKER:**  Have you excused --

11  **THE COURT:**  Pardon?

12  **MR. KEKER:**  You already excused Antaki, Your Honor.

13  **THE CLERK:**  He's still here.

14  **MR. KEKER:**  Well, he might be here, but I thought we -- when

15  Mr. Frentzen got up and --

16  **THE COURT:**  Yeah, right.

17  **MR. FRENTZEN:**  32, Your Honor.

18  **MR. KEKER:**  32 --

19  **THE COURT:**  Oh, sorry, yeah.  I have done this out of order,

20  a little bit out of order.  Mr. Antaki waltzed back in.  And the

21  only question I have is since I said I would excuse him, if both

22  of you want him to stay, he can stay, but --

23  **MS. LITTLE:**  No, we don't.

24  **THE COURT:**  Okay, so he's out.  What number is he?

25  **MR. KEKER:**  32, Your Honor.

1     **MR. FRENTZEN:**  32.

2     **THE COURT:**  Better write them down.

3     Okay.  So, where did I leave off?  Mr. O'Brien, I ought to

4 go back.  Mr. O'Brien, Mr. Woebcke.  36, Woebcke.  37, Pressley.

5 40, Maganazook.  I don't know where we are on Kiziryan, number

6 45.  I didn't -- she is on the list as missing.  But I think she

7 did other things too.

8     **MR. FRENTZEN:**  Your Honor, she was missing this morning, but

9 then she showed up.  The issues were she had a quasi-medical

10 issue in terms of her needing a couple of breaks during the

11 course of the day.

12     **THE COURT:**  But that was the only thing.

13     **MR. FRENTZEN:**  And -- well, that was the only thing that the

14 Court had noticed.  I know that counsel for the defendant raised

15 the issue that there was some connection at some point to Ernst

16 & Young, but that, it was not -- I don't think that was ruled

17 on, if that makes sense.

18     So we don't see basis to kick No. 45 unless the Court is

19 concerned about the breaks that she would need during the course

20 of the day.

21     **THE COURT:**  Well, I'm not concerned about that.

22     **MR. FRENTZEN:**  Okay.

23     **THE COURT:**  I mean, I would honor that, even if they are

24 coming at odd times, I can honor that.

25     **MR. FRENTZEN:**  So we would object to 45 being stricken.

1      **THE COURT:**  Let's discuss.

2      **MR. FRENTZEN:**  Sure.

3      **THE COURT:**  Okay.  48, Walker.  52, Wong.  54, Ling.  61,

4  Stallcup.  64, Pevna.

5      **MR. KEKER:**  Can you --

6      **THE COURT:**  Pardon me?

7      **MR. KEKER:**  61, okay.

8      **THE COURT:**  Yeah, Stallcup.  64, Pevna.

9      **MR. KEKER:**  54 or 64?  64, sorry.

10      **THE COURT:**  Let me go back.  It's important to make sure

11  that I'm on the same page.

12      So, 52, Wong.  54, Ling.  61, Stallcup.  64, Pevna.  65,

13  Doveralba.  69, Maeda.  73, Palo.  75, Stegeman.  80, Bonilla.

14  84, Sangpo.

15      79, Beaty.  12, Hall.  2, Morales.

16      **MR. KEKER:**  Wait, now --

17      **THE COURT:**  Now I'm going back.

18      **MR. KEKER:**  Okay, back.

19      **THE COURT:**  As a result basically of the voir dire --

20      **MR. KEKER:**  Right.

21      **THE COURT:**  -- of the parties.  Okay.  79, Beaty.  12, Hall.

22  2, Morales.

23      **MR. KEKER:**  Where was -- Hall, okay, gone.  Okay.  Morales.

24      **THE COURT:**  Morales.  4, Saborivong.

25      **MR. KEKER:**  Right.

1      **THE COURT:**  10, Kaul.  14, Mei.

2      Now, 58 presents an interesting question.  Does either party

3  want 58 excused?

4      **MR. FRENTZEN:**  May I have one moment, Your Honor?

5      **MR. KEKER:**  Yes.

6      **THE COURT:**  Okay.  Excused.  This is a Hewlett-Packard

7  shareholder.

8      **MR. KEKER:**  Yes.

9      **MR. FRENTZEN:**  That's fine.

10      **MR. KEKER:**  With losses.

11      **MR. FRENTZEN:**  That's fine.

12      **THE COURT:**  That's clearly for cause, unless the parties

13  said:  Look, I don't care.  I mean --

14      **MR. KEKER:**  We care.

15      **THE COURT:**  Okay.  60, Carmona Rios.

16      72 gives me some concern.

17      **MR. KEKER:**  She's the one who wants to go to the

18  Philippines?

19      **THE COURT:**  Yeah.  I mean, that's the problem.

20      **MR. KEKER:**  No objection to excusing her.

21      **MR. FRENTZEN:**  Your Honor, I just feel like if she needs to

22  go, we're going to end up having to let her go.  So it's just

23  whether or not we want to take the risk with the alternates.  So

24  I'm --

25      **THE COURT:**  Well, when she said that she wants to go in

1    March, that was of concern to me.  I mean, because if she said:

2    Well, I want to go -- I mean she wants to bury her mother's

3    ashes.  And I just think, you know, how she may be affected.

4    She's -- they're on the mantel, or wherever you keep your

5    mother's ashes.

6        **MR. FRENTZEN:**  May I have a moment, Your Honor?

7        (Off-the-Record discussion between counsel)

8        **MR. FRENTZEN:**  Yeah, we're fine with that, Your Honor.

9        **THE COURT:**  Okay.  So, she's gone.

10       **MR. FRENTZEN:**  We agree.

11       **THE COURT:**    All right, so let's go back to the one that;

12   Kiziryan, No. 45.  What is the position of the parties on 45?

13   The government objects, thinks that she ought to serve.  Is that

14   right?

15       **MR. FRENTZEN:**  Yes, Your Honor.

16       **THE COURT:**  Okay.  So --

17       **SPECIAL AGENT BRYANT:**  (Inaudible)

18       **THE COURT:**  Do you want to be heard, anybody want to be

19   heard on this?

20       **MR. KEKER:**  I do, sure.  I'm trying to get this, the

21   questionnaire --

22       **THE COURT:**  Okay, take your time.

23       **MR. KEKER:**  I understand she worked at KPMG.  KPMG is going

24   to be an important witness that we talked about.  What KPMG

25   thought about this, that, the other thing, she worked there for

1    12 years, as I understand it.

2        Let me look at the -- no, no, no, this is Kir -- Kiziryan.

3        **THE COURT:**  Yeah, I don't think it is the one that -- I

4    don't know what basis for recusing her other than she's a

5    feeding mother, which is not the basis --

6        **MS. LITTLE:**  Well, she lost money in the stock market.  She

7    worked at KPMG.

8        **THE COURT:**  Okay.

9        **MR. KEKER:**  And, let's see, what else?  It's mostly the KPMG

10   piece.  She's the one who says she needs to pump and then she

11   also said she only gets paid for ten days, I thought, of jury

12   service.  But that may be wrong.

13       **THE COURT:**  What's the government's position?

14       **MR. FRENTZEN:**  Your Honor, other than I think the financial

15   hardship issue which I think the Court, if it needed to, could

16   address it or could clarify, and if the Court needs to see, she

17   lists KPMG with three other accounting jobs along and then you

18   add her current one, I think, so four different accounting jobs,

19   it's not developed to the point where there is any sort of

20   potential bias.  She doesn't know anything about this case.  She

21   didn't indicate the nature of the case would affect her.  And I

22   think --

23       **THE COURT:**  I'm going to deny the challenge.  Okay.

24       **MR. FRENTZEN:**  She didn't --

25       **THE COURT:**  Okay.  Now, the question is, first turning to

1   the government, are there any other people that you think should

2   be excused for cause?

3       **MR. FRENTZEN:**  Yes, Your Honor.  Except if I can just have

4   one moment, actually, most of them may already be gone.

5       (Off-the-Record discussion between counsel)

6       **MR. FRENTZEN:**  Your Honor, the good faith has three

7   for-cause challenges to add to the Court's list.  They are 53,

8   76, and 85.

9       **THE COURT:**  Okay, let me look.  The one who dislikes both

10  sides.

11      **MR. KEKER:**  Which one, 85?  Is that the third one?

12      **MR. FRENTZEN:**  Yeah.

13      **THE COURT:**  She dislikes both sides.  Okay, well, all right.

14  Is that --

15      **MR. KEKER:**  We oppose.

16      **THE COURT:**  You like that she dislikes both sides.

17      **MR. KEKER:**  Yes.  That's a start.

18      **MR. FRENTZEN:**  And --

19      **THE COURT:**  Okay, so that's denied.  What's next?

20      **MR. FRENTZEN:**  All right.  76, Your Honor.  Thinks that it's

21  going to impact his career.  And there's also --

22      **THE COURT:**  What is that?  That was just silly.  I mean I

23  listened to him, some kid out there who thinks that the decision

24  he makes today will determine whether or not he gets the Nobel

25  Prize.  I mean, give me a break.  We all make sacrifices.  Maybe

1    it will enhance his career.

2        **MR. FRENTZEN:**  I just --

3        **THE COURT:**  Who knows.  I'm not doing it because of that.

4        **MR. FRENTZEN:**  Well, okay.  I mean there were -- with

5    respect to both of these, it was also what was in the

6    questionnaire.  I mean --

7        **THE COURT:**  Well, if you want to point something out to me

8    that I should look at --

9        **MR. FRENTZEN:**  Sure.  Question -- with respect to Juror 53

10   who doesn't like either side.

11       **THE COURT:**  Okay, wait.  Let me look at it.

12       **MR. FRENTZEN:**  Sure.

13       **THE COURT:**  Because I will grant you if they said something

14   that is more powerful or more persuasive than --

15       (The Court examines document)

16       **THE COURT:**  Okay, so what do you want me to look at?

17       **MR. FRENTZEN:**  On 53, Your Honor, Question 31 and 32.

18       **THE COURT:**  Okay, let me look.

19       (The Court examines document)

20       **THE COURT:**  I mean, I think her response to Question 32 is

21   troubling.  She says (As read):

22           "I believe that capitalism is inherently the source

23           of most hardship on the planet and the government

24           that protects corporations' capitalism is also to

25           blame."

```
 1          I mean, I'm going to -- I'm going to excuse her.  That's
 2   Number --
 3          MR. FRENTZEN:  53, Your Honor.
 4          MR. KEKER:  We object, Your Honor.
 5          THE COURT:  Over objection.
 6          MR. KEKER:  I don't think that's enough, so we will just
 7   object.
 8          THE COURT:  Okay.
 9          MR. FRENTZEN:  And No. 76, Your Honor.
10          THE COURT:  So 76, do you want me to look at something that
11   he wrote?
12          MR. FRENTZEN:  Yes, Your Honor.  Briefly.  It's the same two
13   questions.  31 and 32.  In addition to his clearly not wanting
14   to be here, and thinking that it's going to impact him.  And,
15   you know, I can't comment on the beginning of a career and if
16   you're starting a new job.  But it is what it is.
17          THE COURT:  All right, what do you want me to look at?  31,
18   32.
19          MR. FRENTZEN:  Question 31 and 32, Your Honor.
20          MR. KEKER:  32 says:
21              "I am a Catholic and regularly attend church."
22          THE COURT:  Where is that?  I must miss it.
23          MR. FRENTZEN:  31 and 32 --
24          THE COURT:  What number is it?
25          MR. FRENTZEN:  76, Your Honor.
```

1    **THE COURT:**  Oh, okay.  Wait.

2    **MR. FRENTZEN:**  It says it could cause him to not be fair in

3    this case.  I'm adding that to the personal situation.

4    (The Court examines document)

5    **THE COURT:**  You want me to look at --

6    **MR. FRENTZEN:**  And Your Honor, I guess I just, in addition,

7    in terms of his career, I just wasn't clear that he was going to

8    get paid.  And if he's not going to get paid, that's clearly a

9    concern for the government.

10   **THE COURT:**  "I have a strong..."  What does he say?

11   "...history" I guess.  What does he say?  "...backing" --

12   **SPECIAL AGENT BRYANT:**  "...backing of minority races..."

13   **THE COURT:**  "...where I believe we are at a disadvantage in

14   comparison to all others."

15   I just don't see how that applies in this case.  I mean,

16   really?  Is there anything that's going to be suggested in the

17   evidence about a racial bias or disadvantage or anything like --

18   **MR. DOOLEY:**  (Shakes head)

19   **THE COURT:**  I just don't see it.

20   **MR. FRENTZEN:**  No, nor do I, Your Honor.  It was -- along

21   with the personal issues, that gave us pause.

22   **THE COURT:**  I'm not going to excuse him.  Over objection.

23   **MR. FRENTZEN:**  That's fine.  And then the last one is

24   Juror 85, Your Honor.

25   (The Court examines document)

1    **THE COURT:**  85.

2    **MR. FRENTZEN:**  And 85, Your Honor, had an issue with the

3    nature of the case, the type of case, with the notion of

4    corporate fraud.  And while she said "I can follow the facts,"

5    she would always say "...but I have my views on this," and so

6    on, and would never just sort of fully come out and say: "I can

7    be fair in this type of case."

8        She also, at least in her questionnaire -- well, I won't

9    mention the van, Your Honor, in the questionnaire, but --

10        (Off-the-Record discussion between defendant and counsel)

11    **MR. FRENTZEN:**  Deep-seated bias against corporate America,

12    which I grant you, could cut both ways in this case.  But at the

13    same time, she was expressing to me a concern with being a juror

14    in this type of case.

15        She reiterated "I can follow the facts."  But she wouldn't

16    stop saying "but" and then saying that she was going to have

17    difficulty in this type of case.

18        She also just -- the Court has the questionnaire on No. 38.

19    She needs time to move into a van.

20    **MR. KEKER:**  We oppose, Your Honor.  She is a software

21    engineer.  The government asked --

22    **THE COURT:**  I don't think it's a challenge for cause.  The

23    van, I don't think that is a cause challenge.

24    **MR. FRENTZEN:**  I'm not relying on the van, Your Honor, I'm

25    relying on other things.

1    **THE COURT:**  If it were a Winnebago, I might have to take

2    another look at it.

3    Okay.  So of the three you've raised, I'm eliminating

4    Juror No. 53, Combs.

5    **MR. FRENTZEN:**  Thank you, Your Honor.

6    **THE COURT:**  All right.  Mr. Keker?

7    **MR. KEKER:**  Juror No. 1, Your Honor, whose wife works for

8    PricewaterhouseCoopers is too close to the case.

9    **THE COURT:**  Right.  Denied.  Okay.

10   **MR. KEKER:**  Juror No. 26, Ms. Poopat.  Turning to her, we

11   asked her some questions.  You rehabilitated her to some extent,

12   I recognize that.

13   But when you look at her questionnaire, No. 26, she talks,

14   "Fraudulent activities are very bad in my opinion."

15   "I'm inclined to be biased against some races from my past

16   experience."

17   **THE COURT:**  But not the Bangladesh.

18   **MR. KEKER:**  Well, I don't know.  "A friend of mine used to

19   be a victim of fraud."

20   The question about 33, "I'll do my best but not sure."

21   35, again as a banker, "Fraudulent activities are bad in my

22   profession."

23   **THE COURT:**  I'm going to excuse her.  I just -- my feeling

24   towards her is that she is -- her sort of electric, automatic

25   response to a charge of fraud, and she said, "You say it, and

1    it's one of the worst things."

2        Now, I know she also said she would listen to the evidence

3    and so forth.  But I'm not confident that she -- well, I'll

4    reserve ruling.  What is your opinion?

5        **MR. FRENTZEN:**  Your Honor, we actually object.  She did

6    rehabilitate herself.  She made it clear that whatever issue she

7    has that she's being very honest about in terms of bias are not

8    an issue in this particular case.

9        She -- she did note she thinks fraud is bad.  Everybody

10   thinks fraud is bad.  The question is whether we can prove it.

11   She was very clear that she would follow the Court's

12   instructions.

13       **THE COURT:**  I think that's right.  I'm going to overrule the

14   objection.

15       **MR. KEKER:**  Your Honor, could I be heard again?

16       **THE COURT:**  Yes.  Since I managed to change my mind several

17   times.

18       **MR. KEKER:**  Yeah.  But I mean, she cannot say -- when she

19   was asked if she could be fair, she said --

20       **MS. LITTLE:**  She said no.

21       **MR. KEKER:**  She said no.

22       **MR. FRENTZEN:**  That was before --

23       **MR. KEKER:**  If I could finish, Mr. Frentzen?

24       When asked on the questionnaire whether or not she could

25   follow the instructions, she says "I'll do my best but I'm not

1    sure."

2        She goes on: "I'm inclined to be biased against some races

3    from my past experience."  A friend -- and who knows where that

4    biases and where it goes.  She talks about fraud about three

5    times in this thing.

6        This woman is not going to be a fair juror.  Period.  I

7    think it's obvious.

8        **THE COURT:**  I don't know that that's true.  I mean, listen.

9    If I agreed with you, she would be off.  But I don't -- I don't

10   know that she's not going to be fair.

11       And of course, I don't know the evidence in the case.  But

12   -- and I was -- I was taken, as you were, about her visceral

13   reaction to the word "fraud."  But she works in a bank, doesn't

14   she?  I mean, of course, they all say that, work in a bank, you

15   know.  They hate that.

16       **MR. FRENTZEN:**  She does, Your Honor.  And when Mr. Keker

17   asked her does she believe that fraud has been committed, she

18   said yes.  And then when she got an opportunity to clarify, she

19   says "I don't mean your client in this case.  I just know that

20   fraud occurs because I'm a banker and I see it happen."

21       He's -- she did say no initially.  Then when the Court asked

22   her, she was very clear that yes, she could be fair.  And so for

23   all those reasons -- you know.

24       And the -- she was candid about having bias in certain

25   phases of life.  She said that wasn't going to affect her in

1    this particular case.  And, you know, that's true of some of

2    these other jurors that we have just read the questionnaire

3    where they say they are biased one way or the other in their

4    personal life, but if it doesn't have any bearing on this case,

5    then we are clearly not excusing those folks, either.

6        **MR. KEKER:**  Nobody here in this panel is as bad as she is.

7    She is awful.  I mean, she said --

8        **MR. FRENTZEN:**  Just --

9        **MR. KEKER:**  She's a banker who sees fraud everyplace, and

10   admits that she's got bias.  And, and she is a government --

11       **THE COURT:**  I'm sort of listening to this, and figuring out

12   how could I defend whatever position I'm going to take.  And I

13   think I'm going to let her go.  She's one of the most outspoken

14   people in the -- not that that is necessarily bad.

15       Anyway, what number is she?

16       **MR. KEKER:**  26, Your Honor.

17       **MR. FRENTZEN:**  26.  And if I could just note, we object.

18   And we think that the issues with the -- you know, in terms of

19   the biases, that that was true of a number of jurors that the

20   Court had -- was not granting our motion to excuse in terms of

21   them indicating that just as clearly in their questionnaires.

22       **THE COURT:**  Who is that, Mr. Frentzen?

23       **MR. FRENTZEN:**  76, and I forget the other one.

24       **THE COURT:**  Nothing hits me the way Poopat hit me.

25       Anyway, let's -- what else?  Who else?

1      **MR. KEKER:**  That's it.

2      **THE COURT:**  So the government has made challenges to three,

3  and I've granted one.  And the defense has made a challenge to

4  four, and I've granted one.

5      **MR. FRENTZEN:**  Correct.

6      **THE COURT:**  Very even-handed of the Court.

7      Okay.  I don't know whether -- do you need some more time?

8  Because now what happens is I excuse them.  They come in, I

9  excuse them, but I don't move people.  You just look at them and

10  then you pass the paper back and forth.

11      **MR. FRENTZEN:**  With them in the courtroom.

12      **THE COURT:**  Uh-huh.

13      **MR. KEKER:**  Can we get ten minutes?

14      **THE COURT:**  Why not?  That may help you.

15      **MR. REEVES:**  Yes.

16      **MR. FRENTZEN:**  Sure, that would be great.

17      **THE COURT:**  Why don't you go out and tell them it will be

18  another ten minutes, and we will take a break.

19      **THE CLERK:**  Okay.

20      **MR. KEKER:**  Thank you, Your Honor.

21      **MR. FRENTZEN:**  Thank you.

22      (Recess taken from 2:44 p.m. to 2:58 p.m.)

23      **THE CLERK:**  Come to order.

24      **THE COURT:**  Bring them in.

25      **THE CLERK:**  All right.

1

2          (The following proceedings were held in the presence of the

3   Jury Venire)

4          **THE COURT:**  Are we missing some?

5          **THE CLERK:**  No.

6          **THE COURT:**  Everybody's here.  Okay, have a seat.

7          Ladies and gentlemen, again, thank you.  We took some extra

8   time because we wanted to try to come to some decisions early

9   on, which we have done.

10         I'm going to read a list of names.  If I name your name,

11  even though I may mispronounce it, it means you are excused.

12  And you are to go to the Jury Commissioner's office.

13         And I want to thank you, because obviously you're

14  indispensable to the process of making the selection.

15         So, some of you will be in an order.  Some of you will not.

16  Not to assume anything by the order.  But I have just written a

17  list at different times.  And we'll start.

18         So, Juror No. 5, Mr. Higgins.

19         Juror No. 7 -- you should get up and leave.  That's the

20  idea.

21         Juror No. 7, Ms. Jameson.  Juror No.  8, Ms. Yip.  Juror

22  No. 24, Mr. Aoki.

23         Juror No. 28, Mr. Rowland.  Juror No. 29, Ms. Craig.

24         Juror No. 30, Mr. Nori -- or Ms. Nori?  Ms. Nori.  Thank

25  you.

1          Juror No. 33, Ms. Barr.

2          Juror No. 35, Mr. O'Brien.  Juror No. 36, Mr. Woebcke.

3          **PROSPECTIVE JUROR WOEBCKE:**  Thank you.

4          **THE COURT:**  Sorry.  Juror No. 37, Mr. Pressley.

5          **PROSPECTIVE JUROR PRESSLEY:**  Thank you.

6          **UNIDENTIFIED WOMAN:**  Do we take the numbers?

7          **THE CLERK:**  Please leave the numbers behind.  Thank you.

8          **THE COURT:**  Juror No. 40, Mr. Maganazook.

9          Juror No. 48, Mr. Walker.  Juror No. 52, Mr. Wong.

10         Juror No. 54, Ms. Ling.  Juror No. 61, Mr. Stallcup.

11         Juror No. 64, Mr. Pevna.

12         Juror No. 65, Mr. Doveralba.  Juror No. 69, Ms. Maeda.

13    Juror No. 73, Ms. Palo.  Juror No. 75, Mr. Stegeman.

14         Juror No. 80, Ms. Bonilla.  Juror No. 84, Ms. Sangpo.

15         Juror No. 32, Mr. Antaki.  Juror No. 79, Mr. Beaty.  Juror

16    No. 12, Mr. Hall.

17         Juror No. 2, Ms. Morales.  Juror No. 4, Mr. Sayborivong.

18    Juror No. 10, Ms. Kaul.

19         Juror No. 14, Ms. Mei.  Juror No. 58, Mr. Moy.  Juror

20    No. 60, Ms. Carmona Rios.

21         **UNIDENTIFIED WOMAN:**  She's gone.

22         **THE COURT:**  Pardon?

23         **UNIDENTIFIED WOMAN:**  She's gone.

24         **THE COURT:**  Carmona Rios, she's gone?

25         **UNIDENTIFIED MAN:**  She left when you called the number.

1      **THE COURT:**  Okay.  Juror No. 72, Ms. Resplandor.

2      **PROSPECTIVE JUROR RESPLANDOR:**  Thank you.

3      **THE COURT:**  Juror No. 53, Ms. Combs.  Juror No. 26,

4  Ms. Poopat.

5      Okay.  Now I would like to ask the parties:  Have I

6  identified all those jurors who were challenged for cause?

7      Is there anyone that I have missed or misannounced or

8  something?

9      **MR. FRENTZEN:**  Yes, we agree.

10      **THE COURT:**  Okay.  I haven't missed anyone.

11      **MR. KEKER:**  One second, Your Honor.

12      **THE COURT:**  Yeah, go right ahead.

13      **MR. KEKER:**  Thank you, Your Honor.  That is what I have.

14      **THE COURT:**  Okay.  So now we are going to do something

15  called "choreography."  I would like the last three people in

16  the first row to -- the gentleman, Mr. Flournoy, stays where you

17  are.

18      Will you move down, please?  And you move down next to the

19  next person.  And then I want the three people in the second row

20  to move in right in the last three seats, so the next three

21  seats, in the same order in which you are seated.

22      (Request complied with by the potential jurors)

23      **THE COURT:**  Then I would like six, the first six, one, two,

24  three, four, five, six, just, just go directly to the seat

25  behind you.

1        (Request complied by the potential jurors)

2        **THE COURT:**  And you also, as well.

3        (Request complied with by other potential jurors)

4        **THE COURT:**  No, no, no, not the last person.  Not -- you.

5        **PROSPECTIVE JUROR FLORESJOVEL:**  Oh.

6        **THE COURT:**  Okay, just have a seat.  All right.  Now, I'm

7    not going to move anyone else around right now.

8        So are we all comfortable in proceeding?  Does this help or

9    not?

10       **MR. REEVES:**  (Nods head)

11       **THE COURT:**  So do we have the piece of paper?

12       **THE CLERK:**  Yes.

13       **THE COURT:**  Now, ladies and gentlemen, you may talk.  What

14   is happening -- not a mystery -- is that a piece of paper is

15   being passed back and forth.  And the parties are doing --

16   making a selection, which they are entitled to do under the law.

17       And then once that's done, then it's just going to take a

18   few minutes, I will excuse the people who are on the list.  And

19   then we have a jury.

20       So if you want to talk, talk.

21       (A pause in the proceedings)

22       **MR. KEKER:**  Your Honor --

23       **THE COURT:**  Just don't move.

24       **MR. KEKER:**  Could we approach with a question?

25       **THE COURT:**  Yeah.

1      **MR. KEKER:**  Your Honor, can we see you at sidebar?  Doesn't

2  need to be on the record.

3      **THE COURT:**  Sure.

4      (Sidebar discussion held off the Record)

5      **THE COURT:**  Okay.

6      (Document handed up to the Court)

7      **THE COURT:**  Okay.  So, I am going to read off actually 16

8  names.  Not any particular order.  But if I read your name, um,

9  you have been asked to leave, not serve.  So please go to the

10  Jury Commissioner's office.

11      And once again, you have our appreciation for your services.

12      Okay.  Juror No.  38, Ms. Lopez Morillas -- or Mister,

13  Mister.  I'm sorry, excuse me.  You are the person.

14      **PROSPECTIVE JUROR LOPEZ-MORILLAS:**  Thank you.

15      **THE COURT:**  Thank you.  Juror No. 3, Mr. Ho.  Juror No. 62,

16  Mr. Naeseth.

17      Juror No. 27, Ms. Cranley.  Juror No. 34, Mr. Middleton.

18  Juror No. 63, Mr. Angel.

19      **PROSPECTIVE JUROR ANGEL:**  Thank you.

20      **THE COURT:**  Juror No. 7, Ms. Kiziryan.  Is that right?  Have

21  I said it right?

22      **MR. FRENTZEN:**  47, Your Honor.

23      **UNIDENTIFIED WOMAN:**  45?

24      **THE COURT:**  Wait, wait, 45.

25      **PROSPECTIVE JUROR KIZIRYAN:**  Kiziryan?  Thank you.

1       **THE COURT:**  Who just left?  Did I excuse the right person?

2   Somebody just walked out.  I hope it was the right one.  Now

3   it's Juror No. 45, Kiziryan.  And I'm sorry for mispronouncing

4   your name.

5       **PROSPECTIVE JUROR KIZIRYAN:**  Thank you.

6       **THE COURT:**  Juror No. 46, Ms. Plevyak.

7       **PROSPECTIVE JUROR PLEVYAK:**  Yes.

8       **THE COURT:**  Juror No. 90 -- pardon me.

9   Juror No. 44, Ms. Shay?

10  Do I have that right?

11      **PROSPECTIVE JUROR SHAY:**  Yes.

12      **THE COURT:**  All right.  Juror No. 22, Ms. Floresjovel.

13      **PROSPECTIVE JUROR FLORESJOVEL:**  Thank you.

14      **THE COURT:**  Juror No. 6, Mr. Weiner.  Juror No. 25,

15  Mr. Johnston.  Juror No. 20, Mister -- Mr. Schumann?

16      **PROSPECTIVE JUROR SCHUMANN:**  Schumann.

17      **THE COURT:**  Schumann, beg your pardon.  Can't read my

18  writing.  Pardon me.

19  Juror No. 11, Mr. Wong.  Or Ms. Wong.  Ms. Wong.  Pardon me.

20  Juror No. 76 -- well, yes, Ms. Hernandez Soto or

21  Mr. Hernandez Soto, pardon me.  Thank you.  Juror No. 42,

22  Mr. Conroy.

23  Okay.  So the three people in the first top row, please move

24  over.  And I would like the first three people in the second row

25  to join the people in the back row.  In the same order.

1    Go around, sir.  Yeah, go around.  Go the long way.  Don't

2    worry about the papers.

3    And I would like the two people here to move down.  And then

4    I would like -- now I'm looking out at the audience -- the young

5    lady in pink, or in gray, to come up.  And take your seat.

6    And then I would like you to come up as well (Indicating).

7    And sir, I would like you to come up.

8    **PROSPECTIVE JUROR RULLAMAS:**  This seat?

9    **THE COURT:**  No, front row.  That row.  That row.  That's

10   right.  Appreciate it.  Okay, now I can't tell, lack of depth

11   perception.  Is it the gentleman on the -- towards the wall or

12   the other gentleman?

13   I think this gentleman's next, right?

14   **THE CLERK:**  Number --

15   **THE COURT:**  Okay, now.  And you join them.  Thank you.

16   Okay.

17   Now, my question to the parties is:  Is this the jury?

18   **MR. LEACH:**  Yes, Your Honor.

19   **MR. KEKER:**  Yes, Your Honor.

20   **THE COURT:**  Okay.  So, we will now proceed to alternates.

21   **THE CLERK:**  Okay.

22   **THE COURT:**  Everybody just stay where you are.

23   (A pause in the proceedings)

24   **MR. KEKER:**  I think we're done, Your Honor.

25   (Document handed up to the Courtroom Deputy)

1          (Document handed up to the Court)

2      **THE COURT:**  How many, how many people do we have out there?

3  What's the number?

4      Could you raise your hand if your name hasn't been called

5  yet?  I just want to get a number, a count.  One, two, three --

6  one, two, three, four, five, six, seven, eight, nine, ten,

7  eleven, twelve.

8      Let me see the parties at sidebar.

9      (Sidebar discussion held off the Record)

10     **THE COURT:**  Okay.  Would you give this back to -- just be a

11 moment.  Just be a moment.

12     (Document handed down)

13     **THE CLERK:**  Who do you want me to --

14     **THE COURT:**  Government.

15     **THE CLERK:**  Okay.

16     (A pause in the proceedings)

17     **MR. KEKER:**  So we're doing it.

18     **THE COURT:**  I thought so.

19     **MR. KEKER:**  Okay, great.

20     **MR. FRENTZEN:**  I thought so too.

21     **THE COURT:**  One more.

22     (A pause in the proceedings)

23     (Document handed up to the Courtroom Deputy)

24     **THE CLERK:**  Thank you.

25     (Document handed up to the Court)

1          (The Court examines document)

2          **THE COURT:**  Okay.  If I call your name now, you are excused

3      as well, with the Court's thanks.

4          Juror No. 78, Mr. Miller.  Juror No. 55, Ms. McClellon.

5      Mr. McClellon.  Pardon me.

6          Juror No. 81, Mister -- is it Munguia?  Right.

7          Juror No. 68, Ms. Encarnacio.  Is that right?

8          **PROSPECTIVE JUROR ENCARNACIO:**  Encarnacio.

9          **THE COURT:**  I'm sorry, yes, thank you.  Juror No. 85,

10     Ms. Drake.

11         **PROSPECTIVE JUROR DRAKE:**  Thank you.

12         **THE COURT:**  Juror No. 86, Mr. Ramaswamy.

13         Okay.  Now, let's start moving people.

14         Who's in the first row?  Sir.  Come on up.  Take the last

15     seat in the first -- in the second row.  Right at the top.

16         And now we'll have you take the seat right in front of that.

17         And I think -- are you next?  Yes.  Please come up.  Take

18     the seat right here.  Right here.  Real close.

19         Next, and next, and next.

20         (Requests complied with by the potential alternate jurors)

21         **THE COURT:**  Okay, do we all agree these are the alternates?

22         **MR. FRENTZEN:**  Yes, Your Honor.

23         **MR. KEKER:**  Yes, Your Honor.

24         **THE COURT:**  And we're out of people.  Amazing.  Amazing.

25     Okay, so I am going to swear in the jury.  And go ahead, swear

1    in the -- first, just the --

2        **PROSPECTIVE JUROR SCHEFFY:**  If I may -- I think I have said

3    it before -- I won't be here on February 26th.

4        **THE COURT:**  Pardon me?

5        **PROSPECTIVE JUROR SCHEFFY:**  I will not be in the country on

6    February 26.  If that's the start of the trial, I won't be here.

7        **THE COURT:**  I'm sorry; were we aware of this issue?

8        **PROSPECTIVE JUROR SCHEFFY:**  I said it earlier.

9        **THE COURT:**  And may I inquire as to why you won't be here?

10       **PROSPECTIVE JUROR SCHEFFY:**  I will be on vacation.  I will

11   be coming back from vacation on that day.

12       **THE COURT:**  What number are you?

13       **PROSPECTIVE JUROR SCHEFFY:**  89.

14       **THE COURT:**  Well, you are a trial attorney, is that right?

15       **PROSPECTIVE JUROR SCHEFFY:**  Yes.

16       **THE COURT:**  All right, I'm going to swear you in at this

17   point anyway, and we will have to deal with that.

18       So, swear in first the jury.  Or do you swear them all in at

19   the same time, can you do that?  I think you can.

20       **THE CLERK:**  I think I can.

21       **THE COURT:**  Okay.

22       **THE CLERK:**  Yes.

23       **THE COURT:**  All 16 of you rise, please.

24       **THE CLERK:**  Please raise your right hand.

25       **THE COURT:**  Eighteen, 18.  Yeah.

1          (Jury Panel and alternates sworn in)

2          **THE CLERK:**  Thank you.  You may be seated.

3          **THE COURT:**  Well, congratulations.  I don't know whether

4    they're in order or not.  You all don't look all that happy.

5    But, I will tell you that we are -- all, all of us in this room

6    are so appreciative of your service.

7          I want to take maybe five minutes and explain something to

8    you which I think is of key importance for the period of time

9    that you serve on the jury.  It discusses your conduct as

10   jurors.  And let me read this to you because I think it's

11   essential that you appreciate what I'm about to say.

12         First, keep an open mind throughout the trial and do not

13   decide what the verdict should be until you and your fellow

14   jurors have completed your deliberations at the end of the case.

15         Second, because you must decide this case based only on the

16   evidence received in the case and on my instructions as to the

17   law that applies, you must not be exposed to any other

18   information about the case, or to the issues it involves during

19   the course of your jury duty.

20         Thus, until the end of the case or unless I tell you

21   otherwise, do not communicate with anyone in any way, and do not

22   let anyone else communicate with you in any way about the merits

23   of the case, in person, in writing, by phone or electronic

24   means.  Be it email, text messaging or any internet chatroom,

25   blog, website or other feature.  This applies to communicating

with your fellow jurors, until I give you the case for
deliberation.  And it applies to communicating with everyone
else, including your family members, your employer, the media or
press, and the people involved in the trial.

Although, you may notify your family, your employer,
friends, that you have been seated as a juror in this case.  But
if you are asked or approached in any way about your jury
service or anything about this case, you must respond that you
have been ordered not to discuss the matter, and to report the
contact to the Court.

So let me give you what I call "practical advice."
Obviously, there are people in your family, your friends, maybe
your employer, your kids and so forth who know you are here
today, and they will say: Gee, hey, what happened?

And you can say:  I was selected to be on a jury.

Oh.  Oh, what kind of case is it?

And you could say:  It's criminal.

And then they'll say:  Criminal.  What's it about?

Aha.  That's the line.  And all you say to that is:  I'm
sorry -- if you want to say that, depending on your relationship
with them -- but the judge ordered me not to discuss the case
until it's over.

When it's over, you can talk to anybody who will listen
about anything involved in the case.  Anything at all.  I don't
care.  No, there will be no restrictions on you, whatsoever.

But until the case is given to you for decision, you are not to discuss the case.

And it's a very slippery slope.  Because once you say: Well, you know, it has to do with accounting, or:  Well, it has to do with Hewlett-Packard, or Autonomy, or this or that, somebody will give you an opinion.

And you know what?  That opinion won't be based on evidence. It will either be based on something they read somewhere, or they made it up.  Or they heard it somewhere.

And when I said at the outset that this is one of the most important things you can do as a citizen, what makes it important is that at the end of the process, you have confidence that 11 people agreed with you, if you're able to arrive at an agreement.  It's called the integrity of the verdict.  It's the integrity of your process.  To spend a month or two months in a waste of time is really unfortunate for you, and for everybody else in this courtroom.  And for the public at large.  It would be a waste.

And so I would say to you:  Do not -- do not do anything to jeopardize the integrity of your verdict.  That includes, of course, going on emails, looking at Google, researching it, all of those things.

I guarantee you, it may not be apparent, but I will tell you a secret.  These lawyers are not shy.  You might think they are very shy, but they're not.  And actually, they are very

accomplished.  And they will present to you any information and
all the information they can gather that they think is relevant,
is important to your decision.  So you won't be -- you won't --
you won't wonder:  Gee, if the lawyers thought it was important,
I didn't get it, so I have to get it off the internet or some
other source.

The answer is no.  They're very competent.  Highly
competent.  And they want you to decide this case, based upon
the evidence presented to you.

And I think you owe it to them, you owe it to the system,
and you owe it to each other and to yourselves to make sure that
the time you are about to spend in what is one of the most
important things you can do in our system today, is fair,
impartial, and the appropriate result.

And so I tell you again:  Please, please, do not do any
research; do not talk about the case.

The law requires these restrictions to ensure the parties
have a fair trial, based on the same evidence that each party
has had an opportunity to address.  A juror who violates these
restrictions jeopardizes the fairness of these proceedings.  And
a mistrial could result.

If any juror is exposed to outside information, please
notify the Court immediately.  You notify Ms. Scott.  She is
your guardian angel.  She will get to meet you, you will get to
know her.  She's very approachable.  And she is the arm of the

1    Court.  She is how communications take place.  And so any

2    concerns that you have, raise them with Ms. Scott.

3        So, again, I want to thank you.  And I want to -- now it's

4    4:15.  Apologies to the Sebastopol contingent, if we have any,

5    the survivors of that.  Gotta drive all alone.  But, I want to

6    -- I again really thank you for your service.

7        You are going to go back into the jury room now.  I assume

8    that over some period of time, we might have larger

9    accommodations for you, but right now just go back in that room,

10   and Ms. Scott will discuss matters with you.  Thank you.  Take

11   everything.

12       Oh, yes, let me say just one other thing before you go.  I'm

13   going to give you a list of dates that I'm quite sure we won't

14   be meeting, so you can make some plans around those.  Some

15   change, but I'm hopeful that they are days that you can count

16   on, not being here.  So you can make those plans.  Okay.

17       **THE CLERK:**  Okay.

18       **THE COURT:**  Thank you.

19       And I'll deal with your problem.  I want to discuss it with

20   the lawyers.

21       **PROSPECTIVE JUROR SCHEFFY:**  Okay.

22       (Jury excused)

23       (The following proceedings were held outside of the

24   presence of the Jury)

25       **THE COURT:**  Let the record reflect the jurors have left.

1    So, what do we want to do about the trial lawyer who is

2    coming back one day short on her vacation?

3        **MR. KEKER:** She said in her questionnaire she had a trial

4    February 13th. She's never mentioned anything about a vacation.

5    But I don't have any objections, since she is the last

6    alternate, to excuse her.

7        **THE COURT:** I do. I mean, I really have a fundamental --

8    you know, I -- I would listen -- I've done this now for 23

9    years. I listen to people who are lawyers and mediators saying:

10    You know, Judge, I don't think I can be fair.

11        You know, you know. And you want to take something and

12    throw it at them. I mean, their job is to be fair, their

13    professional job is to be fair, and they tell me they can't be

14    fair because all they want to do is get out of jury duty.

15        I'm sorry she's got a vacation that will be cut one day

16    short.

17        Where does she -- where does she practice?

18        **MR. FRENTZEN:** Your Honor --

19        **THE COURT:** Anybody know?

20        **MR. KEKER:** (Inaudible)

21        **MR. REEVES:** Hawkins.

22        **MR. FRENTZEN:** We do. It was on the questionnaire

23    Your Honor. I think it's like an employment law --

24        **MS. LITTLE:** Hawkins Parnell Thackston and Young, 5.5 years,

25    defense employment law attorney. And she says --

1    **THE COURT:**  She will hate me.  I don't think she's going to

2    hate you, but I don't care if they hate me or not.  But, you

3    know, again, on the one hand, I don't like people serving on a

4    jury who shouldn't serve, who don't want to be on the jury.

5    But, I also have -- maybe you all ought to sleep on this,

6    let her sleep too.  I think it would be better off if we meet

7    tomorrow and go over the motions in limine and so forth.  Fresh

8    start.  Everybody is pretty tired.

9    **MR. FRENTZEN:**  That's fine with the government, Your Honor.

10    **THE COURT:**  Is that okay?

11    **MR. KEKER:**  What time, Your Honor?  10:00?

12    **THE COURT:**  Yeah, 10:00 sounds good.  Is that good for you?

13    **MR. FRENTZEN:**  Sounds good.

14    **MR. KEKER:**  Bankers' hours.

15    **THE COURT:**  Yeah, bankers' hours.  Bankers' hours.  Thank

16    you.  I just didn't see -- I mean, I know that you all think

17    that it was the persuasive effect of Mr. Keker's brief that

18    convinced me, but actually, I hadn't read it before I decided to

19    change my mind once again, because my idea was, well, I'll bring

20    back, you know, four people, which seems sort of:  What's the

21    point?

22    **MR. FRENTZEN:**  Your Honor --

23    **THE COURT:**  What would that have accomplished?

24    **MR. FRENTZEN:**  Our concern is a little larger than that.

25    It's, you know -- but --

1    **THE COURT:**  Let's say we're missing people.  Then you have
2    to make a judgment at that point what to do.
3    **MR. FRENTZEN:**  What's done is done.  We're there.  And so,
4    we're just going to roll on with it, Your Honor.  And hope we
5    get a full jury.
6    **THE COURT:**  See that attitude?  I want you to pick that one
7    up.  That's great.  What's done is done.
8    **MR. FRENTZEN:**  Thank you, Your Honor.
9    **THE COURT:**  What's done is done.  Okay.  Thanks so much.
10    **MR. KEKER:**  Thank you, Your Honor.
11    **THE COURT:**  You all got a copy of this (Indicating).  If you
12    think it's wrong or something let me know -- it's, so, it's for
13    planning purposes.  And I'll see you tomorrow.  And we'll just
14    go through them, it won't take too long.
15    Yes, Mr. Reeves.
16    **MR. REEVES:**  Thank Your Honor.  Was that the schedule you
17    were holding?
18    **THE COURT:**  No, these are days off.
19    **MR. REEVES:**  Yes, I --
20    **THE COURT:**  I gave it to you.
21    **MR. REEVES:**  I do have it, yeah.
22    **THE COURT:**  Days off, so you've got witnesses, you've got
23    planning, and this is an opportunity to get your ducks in order
24    before we start the trial.
25    **MR. REEVES:**  Thank Your Honor.

1      **THE COURT:**  Okay.  I think we're okay.  Okay.  Thanks.

2      **MR. FRENTZEN:**  See you in the morning, Your Honor.

3      **MR. LEACH:**  Thank you.

4      **MR. REEVES:**  Good night, thank you.

5      (Proceedings concluded)

1

2

3

4                    **CERTIFICATE OF REPORTER**

5          I, BELLE BALL, Official Reporter for the United States

6    Court, Northern District of California, hereby certify that the

7    foregoing is a correct transcript from the record of proceedings

8    in the above-entitled matter.

9

10

11    _____/s/ Belle Ball

12              Belle Ball, CSR 8785, CRR, RDR

13              Friday, February 23, 2018

14

15

16

17

18

19

20

21

22

23

24

25