Volume 5

Pages 722 - 744

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
  VS.                          )          NO. CR 16-00462 CRB
                               )
SUSHOVAN TAREQUE HUSSAIN,      )
                               )
          Defendant.           )
_____)
                               San Francisco, California
                               Monday, March 5, 2018

### TRANSCRIPT OF PROCEEDINGS

APPEARANCES:
For Plaintiff:
                    ALEX G. TSE
                    Acting United States Attorney
                    450 Golden Gate Avenue
                    San Francisco, California  94102
               BY:  ROBERT S. LEACH
                    ADAM A. REEVES
                    WILLIAM FRENTZEN
                    ASSISTANT UNITED STATES ATTORNEYS


For Defendant:
                    KEKER & VAN NEST
                    633 Battery Street
                    San Francisco  CA  94111
               BY:  JOHN W. KEKER
                    JAN NIELSEN LITTLE
                    BROOK DOOLEY
                    KATE LAZARUS
                    NIC MARAIS
                    ATTORNEYS AT LAW


Reported By:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Pamela Batalo, CSR No. 3593, FCRR
              Official Reporters

1    <u>**Monday - March 5, 2018**</u>                              <u>**8:56 a.m.**</u>

2                        <u>**P R O C E E D I N G S**</u>

3                            ---oOo---

4        (Proceedings were heard out of presence of the jury:)

5            **THE COURT:**  Let the record reflect the parties are

6    present.  The jury is not present.

7        My courtroom deputy received communication from two

8    jurors.

9        Why don't you just tell them what the story is.

10           **THE CLERK:**  Yes.

11       Tensy Botto contacted the Court and said that she was

12   having complications with her pregnancy this weekend and so she

13   made an emergency doctor's appointment this morning.

14       Graciela Guevara, our Alternate No. 4, her son had a fever

15   this weekend.  She was on her way in, and the mom called and

16   told her that the son's fever has spiked and so she had to go

17   back home.

18           **THE COURT:**  So the question is what do you want to do?

19   That's the question.

20       Government, what do you want to do?

21           **MR. FRENTZEN:**  Your Honor, with great regret, I don't

22   think we can afford to lose two in one day.

23           **THE COURT:**  I think that what will happen is that the

24   juror who has a complicated pregnancy will probably be excused

25   by virtue of a letter from the doctor.  I mean, as we know, she

1  raised these issues before, and for some reason her pregnancy

2  is complicated, which she believes it is.  So I think

3  realistically she's gone.

4      The other juror, of course, has a situation with a member

5  of her family, which may very well, over the night, cure

6  itself.  So I think that's what we're looking at.

7      I will basically do what the parties want to do.  It's not

8  my case, I mean, in that sense.

9      **MR. FRENTZEN:**  Yeah.  Your Honor, we don't want to --

10 certainly don't want this case to drag on any longer.  I guess

11 from the Government's perspective, however, we do have concerns

12 about -- I understand what the Court is saying about the first

13 juror.

14     **THE COURT:**  I mean, I think we're going to lose one.

15 I think the issue you have to decide is do you want to wait a

16 day -- just tell them to go home.  Wait a day to see whether

17 this other juror can come in.  Takes care of the problem.  I

18 mean, who knows with a fever with kids.  It could be a fever or

19 it could be something more serious.

20     My guess is that she might be in a position to know that

21 at the end of the day or maybe the first thing in the morning.

22     We'll talk to her and say, "Look, we've postponed the

23 trial a day and see if your son's fever improves and you're

24 able to come in and let us know first thing in the morning,"

25 that sort of thing.

1          That would postpone it a day.  We're still going to lose

2     one.  I'm not going to automatically excuse her.  I'm just

3     simply going to say, "Please give us a call after the doctor

4     and let us know what the doctor says."

5          **MR. FRENTZEN:**  May I have a moment with co-counsel,

6     Your Honor, and just so the Court knows --

7          **THE COURT:**  I think a lot depends on your scheduling,

8     a lot depends on how you want to look at the case with only two

9     alternates, rather than three alternates.  It's sort of an

10    interesting question of even -- who knows what would happen.

11    But I haven't looked at the law so I don't know what would

12    happen if -- I don't even know whether the defense would

13    stipulate -- I'm not asking them to, but I have no idea

14    whether -- I don't know what you could do legally in terms of a

15    criminal jury trial, and I don't need to get into that because

16    we're not there yet.

17         **MR. KEKER:**  I think we ought to wait a day and hope

18    that Ms. Botto is not as bad off as she is, although I agree

19    with you, probably you'll get a letter and then nobody will be

20    able to object to excusing her.

21         And hope that the other juror resolves her childcare

22    problems.

23         **MR. FRENTZEN:**  Your Honor, may I have a moment with

24    co-counsel?  I'll just let the Court know, it's less the juror

25    issue that I want to consult with them about; it's what it

1    means in terms of scheduling.

2        Just so the Court knows, we had witnesses coming from the

3    UK for tomorrow that we -- anyway --

4        **THE COURT:**  By the way, in that regard, one thing the

5    Court would consider is interrupting witnesses' testimony.  I

6    don't like to do it, especially in the middle of a

7    cross-examination, but I also think that that's within my

8    discretion, whatever the posture is.

9        And I just want to -- we all want to try this case and get

10   it over with, and we all have to make accommodations.  That's

11   one of the accommodations the Court would make.

12       **MR. FRENTZEN:**  And we appreciate that.  At the same

13   time, I don't want Mr. Baiocco to beat me up in the hallway

14   because he didn't get out of here.

15       **THE COURT:**  Well, he is not testifying today -- well,

16   he may, depending on what you all decide to do.

17       **MR. FRENTZEN:**  If I could have a moment.

18       **THE COURT:**  Yes.  Sure.  Have a moment.

19        (Government counsel confer off the record.)

20       **MR. FRENTZEN:**  Your Honor, thank you for that

21   opportunity.

22       Would the Court consider -- I don't know if the Court has

23   some way of reaching out to the jurors, but would the Court

24   consider at least the possibility of reconvening, say, after

25   the morning or something to give them some time to figure out

1    if they are going to be able to come in, what their situation

2    is?  If they can come in, that way we can get possibly

3    Mr. Baiocco done --

4            **THE COURT:**  One juror is from where?

5            **THE CLERK:**  Rohnert Park.

6            **THE COURT:**  One juror is from Rohnert Park.

7            **MR. FRENTZEN:**  That is already here?

8            **THE COURT:**  No.

9            **MR. KEKER:**  No.  That's not here.

10           **MR. FRENTZEN:**  That's one of the jurors that is not

11   here.  I understand now.  She is not here.

12           **THE COURT:**  So I just think that's called an

13   alternative, but that's not going to work.

14           **MR. FRENTZEN:**  Okay.  Understood.

15       I think that the Government's view is we are looking at

16   still another month and a half or whatever of trial and losing

17   two jurors on one day would be a heavy hit.  We would rather

18   take the chance that maybe we get one or both back tomorrow.

19       And tomorrow, if the situation is the same, then we'll

20   just -- we'll suck it up and roll.

21           **MR. KEKER:**  Tomorrow is tomorrow.

22           **THE COURT:**  I'll look at some Fridays and see whether

23   I can -- the problem is, having now told the jury that they

24   don't have to meet a particular day, I'm going to get all this

25   what's "wrong with you" and "that's when I'm going to pick up

1   my grandkids" or "that's the play" or "that's the da, da, da,

2   da, da."

3       **MR. KEKER:**  We would object to changing the Friday

4   schedule for exactly that reason.  Easter is coming up.  There

5   is all this stuff that is happening.

6       **MR. FRENTZEN:**  We have no objection to scheduling

7   Friday, should the jurors -- we understand they may have

8   already blacked it out, but if they haven't and we can do it,

9   then the Government would be all for it.

10      **THE COURT:**  Well, you know what I'm going to do?  I

11  don't know what I'm going to do.  I think I'll take a look at

12  my schedule.  I think I'll excuse them now because I don't want

13  to keep them in a room.  I can bring them back in and talk to

14  them or maybe that is a good idea or I can go down there.  I

15  don't care which.

16     I think bring them in and show them that everybody else is

17  ready -- everybody is here and it's not like, "Oh, I came to

18  the door and didn't even go in."

19     Let's bring in the jury, and I'll talk to them because I

20  would like to sort of --

21      **MR. KEKER:**  Before we break today, we have a few small

22  matters.

23      **THE COURT:**  I'm free, no doubt, as you are.  But let's

24  bring the jury in.

25     (Proceedings were heard in the presence of the jury:)

1      **THE COURT:**  Good morning, Ladies and Gentlemen.  As

2   I'm sure you note, two of your number are missing:  One for

3   medical reasons and the other for family emergency.

4      What we're going to do is, as a result of that, and -- and

5   the projected trial schedule and so forth and the witnesses are

6   coming in from other countries -- is we're going to hope that

7   one or both of them can return tomorrow.

8      If they can't, we will proceed anyway with the number of

9   people that we have here because we can do that and then we'll

10  proceed with the testimony.

11     So, again, I want to thank you.  I know it's an

12  inconvenience.  I know you expected to proceed, as we all did.

13  The parties are completely ready.  Everybody is ready to

14  proceed, but we need to have a full complement of jurors or

15  almost a full complement.  So we are going to postpone taking

16  testimony today.

17     The parties have pointed out that there are some legal

18  matters that I can address with them during the course of the

19  day.  That will actually make sure that your time here is well

20  spent; that is to say, that you won't have to wait around until

21  I decide something or hash out an issue.  I'll try to do it

22  today.  I'm sure I will do it today.

23     There's one other thing I'd like you to consider, but it

24  doesn't affect today's schedule.  As you know, I gave you a

25  schedule of days that we would not be meeting, and I know

1   you're relying on those.

2        The question I have is next week we are meeting Monday and

3   that was the only scheduled day next week.  There is the

4   possibility of meeting that Friday.

5        Now, if for some reason, one of you cannot do it that

6   Friday, we won't meet on Friday.  But if we can do it that

7   Friday, so you would meet twice next week, Monday and Friday --

8   if you can do it that Friday, we'd make up the whole day of

9   testimony.  Even if we cut it short Friday afternoon or

10  something, that would be okay because it's Friday afternoon.

11       So look at your schedules.  I'm not talking about this

12  coming Friday.  I'm talking about a week.  I'm talking about

13  March 16.  And I know it's the day before Saint Patrick's Day,

14  which in San Francisco is a national holiday, but -- and

15  New York, I think.  Probably those are the two places that

16  wildly celebrate Saint Patrick's Day.  That's sort of a great

17  holiday.

18       That's sort of the schedule.  And I'd like to do it, if I

19  can, but I would certainly understand if we can't.  Okay?

20       So with that, remember the admonitions given to you:

21  Don't discuss the case, allow anyone to discuss it with you,

22  form or express any opinion.

23       You are free to go today.  Thank you very much for coming

24  in.

25       (Proceedings were heard out of presence of the jury:)

1          **THE COURT:**  The jurors have left.

2      What I'm going to do is -- I almost never talk to jurors

3   directly -- have my courtroom deputy phone the jurors, ask the

4   woman who has the pregnancy issues what the story is, tell

5   her -- tell both of them that it was postponed until tomorrow,

6   and then try to get updates as late as today, but I don't think

7   in a sense it makes too much difference.  When I say

8   "difference," I don't think you have a decision to make in the

9   matter.  I will just proceed.  We'll proceed with trial.

10      We'll put everything on the record, the responses and so

11   forth.  I don't know that I'm going to necessarily consult with

12   you on the temperature of things as it goes through the day,

13   just because I have distractions and so forth.

14      Okay.  So let's do this.  You have pointed out, Mr. Keker,

15   that there are certain issues.  I would actually like to spend

16   as much time as necessary to try to work through any other

17   issues that we anticipate coming down the line or that we can

18   deal with now.

19      I did receive a brief on the issue of the propriety of

20   inquiring of the witnesses whether their legal fees are paid by

21   Hewlett-Packard in this case.  I haven't received a response

22   from the Government, have I?

23          **MR. KEKER:**  We just filed it this morning.

24          **THE COURT:**  They just filed it.  So you better look at

25   it and tell me if -- you can respond either in writing or

1    orally.

2         **MR. REEVES:**  We will, Your Honor.

3         **THE COURT:**  I'm not going to do anything until I get a

4    Governmental response.

5         **MR. REEVES:**  Thank you, Your Honor.  We will respond.

6         **THE COURT:**  Okay.

7      So what else, Mr. Keker?

8         **MR. KEKER:**  First I wanted to tell you that March 16th

9    is Adam Keker's 50th birthday and I hope you don't keep us too

10   long.  My oldest son.

11        **THE COURT:**  Oh, my.  That's quite the feat.

12        **MR. KEKER:**  That's an important day.

13     Your Honor, we wanted to bring to your attention the

14   provision in our Pretrial Conference Statement -- I think this

15   is not an issue, but we asked the Court for a Federal Rule of

16   Evidence 615 "Exclusion of Witnesses" order and we said other

17   than Mr. Hussain, a case agent, and the experts, and the

18   Government responded that they agreed to the exclusion of

19   witnesses in compliance with Rule 615.

20     Our accounting expert, Gervase MacGregor, has been in

21   attendance during trial and plans to continue to be from time

22   to time, and I just want to put that on the record.  I realize

23   that we didn't say it explicitly when we started --

24        **THE COURT:**  No.  That's sort of an implicit exception

25   to the rule.

 1           **MR. FRENTZEN:**  No objection.

 2           **MR. KEKER:**  We're done with that.  Then we have

 3    evidentiary issues.

 4       One is the fee issue, which will apply to three witnesses

 5    that we expect to see this week.  So that's something that,

 6    once the Government responds, we should be able -- we should

 7    deal with.

 8       And there are others with Ms. Little's witnesses and

 9    Mr. Dooley's witness, Jane Snider, that have to do with

10    exhibits, I think.

11           **THE COURT:**  Bring it on.

12           **MR. DOOLEY:**  Good morning, Your Honor.

13       Very briefly, we have an issue with a particular exhibit,

14    Exhibit 1989, that relates to Ms. Snider.  I spoke with

15    Mr. Frentzen before court this morning, and he indicated that

16    he did not intend to introduce that exhibit, so I think that

17    issue has resolved.

18           **THE COURT:**  Good.  Not even knowing what that exhibit

19    is, I'm indifferent.

20           **MR. FRENTZEN:**  I'm not sure why it's an issue.

21           **THE COURT:**  It's not.  Thank you.

22       Good.  Anything else?  We don't necessarily have to fill

23    the time.

24           **MR. LITTLE:**  Good morning, Your Honor.  Jan Little for

25    Mr. Hussain.

1          My discussions with Mr. Leach this morning were not so

2     fruitful.

3          There are two exhibits that relate to Mr. Geall, who will

4     be testifying tomorrow.  They are Exhibits 2768 and 2770, which

5     I will hand up to the Court.

6          Marc Geall, Your Honor, is a gentleman who worked in

7     investor relations at Autonomy and then was an analyst covering

8     Autonomy.

9          Exhibit 2770 is an email exchange between Mr. Geall, when

10    he was working in investor relations, and Daud Khan, who is an

11    analyst that was covering Autonomy.  This was the subject of a

12    motion in limine that we filed before the trial started.

13         The Government has designated as 404(b) evidence the claim

14    that Autonomy excluded Mr. Khan from investor meetings, and

15    it's our position that unless that can be tied to Mr. Hussain

16    in some way, that that is not proper to come into evidence.

17         Under *Huddleston vs. United States*, as we argued in our

18    motion in limine, similar act evidence is relevant only if the

19    act occurred and the defendant was the actor, and I don't think

20    there is any evidence that Mr. Hussain was responsible for

21    excluding Mr. Khan from these meetings, and so I think that

22    whole topic is off limits with Mr. Geall and I think this

23    exhibit in particular is off limits.

24              **THE COURT:**  The case is what that you are citing?

25              **MR. KEKER:**  *Huddleston vs. United States*.  It was in

 1   our motion in limine.  I can get you the cite.

 2          **THE COURT:**  Mr. Leach.

 3          **MR. LEACH:**  We think the exhibit is admissible,

 4   Your Honor.  We think that the evidence has shown and will

 5   continue to show that Dr. Lynch and Sushovan Hussain and Andy

 6   Kanter were working closely together making joint decisions

 7   about what information to convey to the market.

 8       We expect Mr. Geall to testify that he spoke to Dr. Lynch

 9   and Mr. Hussain about re-inviting Daud Khan to the analyst

10   meetings in 2010, and that recommendation was ultimately

11   accepted.

12       We think the evidence will also show that Mr. Geall met

13   with Dr. Lynch and Sushovan Hussain with bankers from

14   Mr. Khan's investment bank and further threatened Mr. Khan

15   after these events at issue so the fact that he was previously

16   excluded gives additional context to that.

17       If Mr. Hussain is not involved at all in that, I don't see

18   the prejudice at all to him.  If he is, it's evidence that he's

19   attempting to quash information about what goes out to

20   analysts, which is highly probative of his state of mind.

21          **THE COURT:**  But it's their position, if I understand

22   it correctly, that the Government has no evidence connecting

23   Mr. Hussain to the decision not to invite or otherwise have

24   this analyst there.  I'm trying to do it in terms of what the

25   document is.

1          So looking at the document -- because I think overall, if

2    the company -- and then we have to decide what we mean by "the

3    company" -- decides not to have a particular analyst there,

4    that may be probative.  May or may not.  I don't know.  It

5    depends on their justification or what they did or what they --

6    the inferences that can be drawn from a decision not to have a

7    particular person there.  Is it a reasonable inference that it

8    somehow is evidence that one or more of them, because a

9    conspiracy is charged here, is hiding information or doing

10   something that they don't want the analyst to find out about.

11         Okay.  As a general proposition, it would be admissible.

12   So then the question is, assuming that there is some evidence

13   of that -- then the question is -- that's what I think

14   Ms. Little is saying, that as I understand it, even if they did

15   exclude this person, it wasn't Mr. Hussain's decision and you

16   have no evidence to show that he actually participated in that

17   decision.

18         Have I got it, or is there something more?

19         **MR. LITTLE:**  You do, and there is something more,

20   which is that the 2008 events that led to this exclusion relate

21   to things that really don't have to do with the charges in this

22   case.  It had to do with a note that he wrote about organic

23   growth relating to acquisitions and it's not one of the issues

24   involved in the charges in this case.

25         **THE COURT:**  So that's the argument, that it's not

```
 1   relevant.  I mean, that's the argument that even if Mr. Hussain
 2   had said, for example, "don't bring this guy in, don't let this
 3   guy in," the only evidence that would -- the only reason, and
 4   no other inferences can be drawn, would be that he was excluded
 5   because of some newspaper article or something he wrote about
 6   organic something or another.
 7            MR. LITTLE:  It's both, Your Honor.
 8            MR. LEACH:  The other --
 9            THE COURT:  It's both.  So they have a second
10   argument.
11         Mr. Leach.
12            MR. LEACH:  The underlying reason is the same
13   throughout the period, Your Honor, and it extends into the
14   conspiracy period.
15         He was excluded in the first quarter of 2009, he was
16   excluded in the second quarter of 2009, he was excluded in the
17   third quarter of 2009.  Before the email that Your Honor has --
18            THE COURT:  What am I missing then?  Oh --
19            MR. LEACH:  This is the email where he is invited back
20   in --
21            THE COURT:  Maybe I have to read.  Start at the
22   bottom.
23         I have here the email from Mr. Pollard to Edward Briggs.
24   Is that where I start?
25            MR. LITTLE:  Yes.
```

 1        Mr. Bridges was at Financial Dynamics, which was a

 2   consulting firm that Autonomy used to arrange its analyst

 3   meetings.

 4        **THE COURT:**  I'm totally confused by these emails.  I'm

 5   sorry.  Maybe it's just I'm not concentrating.  It looked to me

 6   like he was invited when I read the last --

 7        **MR. LITTLE:**  The point is whether he was invited back

 8   or not I think is not what the Government is focusing on.  They

 9   are focusing on fact that in Q2 of 2008, Mr. Daud was

10   excluded -- this is what we filed our motion in limine about.

11   Unless you can tie that act to Mr. Hussain, it's improper

12   404(b) evidence.  You can't have 404(b) evidence about an act

13   where the defendant is not the actor.

14        **THE COURT:**  Okay.  So let's take that.  I'm not quite

15   sure I fully appreciate, nor can I right now, the failure to

16   allow Mr. Daud to come in in 2008.  I mean, it is what it is.

17   I don't know quite what it all is.

18        But putting that aside, what is exactly the argument to

19   overcome the argument about no evidence demonstrating that

20   Mr. Hussain participated in that decision?

21        **MR. LEACH:**  There is evidence that Mr. Hussain

22   participated in that decision.  That evidence includes Exhibit

23   287 in which Mr. Hussain, along with Marc Geall, Andy Kanter,

24   and Sushovan Hussain are drafting scripts for responding to

25   possible questions on analyst calls, and one of the questions

1    they anticipate is "Why is Daud Khan not able to attend these

2    meetings?"

3        The evidence is that Mr. Hussain and Dr. Lynch sat in the

4    same room.  The evidence will be that Mr. Hussain was at a

5    meeting involving Daud Khan subsequent to this email where he

6    is listening to the JPMC bankers about some of his research

7    reports.

8        **THE COURT:**  Okay.  So you are -- you can stop there.

9        You are saying that au contraire, there is evidence that

10   he participated in that decision.

11       **MR. LEACH:**  Yes, Your Honor.

12       **THE COURT:**  And the answer is that I'm going to allow

13   it in subject to a motion to strike.  If it turns out that

14   there is no evidence, then I will strike it and admonish the

15   jury.  Okay.

16       What's next?

17       **MR. LITTLE:**  Next is Exhibit 2678, which is an email

18   where Mr. Geall is forwarding to Mike Lynch some negative

19   comments from another so-called Bear analyst at Astaire.  This

20   seems like it's not relevant to me.  It doesn't have anything

21   to do with Mr. Hussain, and it's also hearsay within hearsay.

22   We're taking somebody else's opinion about Autonomy that's

23   being forwarded to Mr. Geall who is forwarding it to Mr. Lynch.

24       And in particular, I'm concerned about the areas that I've

25   highlighted on the second page which is this other analyst's

**PROCEEDINGS**

1  opinion about how an analyst meeting went and that it was

2  bizarre and he talks about things that -- "that Mr. Hussain

3  left the room."  Again, it's hearsay within hearsay.  It's not

4  relevant and it shouldn't be admitted.

5         **THE COURT:**  Let me read it.  I'm now reading the

6  second page of the document, which is the paragraph in blue

7  stating "Astaire view"?

8         **MR. LITTLE:**  Yes.

9         **THE COURT:**  Let me read it first.

10     What is an EBIT forecast?

11        **MR. LEACH:**  I think it's a reference to EBITDA,

12  Your Honor.  Earnings Before Interest, Taxes, and the DA,

13  Depreciation, is left off.

14        **THE COURT:**  Pardon?

15        **MR. LEACH:**  I think it's a financial metric,

16  Your Honor.  EBITDA.

17        **THE COURT:**  Earnings Before Interest --

18        **MR. LEACH:**  Interest, Taxes and Depreciation, but the

19  D and A aren't there.

20        **THE COURT:**  So it's an accounting acronym.

21        **MR. LEACH:**  Yes.

22                    (Pause in proceedings.)

23        **MR. LEACH:**  Your Honor, I think we have a solution to

24  this.

25        **THE COURT:**  Go ahead.  I always like solutions.

1            **MR. LEACH:**  Okay.  The Government has agreed to redact

2    the paragraph on page 2 that I think is the subject of the

3    objection.

4            **THE COURT:**  Okay.

5            **MR. LEACH:**  We are offering this evidence for the

6    effect on the hearer, for Mr. Hussain and his knowledge of the

7    clarity of some of the disclosures to analysts, but we don't

8    need to offer that last paragraph.

9            **THE COURT:**  Okay.  Is that acceptable?

10           **MS. LITTLE:**  It is.  Thank you.

11           **THE COURT:**  Thank you very much.

12       Anything else?

13           **MR. KEKER:**  Yes, Your Honor.  Not for you to do

14   anything about, but to tell you what we would like to have in

15   the record; and that is the Government I know, because I know

16   how hard we're working, is working very, very hard in trying to

17   comply with its obligations for discovery and all that stuff.

18       We have, though, been subjected to changing witness order,

19   130 new exhibits that weren't on the exhibit list in the last

20   couple of weeks.  We're getting 302s at the last minute.  Some

21   of them are, like, interviews of something that happened three

22   weeks ago and we get them at the last minute.  We just got one

23   for Mr. Cronin who was supposed to be up today.

24       I am not complaining.  I am putting on the record that

25   these problems, which I expect are inevitable, are occurring.

1    We're not whining about them day in and day out.   I expect

2    we'll have the same kind of problems when the time comes for

3    the Defense case.   I just wanted to bring to the Court's

4    attention that these are problems and that the parties are

5    working as hard as they can to not let them delay the trial and

6    deal with things.

7        And I didn't want to sit quietly and then wait until they

8    say, "Oh, you just gave us an exhibit and you should have given

9    us an exhibit on March 5th," for example.

10       **THE COURT:**  You want to be able to say, "Well" --

11       **MR. KEKER:**  "Neener, neener, pants on fire."

12       **THE COURT:**  -- "you did do it to us, we can do it to

13   you."

14       **MR. KEKER:**  Right.

15       **THE COURT:**  You don't need to say anything unless you

16   want to say something.

17       **MR. LEACH:**  I will defend ourselves, Your Honor.

18       **THE COURT:**  I mean, actually, this is a compliment

19   from Mr. Keker.  He says you're working very, very hard in

20   getting these things out; but, however, there is a timeliness

21   issue in terms of preparation of witnesses and examination, and

22   so forth, and I should just be aware of that.

23       I think I'm always aware of that.  It's always a problem.

24   These things aren't -- as scripted as one might like a trial to

25   be, it never is and that's what make trial lawyers great, is

1   because they have to immediately respond to changes of

2   circumstances; right?

3           **MR. KEKER:**  Combat conditions.

4           **MR. LEACH:**  Correct, Your Honor.

5           **THE COURT:**  What?

6           **MR. KEKER:**  Combat conditions.

7           **MR. LEACH:**  Correct, Your Honor.

8           **THE COURT:**  Right, sort of.

9       All right.  So I don't see any reason to get to go anymore

10  today.

11          **MR. KEKER:**  We'll be here 15 minutes early tomorrow if

12  you want to deal with this fee issue then.

13          **THE COURT:**  Well, maybe I can -- I'm going to --

14  hopefully I can write something and send it off today.  Well, I

15  need to get the Government's opposition.  So get your

16  opposition as quickly as you can.  I mean, I'll certainly look

17  at it even if I don't have the opposition, but it's probably

18  important enough maybe.  Maybe.  Who knows how it's going to be

19  argued?

20          **MR. LEACH:**  We will get it in today.

21          **THE COURT:**  I think I have an idea how it's going to

22  be argued, so I think it's probably important enough.

23          **MR. KEKER:**  We think it's a major appellate issue if

24  we can't ask these questions.  We think --

25          **THE COURT:**  Oh, well, you know, I look at these

1    things, I assume everything is a major appellate issue.

2         **MR. KEKER:** No, not everything, not everything, but

3    this one is, we think, a no-brainer, but we'll see.

4         **THE COURT:** Overarching that the company

5    catastrophic --

6         **MR. KEKER:** But it's bias. Bias. In a criminal

7    trial, you can show bias.

8         **THE COURT:** I understand that. I understand that. I

9    understand that. I'm trying to figure out why the bias

10   wouldn't go the other way; but, anyway, I'm not going to

11   comment. I shouldn't have even said that. I'm just going to

12   wait and hear what the Government has to say and then try to

13   figure it out.

14        **MR. KEKER:** Thank you, Your Honor.

15        **MR. LEACH:** Thank you, Your Honor.

16        **THE COURT:** Okay.

17        **MR. REEVES:** Thank you.

18        **THE COURT:** Okay. We're in recess.

19             (Proceedings adjourned at 9:36 a.m.)

20                   ---oOo---

21

22

23

24

25

1

2

3 **CERTIFICATE OF REPORTERS**

4        I certify that the foregoing is a correct transcript

5 from the record of proceedings in the above-entitled matter.

6

7 DATE:   Monday, March 5, 2018

8

9

10

11 _____

12        Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                    U.S. Court Reporter

13

14

15 _____

16        Pamela A. Batalo, CSR No. 3593, RMR, FCRR
                    U.S. Court Reporter

17

18

19

20

21

22

23

24

25