Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

```
UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
   VS.                         )        NO. CR 16-00462 CRB
                               )
SUSHOVAN TAREQUE HUSSAIN,      )
                               )
            Defendant.         )
_____)
```

San Francisco, California
Friday, February 23, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:

> ALEX G. TSE
> Acting United States Attorney
> 450 Golden Gate Avenue
> San Francisco, California  94102
> **BY: ADAM A. REEVES**
>     **WILLIAM FRENTZEN**
>     **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant:

> KEKER & VAN NEST
> 633 Battery Street
> San Francisco  CA  94111
> **BY: JOHN W. KEKER**
>     **JAN NIELSEN LITTLE**
>     **BROOK DOOLEY**
>     **ATTORNEYS AT LAW**

Reported By:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
             Official Reporter

**Friday - February 23, 2018**                              **10:39 a.m.**

                          **P R O C E E D I N G S**

                          **---oOo---**

    **THE CLERK:**  Calling criminal action CR 16-0462, U.S.A.
versus Sushovan Tareque Hussain.

    Counsel, please state your appearances.

    **MR. REEVES:**  Adam Reeves and William Frentzen for the
United States.  Good morning, Your Honor.

    **THE COURT:**  Good morning.

    **MR. KEKER:**  Good morning, Your Honor.  John Keker,
Jan Little, and Brook Dooley for Mr. Hussain, who is present.

    **THE COURT:**  Right.  Good morning.

    So this matter is on for trial obviously on Monday and it
will proceed on Monday.

    The Court has received two communications, and one I want
to -- and I'd like to address them -- from jurors; is that
right?

    **THE CLERK:**  Yes.

    **THE COURT:**  One communication -- and I should -- would
you hand this to counsel so they can take a look at this?

    **THE CLERK:**  Yes.

    **THE COURT:**  Let's take a look at the -- one is from
Mr. Yencer, and I will deal with Ms. Humphrey in a minute.

                    (Pause in proceedings.)

    **THE COURT:**  I would point out that in Mr. Yencer's

1   questionnaire he does point out that it's a hardship for the

2   reasons essentially the doctor states, but let's deal with it

3   globally, meaning here's the next one.

4       The next one is from Ms. Humphrey, who has a letter from

5   her doctor, which says that -- I'm sorry, the letter is from

6   the doctor, the nurse practitioner.  The juror is named Botto

7   and the letter reads (reading):

8           "Ms. Botto is pregnant with a due date of

9       August 21st.  She's planning to breastfeed her child.

10      Please allow her to defer her jury duty until after she

11      has delivered and then weaned her baby."

12      I mean, give me a break.  I can promise her -- right? --

13  that she will complete her jury duty well before the due date,

14  I mean well before the due date.  That's not a problem.  So I'm

15  not excusing her unless you see some overriding reason why I

16  should.

17          **MR. KEKER:**  We don't.

18          **MR. REEVES:**  I agree, Your Honor.

19      **THE COURT:**  Yeah.  Okay.  So that takes us back to

20  Mr. Yencer.  Do you have any views of Mr. Yencer?

21      **MR. KEKER:**  We don't object to excusing him,

22  Your Honor.

23      **THE COURT:**  I think I really should excuse him.  I

24  mean, I feel I should excuse him.  You know, again, it's not

25  a -- I can force him to be here, but it would be forcing him to

1  be here.  I mean, I think it's legitimate.  What I'm saying is

2  I think that's a legitimate reason.

3          **MR. KEKER:**  Sounds like it.

4          **THE COURT:**  And had I thought about it probably with

5  greater care, I would have excused him.

6          **MR. REEVES:**  We agree, Your Honor.

7          **THE COURT:**  I didn't think about it with enough care.

8  But, you know, usually what you have to do -- or not usually,

9  but sometimes in these cases you actually have to sort of test

10 how firm their resolve is not to serve on a jury.  The only

11 people who really succeed in that, of course, are lawyers

12 because they know how firm they can be, as one has already been

13 excused.

14     So I would grant the request absent an objection.

15         **MR. REEVES:**  No objection, Your Honor.

16         **MR. KEKER:**  We have no objection, Your Honor.

17         **THE COURT:**  Do you have the jury list?

18         **THE CLERK:**  Yes.

19         **THE COURT:**  Let me bring one thing to the attention of

20 the parties that I now realize I should have mentioned.

21     It turns out that I know one of the jurors, who I'm not

22 going to identify.  I know one of the jurors in a very remote

23 way.  I knew a person that he was associated with, and I think

24 that on one occasion in the last 15 to 20 years I may have gone

25 to his house; but my relationship was, again, through my wife,

1    through a friend, and I didn't recognize this juror and the

2    name meant nothing but looking at it, I now recognize the name.

3        I don't think that's a basis for excusing this juror.  I'm

4    not telling you the juror's name because I don't know that that

5    makes any difference.  You can convince me -- I don't want to

6    keep it a secret, but I don't know that it makes any difference

7    to your determination as to whether it creates a problem.  I

8    guess arguably it could.

9        But I think as soon as I identify this juror -- who I,

10   again, wouldn't recognize today having met him on one

11   occasion -- I can say "him" because it's halfway, six men, six

12   women, something like that -- so I'm -- but if you want me to

13   handle it differently, I will.

14       **MR. KEKER:**  I think it just puts all the more pressure

15   on you to not lean one way or the other, Your Honor.

16       **THE COURT:**  I never feel any pressure like that.

17   I mean, I just --

18       **MR. KEKER:**  That's fine.

19       **THE COURT:**  I just thought that, you know, this is

20   going to be a long trial.  It's an important trial.  People are

21   devoting tremendous resources on both sides to the trial, and I

22   just want to make sure that there isn't some sort of

23   undisclosed issue.

24       **MR. KEKER:**  We appreciate it, and we don't have any

25   objection to that situation, Your Honor.

1          **MR. REEVES:**  The Government appreciates it too,

2     Your Honor.  And I'd note that the juror didn't seem to

3     indicate a --

4          **THE COURT:**  I don't even know if that juror knows

5     me -- I mean, whether that juror actually remembers that we

6     met.  I don't know.  It's not that I heard from that juror.

7          **MR. REEVES:**  So I think on this record that it would

8     be fine to continue to proceed with this juror, Your Honor.

9          **THE COURT:**  Okay.  All right.  If it turns out to be a

10    problem, then it turns out to be a problem.

11       Okay.  So now we're starting with -- we're down -- we're

12    down two?

13          **MS. LITTLE:**  Four alternates.

14          **THE COURT:**  So we're starting with now four

15    alternates.  We'll see how far we get.  In the Shrimp Boy case,

16    we were down to no alternates.

17          **MR. FRENTZEN:**  We came close.  I think that's right,

18    Your Honor.

19          **THE COURT:**  We came very close.

20          **MR. FRENTZEN:**  Yeah.

21          **THE COURT:**  We didn't have to go to the rule of 11.

22    You know, there's that rule that says once the jury starts its

23    deliberations, you can proceed with 11 with good cause but you

24    can't before.  I don't know whether you can by stipulation.

25    From my recollection, there's some case out there that talks

1    about stipulating to fewer than 12 jurors, but let's hopefully

2    not get to that point.

3        Okay.  So those are the sort of things that I wanted to

4    just bring to your attention.  Anything you want to bring to my

5    attention?

6            **MR. REEVES:**  Nothing for the Government, Your Honor.

7            **MR. KEKER:**  Yes, Your Honor.  We want to talk -- you

8    just mentioned stipulations.  We want to talk about a

9    stipulation that we're having a great deal of difficulty with

10   the Government with, and Ms. Little is going to address it.

11           **THE COURT:**  Okay.

12           **MS. LITTLE:**  Your Honor, the most relevant documents

13   in this case are documents that were created at Autonomy

14   obviously and were produced by Hewlett Packard to the

15   Government and then in turn the Government produced them to us.

16   I think there's, like, 2 million documents that came from

17   Hewlett Packard to us is what I've been told, and largely those

18   are Autonomy documents.  A large number of exhibits in this

19   case are going to be Autonomy documents.

20       We have been trying since last spring to reach a

21   stipulation with the Government that documents produced by

22   Hewlett Packard to the Government and then on to us can be

23   presumed authentic under Rule 901 so we don't have to have some

24   kind of fight about authenticity.

25       The Government has not been willing to enter into such a

stipulation.  Initially Mr. Reeves' position was that he wanted

to see the exact documents we were talking about.  We said, "We

don't want -- a lot of these are cross-examination documents.

We don't want to give you a preview of our cross-examination."

And we have no reason to think that any of these documents

are not authentic.  And, in fact, we asked Mr. Reeves, "If

there are particular documents that you have a problem with

that you think are somehow authentic, let's hear about it."

Mr. Reeves could not identify any.

We sent the stipulation to the Government again last week,

and again the Government is not willing to stipulate to the

authenticity of these documents produced by HP; and now the

Government is suggesting that there may be some issue about the

provenance of documents or their authenticity, whether they've

been altered in some way.  So we don't want to have a 104

hearing on every document in this case.

**THE COURT:**  No.  No, I'm not interested in hearing

what the rationale is.

As I understand it, the argument simply is if Hewlett

Packard produced the document, it then is authenticated for

purposes of its -- basically of its origin; that is to say,

this document came from the files of Hewlett Packard.  That

would be the stipulation, or kept in the ordinary course of --

well, I don't know about that.

I mean, if X sends a document to Hewlett Packard, so a

letter, as an example, Jones sends a letter to Hewlett Packard

about the Autonomy transaction, whatever it says, and Hewlett

Packard then has produced this or given it to the Government

and the Government has turned around and given it to you, you

say, "Look, I want to include that document that it's

authentic."

        **MS. LITTLE:**  It is what it purports to be.

        **THE COURT:**  It is what it purports to be, which is a

letter from Jones that was sent to Hewlett Packard period.  End

of stipulation.

        **MS. LITTLE:**  And actually the stipulation also had a

clause that we proposed that said "Any party, you know, has the

option if there is a serious issue, that can be contested."

You know, there's a carve-out if there's an issue.

        **THE COURT:**  There's a carve-out.  So, in other words,

if suddenly you get to something and it seems that,

notwithstanding the fact that it was a letter that would come

from -- that came from Hewlett Packard, it was inserted in the

files of Hewlett Packard by somebody other than somebody

conducting in the ordinary course of business.  It's let's sort

of put in a poison pill or something that is inauthentic.  Like

now let's put in -- an example might be a balance sheet where

suddenly somebody sends for some reason or another a balance

sheet, a statement of assets, whatever it is, to Hewlett -- or

Hewlett Packard comes across this because somebody sent it to

1  them, and they sent it to them for the purpose of, let's take

2  the worst case, sort of inserting it in the litigation to say,

3  "Ah ha, Hewlett Packard knew about this all the time.  Look.

4  Look at its files.  It had this.  It had this information."

5          MS. LITTLE:  To our knowledge, there's no such --

6          THE COURT:  Well, no, I'm making it up.  Obviously I'm

7  making it up.

8      I'm trying to figure out the Government's position

9  because, as I understand the proposal, is that would be carved

10  out.  If there's some reason to believe that this document is

11  other than what it purports to be, that will be the subject of

12  a separate inquiry.

13          MS. LITTLE:  I can show you the --

14          THE COURT:  So you wouldn't be authenticating that.

15          MS. LITTLE:  I can show you the proposed stipulation

16  if you like.

17          THE COURT:  Okay.

18          MR. REEVES:  Do you have a second copy?

19          THE COURT:  Okay.  So let's try to understand what the

20  Government's position is.  Let me take a moment and read it.

21                  (Pause in proceedings.)

22          THE COURT:  So what's wrong with this?  Mr. Reeves,

23  what's wrong with this stipulation?

24          MR. REEVES:  Well, there are a number of things that

25  are wrong with it, Your Honor.

1          **THE COURT:**  Okay.  Let's start with the first.

2          **MR. REEVES:**  Okay.  I think the Court has immediately

3    identified conceptually one to have the major problems here,

4    which is that Hewlett Packard comes into the possession of all

5    kinds of documents that may or may not be authentic.

6          What Hewlett Packard or a custodian could say is that we

7    had it in our files and gave it to the Government.  That, I'm

8    not certain, is the same thing as authenticating all documents.

9    So that's point number one.

10          **THE COURT:**  Well, wait, let's start with point number

11    one because I'm not quite sure I understand point number one.

12          Why isn't point number one addressed by paragraph two of

13    the stipulation?

14          It says, "Notwithstanding the presumption" -- it's a

15    presumption that it was authentic -- it's authentic -- "a party

16    against whom a document is offered, may introduce affirmative

17    evidence that the document is not authentic."

18          Now, you say, "Oh, but that puts the burden on the

19    Government to do that," and isn't the burden always on the

20    Government to do that?  I mean, how is it not?

21          **MR. REEVES:**  I'm not sure that's correct, Your Honor.

22          **THE COURT:**  Okay.  You're saying it's not correct

23    because if the Defense offers a document, the burden is on them

24    to show that it's authentic?  All they want to do is say, if I

25    understand them correctly, this piece of paper came out of the

1    files of Hewlett Packard.  That's actually true.  You don't

2    deny that, do you?

3            **MR. REEVES:**  We would stipulate to that.

4            **THE COURT:**  Pardon?

5            **MR. REEVES:**  I'm not sure that makes all documents

6    authentic.  I'm happy to stipulate that X documents came from

7    Hewlett Packard.  That does not, in my judgment, satisfy the

8    authenticity requirements of the rule, Your Honor.

9        And I think there's a -- so if I can expand on this a

10   little bit.

11           **THE COURT:**  No, go ahead.  Go ahead.

12           **MR. REEVES:**  Starting at the beginning, I disagree

13   with counsel's characterization of this negotiation.

14           **THE COURT:**  I don't care about the characterization.

15   Look, I am so beyond characterizations that you don't have

16   to -- you don't have to respond to the characterization.  I'm

17   not accepting the characterization.  I'm looking at something

18   and saying, is this a good idea from a trial point of view?  Is

19   this going to save time?  Is it going to reduce the number of

20   witnesses or is it not?  I don't care who proposed it, who

21   rejects it, who accepts it.  None of those things matter.

22       This is personality neutral.  It's advocacy neutral.  It's

23   a big zone of everybody's great and I just want to get the idea

24   of what we're doing here.

25           **MR. REEVES:**  I don't think it's going to save any

1    time.  I don't see a reason why this case should be different

2    from any other case.  I've asked for examples of a so-called

3    blanket stipulation in the past.  They have not provided one,

4    and I'm not aware of one.

5          THE COURT:  Well, I'll tell you one reason.  There are

6    2 million reasons why this case is different from every other

7    case.  I don't have a case in which there generally are

8    2 million documents that I have to deal with.  So this is

9    different.

10         You know, like it matters, that matters, and I'm just

11   looking at something and trying to figure out is there a

12   reason, is there a reason, a good reason, or even a bad reason

13   why we shouldn't have an acknowledgment by the Government that

14   these documents were at least -- well, you're saying you're

15   willing to agree that they came from the files of

16   Hewlett Packard.  What you're not willing to do is for the

17   purposes of 902 or 903 --

18         MS. LITTLE:  901 simply says that, you know, a

19   document is what it purports to be.

20         MR. REEVES:  But that's the issue.  We're willing to

21   stipulate that we got the documents from Hewlett Packard.

22   Whether it is what it purports to be is an open question.  What

23   do I mean by that?

24         THE COURT:  Yeah, what do you mean by that?

25         MR. REEVES:  I mean that there is clear evidence in

1    our investigation of an effort to possibly destroy or obtain

2    certain of the Autonomy documents.  So that -- I think the

3    Autonomy documents as a subset of the overall documents

4    produced by HP, we have some questions about their blanket

5    reliability.  We'll be introducing --

6         **THE COURT:**  Well, authentication doesn't say whether

7    they're reliable or not, does it?  It just says that they are

8    what they -- they are -- can't you have a false document that

9    is otherwise authenticated?

10        In other words, if I go -- let's say I'm a defendant and I

11   create a false balance sheet.  Is that not authenticated if it

12   comes from files X?  It is a balance sheet.  Whether it's true,

13   when it was obtained, how it was produced all are questions

14   that may go to the document, but I don't know that it goes to

15   anything further than what weight to give to the document or

16   maybe even admissibility.

17        This doesn't -- this doesn't say they're admissible.  This

18   simply says that they don't have to bring in Hewlett Packard to

19   say that they came from Hewlett Packard.  You say you're

20   willing to agree to that.

21        **MR. REEVES:**  Okay.  I've seen this play out in this

22   courtroom in other cases in a very routine way where any number

23   of documents that the witnesses have some exposure to or some

24   familiarity to, even if there are questions, are received into

25   evidence, are subject to the testimony, and I see no reason why

 1   that can't be precisely the process that we follow here.

 2       What I am concerned about is the introduction or the use

 3   of documents that don't have sponsoring witnesses, that don't

 4   have any connection to the trial testimony, and that can create

 5   real problems.

 6       So a stipulation like this begins to invite sort of the

 7   introduction of documents that have no context, and I'm not

 8   exactly certain how or when or where that would happen, but I

 9   see this as a -- essentially as a mechanism for eventually

10   introducing documents that are disconnected to the testimony of

11   the trial.  And --

12       **THE COURT:**  Are you willing to concede that if a

13   document -- if a witness gets up or the lawyer gets up and

14   says, "Here is Exhibit 602.  This document comes from the files

15   of Hewlett Packard," are you willing to concede that that's

16   done?  You'll stipulate to that?

17       **MR. REEVES:**  I will stipulate that the documents we

18   got from Hewlett Packard we got from Hewlett Packard.

19       **THE COURT:**  Ah, okay.  You're not conceding its

20   admissibility.  You're just saying they don't have to come in

21   and bring somebody from Hewlett Packard.

22       **MR. REEVES:**  They don't have to do that, Your Honor.

23   Will that solve the problem?

24       **THE COURT:**  If that's as good as it gets, that's fine.

25   I think that's what it says, by the way.

1          **MS. LITTLE:**  Yeah.

2          **THE COURT:**  So, I mean --

3          **MR. REEVES:**  We will modify it to make certain it says

4    that, but we will stipulate to that, Your Honor.

5          **MS. LITTLE:**  Good.  I think that should take care of

6    it.

7          **THE COURT:**  Thank you.

8       Okay.  Any other problems?

9          **MR. REEVES:**  Nothing for the Government.

10      I had one question -- oh, I'm sorry.

11         **MR. DOOLEY:**  We have another issue -- a couple of

12   issues.

13         **THE COURT:**  Do you want to address your question?

14         **MR. REEVES:**  It's about scheduling.  It can wait until

15   the end.

16         **THE COURT:**  All right.  Let's wait.

17         **MR. DOOLEY:**  One witness question, Your Honor.  In the

18   most recent witness list filed by the Government, they identify

19   a, quote/unquote, F.R.C. witness, which I take to be a witness

20   from the Financial Reporting Council in England, but they've

21   not identified the name of the witness and we've asked about

22   that, and we'd like to ask again in this context the specific

23   name of the F.R.C. witness that the Government intends to call.

24         **MR. REEVES:**  We don't have the name yet, Your Honor.

25         **THE COURT:**  You don't have the name of the person?

1          **MR. REEVES:**  No.  We have been in dialogue with the

2    lawyers.

3          **THE COURT:**  When will you know this person?

4          **MR. REEVES:**  We've asked for it repeatedly at this

5    point, but I don't know.  I'm hopeful that we'll know it soon;

6    and as soon as we know it, I'm happy to convey it to counsel.

7          **MR. DOOLEY:**  That's fine, Your Honor.

8          **MR. KEKER:**  Your Honor, I wanted to raise, not for you

9    to do anything about it today necessarily, but just to alert

10   you to what I see as a problem in the evidence as we go

11   forward; and that is, the Government has identified in

12   Docket Number 71, 13 people that it claims are co-conspirators

13   in the conspiracy charged in the Indictment.  We challenge that

14   there is a conspiracy.  We challenge that these people are

15   co-conspirators.  We challenge the whole thing.

16       When somebody gets up and we say "hearsay" as an objection

17   and they say "co-conspirator exception," then that's going to

18   raise a host of issues.

19       I mean, one is does this person properly belong even in

20   the conspiracy that they think they're proving?  Because we

21   think some of the people are completely absurd.

22       And then, second, what conspiracy are they talking about

23   that this person might -- anyway, all those foundational

24   issues.  And I just wanted to raise them with you because I

25   think that's going to come up.

1      **THE COURT:**  Well, I'm sure it's going to come up

2  because it comes up in any basically large-scale trial, and

3  what judges traditionally do is they allow it in subject to a

4  motion to strike.

5      I don't see why I would do it any differently here.  I

6  understand that -- unless I see -- you know, unless it's clear

7  at the outset, there simply isn't a conspiracy here and there's

8  no way they can prove a conspiracy.  I mean, that can happen.

9  The Government can charge anything and that can happen.

10     But absent that, I don't think I would force them to prove

11  the conspiracy in advance of allowing the statement to be

12  received into evidence because it becomes an impossible sort of

13  chicken-and-egg very, very difficult situation to deal with.

14     **MR. KEKER:**  And we anticipate --

15     **THE COURT:**  I actually think you sort of preserve your

16  argument anyway given -- you know, given how the case unfolds.

17  I mean, if the case unfolds and it becomes clear to the Court

18  that there is no there there, which is your argument, then the

19  Court considers, you know, what, if anything, should be done

20  with respect to any or all of the statements that are admitted.

21     Putting it another way, while I would understand that a

22  defendant would prefer the former rather than the latter, the

23  benefit the defendant gets from that -- from the way that at

24  least I perceive, is that by a failure of proof, they

25  jeopardize the entire case.

1        You see, because it can happen, and I think it has

2   happened in cases that I've had over 21 years now where I

3   simply look at it and say that the case is fatally infected by

4   the statement.  You can't really unring -- you can unring a

5   number of bells but you can't unring the carillon.  I mean, if

6   you have enough bells going off, you're not going to -- you're

7   going to be -- it's going to become very difficult to unwind

8   the situation.

9        So that's the risk the Government's at.  Now, you know,

10  like, hey, nothing's perfect.  You know, I'm sorry but trials

11  are imperfect things and there has to be somebody going first

12  and second, so I don't -- I mean, I'm glad you raised it, but I

13  want to reduce your expectations, if you have them --

14          **MR. KEKER:**  And I appreciate --

15          **THE COURT:**  -- and I'm not saying don't object.  I'm

16  just saying --

17          **MR. KEKER:**  Because we have to.

18          **THE COURT:**  I think you have to.

19          **MR. KEKER:**  I think we have to.

20        And I guess what I wanted to say is that this is -- I

21  mean, if it's a drug case, then everything they're talking

22  about is about drugs and it's all illegal, and so on.

23        This is -- their position is that the entire business -- I

24  mean, that their business at Autonomy was part of the

25  conspiracy.  So they have 13 people and they're going to say

1    everything that they said comes in under the co-conspirator's

2    exception, and I think that raises issues that are unique to

3    this case.

4            **THE COURT:**  We going to have a daily?

5            **MS. LITTLE:**  Yes.

6            **MR. KEKER:**  Are we going to have dailies?

7            **MS. LITTLE:**  Yes.

8            **MR. KEKER:**  Yes.

9            **THE COURT:**  Okay.  So that helps.

10           **MR. KEKER:**  That's all that I had, Your Honor.

11           **THE COURT:**  Yes, Mr. Reeves?

12           **MR. REEVES:**  I just had one inquiry if I could.

13           **THE COURT:**  Sure.

14           **MR. REEVES:**  The Court has indicated that on

15    Wednesday, March 28th, it intends to be dark that day.

16           **THE COURT:**  March 28th.

17           **MR. REEVES:**  March 28th.  And as we sort of

18    anticipate --

19           **THE COURT:**  That's a month from now.

20           **MR. REEVES:**  It is a month from now, but we have a lot

21    of travel and scheduling that we've been --

22           **THE COURT:**  Why did I say I'm not going to be here on

23    March 28th, is that your question?

24           **MR. REEVES:**  That is my question.  Thank you,

25    Your Honor.

1        **THE COURT:**  Why am I not going to be here, Lashanda,

2   on March 28th?

3        **THE CLERK:**  On the 28th --

4        **THE COURT:**  Is it Che Pastora day?  What is it?

5        **THE CLERK:**  CSAG meeting in Washington, D. C., and

6   JPML in Atlanta.

7        **THE COURT:**  There we are.

8        **MR. REEVES:**  You'll be traveling?

9        **THE COURT:**  I'll be on the road doing the road thing.

10       **MR. REEVES:**  Thank you, Your Honor.

11       **THE COURT:**  I've got to do the -- I've got to do those

12  things.

13       **MR. REEVES:**  I'm glad to hear that.  I hope you have a

14  nice trip, and we'll plan accordingly.

15       **THE COURT:**  I doubt if I'll have a nice trip.  I mean,

16  I may have a nice trip.

17       **MR. REEVES:**  Thank you.

18       **THE COURT:**  Okay.  Anything else?

19       **MR. KEKER:**  No, Your Honor.

20       **MR. REEVES:**  Nothing for us.  Thank you.

21       **THE COURT:**  All right.  So I just have to figure out

22  should I excuse -- I think it would be a good idea for me to

23  excuse that juror that's got the financial issues.

24       **MR. KEKER:**  Yes, Your Honor, Mr. Yencer.

25       **THE COURT:**  Just notify him --

1           **MR. REEVES:**  Mr. Yencer, yes.

2           **THE COURT:**  -- so he doesn't show up.

3           **THE CLERK:**  Yes.

4           **THE COURT:**  And we'll just proceed.  Better not to

5    tell the jurors there's a way out; right?  No exit.  *Sartre*.

6    That's it.  Nobody can get out of this.  We're in the eighth

7    circle of something.

8           **MR. REEVES:**  You'd like us here at 8:45 on the trial

9    days?

10          **THE COURT:**  I'd like that, but it's not -- I mean, I

11   won't be here until 9:00.

12          **MR. REEVES:**  We'll be here at 8:45, Your Honor.

13          **MR. KEKER:**  Thank you, Your Honor.  See you Monday.

14          **THE COURT:**  See you Monday.  Looking forward to it.  I

15   am really looking forward to this case.  I think it's going to

16   be interesting, isn't it?  You-all promise -- I mean, how

17   you're going to keep this alive for the jury, you know --

18          **MR. REEVES:**  That's why we have Mr. Frentzen.

19          **THE COURT:**  Pardon?  Okay.  Great.  Well, we have good

20   lawyers on both sides, and it should be really interesting.

21   I'm looking forward to it.  So thank you.

22          **MR. KEKER:**  Thank you, Your Honor.

23          **MR. REEVES:**  Thank you, Your Honor.

24          **MR. FRENTZEN:**  Thank you, Your Honor.

25          **THE COURT:**  Thank you for being here.

1          (Proceedings adjourned at 11:08 a.m.)

2                        ---oOo---

3

4

5                 __CERTIFICATE OF REPORTER__

6          I certify that the foregoing is a correct transcript

7     from the record of proceedings in the above-entitled matter.

8

9     DATE:   Wednesday, April 18, 2018

10

11

12

13     _____

14        Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
               U.S. Court Reporter
15

16

17

18

19

20

21

22

23

24

25